FILED ____ LODGED
____ RECEIVED ____ COPY

AUG 0 4 2020

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

CARL A. WESCOTT
MOVENPICK APARTMENTS/HOTEL #229
BUR DUBAI, 19TH STREET, OUD METHA
ACROSS AMERICAN HOSPITAL
DUBAI, UAE (UNITED ARAB EMIRATES)
*in propria persona*
CARLWSOJ@GMAIL.COM
+1 415 335 5000

# U.S. DISTRICT COURT

## DISTRICT OF ARIZONA

CARL A. WESCOTT,

               Plaintiff,

    vs.

DAVID CROWE, et al.

             Defendants

Case No. 2:20-cv-01383-PHX-SPL

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff Carl A. Wescott, proceeding *pro se,* hereby responds to Defendants' Motion to Dismiss, brought pursuant to Federal Rules of Civil Procedure Rule 12(b)(2) and 12(b)(6) for Wallin Hester, PLC and Romero Park, P.S. clients David Crowe, Mike Lyonette, Thomas P. Madden, Peter Tierney, Colin Ross, Brad Malcolm, and Michael Jimenez (the "Romero Defendants"), filed July 20th, 2020. A day later, on Tuesday, July 21st, 2020, the "Winfrey Defendants" (Zazueta Law, PLLC clients Sandra Winfrey and Brian Putze), joindered to the Romero Defendants' Motion to Dismiss.

## Threshold Matter: Procedural Requirements

As a threshold matter, it appears that neither the Romero Defendants nor the Winfrey Defendants have fully followed the Federal Rules for Civil Procedure for Rule 12(b) Motions, and they certainly have not followed *LRCiv 12.1(c)* for Rule 12(b) Motions to the letter of the law:

> (c) Motions to Dismiss for Failure to State a Claim or for Judgment on the Pleadings. No motion to dismiss for failure to state a claim or counterclaim, pursuant to Federal Rule of Civil Procedure 12(b)(6), or motion for judgment on the pleadings on a claim or counterclaim, pursuant to Federal Rule of Civil

1

Procedure 12(c), will be considered or decided unless the moving party includes a certification that, before filing the motion, the movant notified the opposing party of the issues asserted in the motion and the parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by the pleading party. The movant may comply with this rule through personal, telephonic, or written notice of the issues that it intends to assert in a motion. A motion that does not contain the required certification may be stricken summarily.

The rules of this particular Court are even more precise: "the movant must *attach* a certificate of conferral…" "Any motion lacking an attached compliant certificate may be summarily stricken by the Court."

The Romero Defendants' Motion to Dismiss utilizes Federal Rule of Civil Procedure 12(b)(2) and Rule 12(b)(6). In his Motion to Dismiss, bottom of page 2, Mr. Chad Hester, esq. states that

"Defendants' counsel met and conferred with Plaintiff via letter dated June 29th, 2020, which stated the lack of jurisdiction and failure to state a claim. Plaintiff was not responsive to the letter or multiple emails which were sent thereafter to try and work out this dispute. The parties have been unable to agree that the pleading is curable by a permissible amendment."

The Plaintiff believes that Mr. Hester is referring to Mr. Troy Romero, esquire's correspondence, which consisted of a letter emailed July 6th, 2020, and three emails meant for the Plaintiff, attached as Exhibit B. No letter was received by the Plaintiff in the US mail. From the Plaintiff's eyes, the July 6th, 2020 letter from Mr. Romero appears to be a first communication. At no point did Mr. Romero appear to make a good-faith effort to confer, as Mr. Romero did not call, and an amendment to the complaint was never brought up in written correspondence. After Mr. Romero's clients breached a contract and then repudiated it, costing the Plaintiff US $334,000 in short-term cash flow profits and other larger damages, the only option Mr. Romero provided the Plaintiff was a dismissal of Plaintiff's legal complaint. No certificate is attached to the Motion to Dismiss, and from the Plaintiff's viewpoint, Mr. Romero did not meet either the letter or the spirit of a good faith conferral on the issues that should have been addressed.

The Winfrey Defendants fared better, thanks to Mr. Fabian Zazueta, esq. of Zazueta Law, PLC calling the Plaintiff and having a cordial 20+ minute phone conversation, which the Plaintiff appreciated. Apparently, Mr. Zazueta sent a letter to the Plaintiff on July 17th, 2020, which the Plaintiff has yet to receive as he flew from Phoenix to Dubai that day, with three intermediary cities, arriving July 18th, 2020. Thus, it is quite possible that Mr. Zazueta's letter addressed the issues of a possible amendment. However, the phone call focused on the same desired outcome as the Romero Defendants, a dismissal of the legal complaint (apparently, with prejudice). At no point did Mr. Zazueta bring up the notion of the Plaintiff amending his complaint, nor was it something the Plaintiff thought of in the face of demands (expressed in a courteous, professional way, but still demands) for him to voluntarily dismiss his legal complaint (Exhibit C, Sworn Declaration of Carl Wescott).

Given that neither attorney attempted to meet and confer about a possible amendment to cure alleged issues related to jurisdiction/venue and an alleged failure to state a claim, and given that neither attorney attached the required certificate regarding such (non-existent) conferrals, the Plaintiff respectfully requests that the Court consider striking the Motion to Dismiss in its entirety, and ruling in favor of the Plaintiff.

### Statement of Facts

Looking back at his pled facts, the Plaintiff sees several areas where he has omitted facts or could have improved the narrative. One of those was leaving out that one of the two contracts with David Crowe, et al. (on behalf of the 22 named Defendants) dictated that Maricopa County in Arizona would be the venue for dispute resolution (the other contract stated San Francisco, California). (Exhibit C). The Plaintiff has included in Exhibit A the first paragraph of a narrative he used to set the context in a Motion to Deem Certain RFAs Admitted as to Defendant Jeff Rau. As that Motion was unopposed over a timeframe of weeks by this set of attorneys for Mr. Rau, the Plaintiff will

3

assume for the time being that the record does not yet show any disagreement as to those facts. For the purposes of the Rule 12(b)(2) and Rule 12(b)(6) analyses and decisions, the Defendants and Court should also (and mainly) use the facts pled in the Amended Legal Complaint. The Plaintiff avers that it is reasonable to assume that this one fact as to the second forum selection clause is true, that he has pled in multiple documents in this docket, but that he left out of his amended legal complaint.

### Jurisdiction in the Ninth Circuit

Despite so many similarities (e.g., a breach of contracts by a group where the two main defendants are domiciled overseas; damages that are mostly related to intangibles like content and intellectual property, and an American plaintiff who desires Ninth Circuit *in personam* jurisdiction) it would be misleading to cite *Roth v. Garcia Marquez* (942 F.2d 617 (9th Cir. 1991)) as the 9th Circuit standard and threshold in facts patterns such as ours, especially in light of *Rano v. Sipra Press, Inc.* 987 F.2d 580 (9th Cir. 1993). To provide a balanced perspective on settled law in this circuit, and in light of the limited space he has to respond to the moving parties' twenty-three (23) pages of analysis and allegations, the Plaintiff will jump straight into the sort of conclusory legal determinations he had hoped to avoid in his legal complaint ☺.

The Ninth Circuit's most recent, major, and cited decisions can be summarized in a three-part test for Courts to exercise specific *in personam* jurisdiction: "1) The nonresident defendant must have *purposefully availed* himself of the privilege of conducting activities in the forum by some affirmative act or conduct; 2) plaintiff's claim must *arise out of* or result from the defendant's forum-related activities; and 3) exercise of jurisdiction must be *reasonable*." *Roth v. Garcia Marquez* (942 F.2d 617 (9th Cir. 1991)), quoting *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir., 1990); see also *Halsten v. Grass Valley Medical Reimbursement Fund, Ltd.*, 784 F.2d 1392

4

(9th Cir. 1986).  The plaintiff has the burden of making a case for the first two prongs, while the defendant has the burden of proof that jurisdiction would not be reasonable.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004).

### General Jurisdiction

There are only two Defendants for whom the Plaintiff is highly confident he could get general jurisdiction: Mr. Jeff Rau (real estate marketing and sales to Arizona residents), and Mr. Thomas P. Madden (due to Mr. Madden consistently selling securities to Arizona residents, and also Mr. Madden's recent consistent sales of oral appliances for sleep apnea to dentists in Arizona).  For the two Winfrey Defendants, and the rest of the Romero Defendants, the Plaintiff does not know enough about their activities to intelligently opine.

### Specific Jurisdiction

The Plaintiff believes he has enough for specific jurisdiction in this District for all named Defendants, including the Winfrey Defendants, the Romero Defendants, and Mr. Rau.  The facts that support this from the amended legal complaint (cut and pasted, and marked "LC") and from the unopposed motion to deem certain facts admitted (cut and pasted, and marked "MDA") are:

- Mr. Madden now sells securities in Utah, Arizona, Nevada, and Colorado. (LC)
- Venue is appropriate in this Court as the provisions of the relevant contract were orally agreed in Maricopa County, and the initial signed version of the relevant contract was written, formed, and signed in Maricopa County. (LC = Legal Complaint)
- The essence of the original contract (which called for a Phoenix, Arizona venue to resolve disputes) was that at the close of the Plaintiff's purchase, the Plaintiff would transfer all of the land from his newly purchased company (Seaside Mariana) to the Defendants, and the Defendants would pay the Plaintiff an additional US $334,000 in a series of quarterly payments. (MDA = Motion to Deem Admitted)
- Plaintiff is informed and believes and thereon alleges that at all times material to this Complaint, David Crowe, Robert Crowe, Mike Lyonette; Thomas Madden; Taylor Collins; Jeff Rau; Darrell Bushnell; Amy Bushnell; Peter Tierney; Kathy Fettke; Susie Yee; Norman Davies; Claire Davies; Bernadette Brown; Sandra Winfrey; Brian Putze, Colin Ross, Brad Malcolm, Michael Jimenez, Federico Gurdian, Terencio Garcia, and Gustavo Varela, as individuals, in

addition to acting for himself/herself and on his/her own behalf individually, as well as for the benefit of his or her marital community (if any), is and was acting as the agent, servant, employee, and/or representative of, and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the other Defendants (individual and entities) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy. (LC)

- A group of 22 investors (the named Defendants) all agreed to collectively be bound by the Sales Contract and to fund the payments in the Sales Contract. (LC)
- Two of the Defendants, David Crowe and Mike Lyonnette, agreed to manage their group and, for expediency, communications with the Plaintiff. David Crowe named and provided documentation as to the identities of the twenty-two people (including himself) who had agreed to be bound by the Sales Contract. (LC)
- In August 2018, David Crowe and Mike Lyonette signed NCNDs with the Plaintiff in August 2018, and pledged not to share any information about the Plaintiff or the Sales Contract with any of the rest of their group of 20+ investors unless an individual group member signed a NDA (Non-Disclosure).
- Approximately 10 of the 20+ investors signed NDAs with the Plaintiff, and thus, if Mr. Crowe, Mr. Lyonette, and others were honoring the Sales Contract and their NDAs, the Plaintiff believes only the dozen or so of them would have gotten information related to the Sales Contract and its progress towards a closing after that point. (LC)
- The NDAs granted jurisdiction of the Plaintiff's choice, had a non-disclosure provision, and in the majority of the NDAs signed, specifically acknowledged that violating the non-disclosure provision, given the Plaintiff's deals, would like cost him over US $10 million, with the Defendants signing up for damages in that amount for that scenario. (LC)
- After the Sales Contract was signed, the Plaintiff signed more contracts with Kevin Fleming, to purchase Isla Mariana, to purchase seven more Panamanian and Nicaraguan companies, and to purchase the legal claims of Kevin Fleming, Maria Rueda, and the relevant entities. (LC)
- Outside of Seaside Mariana, and as shall be proven in court, the Plaintiff expected to make on the order of US $4,000,000 to US $5,000,000 more with the completion of the other deals, and would have made that much more, minimum, with the completion of the other related Fleming deals. (LC)
- Upon information and belief, David Crowe and Mike Lyonette violated the terms of the NDA and shared deal information with other parties that had not signed the NDA. (LC)
- Upon information and belief, many other individual Defendants violated the terms of their NDA and shared deal information with other parties. (LC)
- In addition, as shall be proven at trial, the Plaintiff expected to make a much larger sum monetizing the intangible assets he was acquiring as part of this deal. (LC)

## Analysis for Specific *in personam* Jurisdiction in the 9th District

Let's assume that the Court agrees that for the purposes of this Motion to Dismiss, the Court can assert general jurisdiction over Mr. Thomas P. Madden (pled facts). The question would

remain, can this Court assert specific jurisdiction over the rest of the Defendants? Other than having the means to purchase second or third residences in Nicaragua, and being banded together, initially, by a common lawsuit against the developer of Seaside Mariana, Kevin Fleming, and more recently, by the contracts with the Plaintiff, the Defendants are a diverse group, including geographically.

The Winfrey Defendants live in Virginia. David Crowe, an American citizen, resides in Mexico. Mike Lyonette is believed to also be a US citizen but to reside in Belgium. Mr. Rau resides in Washington State. Mr. Tierney lives in Florida. Mr. Jimenez lives in California. However, in conspiring together as a group of 22, and agreeing to be bound by at least two contracts, one of which was "orally agreed in Maricopa County, and the initial signed version of the relevant contract was written, formed, and signed in Maricopa County", all of the named Defendants have *purposely availed* themselves of the privilege of conducting business activities in this District. Their *purposeful availment* has also created a set of continuing relationships and obligations, which cannot so easily be shirked, just because the Defendants no longer wish to live up to what they agreed in writing, in contract form, in 2018.

The Plaintiff worked hard and fully performed to get the various parties to the closing table in a complicated deal, including third-party Kevin Fleming, the developer and one of the owners of Seaside Mariana. The Defendants, who were communicating frequently (hundreds of communications via phone, email, and text) with the Plaintiff up to that point (mostly through Mr. Crowe and Mr. Lyonette), had a responsibility to fund the closing (another US $475,000 plus closing costs), and then a responsibility to pay the Plaintiff, an Arizona resident for some of the time period between 2018 and the present, another US $334,000 (the Plaintiff just moved from Scottsdale to Dubai). The Plaintiff should have received the entire US $334,000 of short-term

7

profits by now.  These defendants wish to shirk not only their financial commitments but also their legal ones, including their *purposeful availment* of these Courts through a contractual forum selection clause in a signed contract.

Though there were hundreds of communications relating to these contracts, the quality or importance of the contacts is just as important as quantity in establishing contacts.  *Thos. P. Gonzales Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247, 1252 (9th Cir.1980); *International Shoe*, supra.  Here, the Defendants wished to solve an issue that has plagued them for a decade or more, and related to which, they have already been engaged in litigation with Kevin Fleming of Seaside Mariana since 2013, for seven (7) years!  Even though most of these Defendants were wealthy enough to commit to and then pay between US $100,000 and US $700,000 just for the land for a second, third, or fourth home in a foreign country, the fact that they have funded litigation against Mr. Fleming over some issues with their purchases for most of a decade so far, shows the potential importance of the contracts that would have resolved their issues, and thus also the quality and importance of the contacts related to the contracts in this forum.

What good is a forum selection clause, or contractually giving the Plaintiff the jurisdiction of his choice, if the Defendants (after not only breaching the relevant Closing Contract but some rather reprehensible, dishonest, and back-stabbing behavior afterwards) will not adhere to what they agreed to?  The Plaintiff fully admits that the forum selection clause in the other contract signed that bound these Defendants to him was for San Francisco, California.  Had the Plaintiff filed his legal complaint in San Francisco, these Defendants would likely be crying foul, citing the forum selection clause in the second contract (of Arizona).  Contracts implicate the benefits and protections of the law of a particular forum, and thus the significance of what the Defendants have already agreed to do goes well beyond geography and convenience.  Given that the Defendants agreed to provide this

8

Plaintiff not only Maricopa County jurisdiction and venue, but also the venue of his choice, the Plaintiff respectfully insists that the Defendants do what they agreed to do.

Not only did the Defendants agree to some significant responsibilities in Maricopa County and to a now-former-Maricopa-County resident, but in our analysis of specific jurisdiction, the legal complaint that was originally filed in Arizona Superior Court, and now resides here in District Court, arises out of and is resulting from the activities and behaviors of the named Defendants, including their non-acts. These Defendants performed affirmative acts in Maricopa County, including agreeing to be bound by the contracts at hand, including the Closing Contract, which had no further provisions for due diligence, and no continency allowing these Defendants to pull out at the 11th hour, after six months of working toward the closing together. In agreeing to be bound by the contracts with the Plaintiff, including the Closing Contract, the Defendants produced a result or effect in Maricopa County, mainly consisting of a mutual set of obligations with the Plaintiff to collaborate towards said closing, under the terms and conditions so agreed.

Is it reasonable that the District of Arizona be utilized for the parties to resolve their issues through this legal process? The Plaintiff asserts that it is more than reasonable, and speaking to traditional notions of fair play and substantial justice, that if anyone has the advantage in this forum, which is not inconvenient for this set of North American investors, that most third parties would put their money on these Defendants. These Defendants have already hired multiple professional, reputable, and capable Arizona law firms to defend against this action. The Plaintiff hopes to settle with as many of the Defendants as are so willing, as he prefers that route to a potential two years of litigation. Defendants who do not wish to settle deserve, of course, as vigorous a defense as they wish to afford. The Plaintiff cannot afford an attorney at present, but he does not object to this forum. Is it reasonable for a group of wealthy investors who have retained a group of extremely

9

1    experienced litigators in the District of Arizona to engage in legal combat with the Plaintiff, an

2    indigent non-attorney *pro se*?  The Plaintiff, who would no longer be indigent had this group

3    honored their contractual responsibilities, is willing to take on this challenge in the name of justice.

4    The Plaintiff is grateful for the opportunity to present the facts, allegations, and the legal foundation

5    of his case herein, and for it to be decided on the merits, as it should be.

6

7            Frankly, for these ten (10) Defendants who are now defending together in District Court,

8    staying together in one forum is by far the most fiscally- and temporally-efficient path for them to

9    take.  Now that they have hired their legal professionals of choice in this District (supplemented

10   further by attorneys in other states *pro hac vice*), the Plaintiff does not believe their defense in

11   Arizona is more of a burden nor less convenient than anywhere else. (*The Planning Group of*

12   *Scottsdale v. Lake Mathews Mineral Properties, Ltd.,* Ariz. Supreme Court, January 21, 2011,

13   speaking to the convenience of a forum asserting jurisdiction over non-residents).  Now that these

14   Defendants have pushed this matter from state Court to District Court, there should be few

15   differences of law that will impact them between Arizona and California (or their home state).

16

17           The Plaintiff respectfully requests that this Court deny the Defendants' Motion to Dismiss,

18   at least under the *in personam* jurisdictional grounds of their Rule 12(b)(2) Motion.  At the end of

19   his brief, below, the Plaintiff will be seeking leave to amend from this Court, to improve his

20   pleadings, especially with regard to his stated claims and causes of action.  The Plaintiff will now

21   address the Defendants' Rule 12(b)(6) Motion to Dismiss which asserts that his legal complaint

22   fails to adequately state a claim.

23

### Legal Standards - 12(b)(6)

24           A plaintiff's burden at the pleading stage is relatively light, in a Court's analysis of a Rule

25   12(b)(6) motion as to whether colorable claims are made.  Rule 8(a) of the Federal Rules of Civil

Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)*. The court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party," *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995), including making all reasonable inferences in favor of the non-moving party. *Rhodes v. Robinson*, 408 F.3d 559, 563 (9th 2005). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984). Claims must be "'plausible on [their] face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

## Plaintiff's Response to Defendants' Assertions that the Plaintiff Fails to State a Claim

The Plaintiff respectfully disagrees with the Defendants with respect to the issue of whether the Plaintiff has successfully stated a claim, by pleading stage standards. For example, with the pled facts, as will be examined in much greater detail in the Plaintiff's upcoming response to Mr. Jeff Rau's Request for Judgment on the Pleadings, we have (1) a contract, (2) the Plaintiff's performance (impliedly), (3) the Defendants' breach, and (4) resulting damages.

However, the Plaintiff fully agrees with the Defendants that his legal complaint could be improved. Thus, he respectfully requests that this Court grant him leave to amend his pleadings.

RESPECTFULLY SUBMITTED on August 4th, 2020

CARL A. WESCOTT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## Exhibit A: Further Statement of Facts

"This is a case in which the 22 Defendants entered in to a contract with the Plaintiff in 2018, to pay the costs to close of certain tangible and real assets that the Plaintiff had entered in to contract to purchase, as well as an additional US $334,000.  The main asset that the Plaintiff was purchasing was a company (Seaside Mariana) that owned a considerable amount of beachfront land with 2 kilometers of beach.  Seaside Mariana also had valuable intangible assets.  The essence of the original contract *(which called for a Phoenix, Arizona venue to resolve disputes)* was that at the close of the Plaintiff's purchase, the Plaintiff would transfer all of the land from his newly purchased company (Seaside Mariana) to the Defendants, and the Defendants would pay the Plaintiff an additional US $334,000 in a series of quarterly payments.  The Plaintiff would keep Seaside Mariana, the company, as well as the valuable intangible assets that it owned.  (The parties agreed to share other intangible assets such as customer lists)." *(emphasis added)*



**ROMERO PARK** P.S.

NORTHWEST OFFICE

COLUMBIA WEST BLDG
155-108th Avenue NE, Suite 202
Bellevue, Washington 98004
Telephone (425) 450-5000
Facsimile (425) 450-0728

CALIFORNIA OFFICE

RANCHO BERNARDO COURTYARD
16935 West Bernardo Dr., Suite 260
San Diego, California 92127
Telephone (858) 592-0065
tromero@romeropark.com

*Via Electronic Mail*
July 6, 2020

*(EXHIBIT B)*

Carl A. Wescott
409 N. Scottsdale Road, #223
Scottsdale, Arizona 85257
Email: carlwescott2020@gmail.com

**RE:   Carl A. Wescott v. David Crowe et al.**
       Our Reference: WESC 600

Mr. Wescott:

This firm represents David Crowe, Mike Lyonette, Thomas P. Madden, Jeff Rau, Colin Ross, Brad Malcolm, and Michael Jimenez in the above-referenced matter.

We understand that you have filed a [Corrected] Complaint under Civil Action No. CV2020-006232. You have not properly served any of my clients with the [Corrected] Complaint. If you believe we are mistaken, please kindly email me Proof of Service on each of our clients whom you believe were properly served under the applicable rule.

By way of information, your original Complaint was not properly served on my clients either, as your service by mail did not comply with Ariz. R. J. C. Civ. P. 113d.(2). In checking with the Court's docket, we were unable to locate any Proofs of Service for any of the initial pleadings, so we assume you have come to the same conclusion. We would remind you that if you ever file a Proof of Service with the Court, under penalty of perjury, that contain inaccurate statements regarding service, you can be assured that there will be consequences that follow. In simple terms, you have not properly served any of our clients with the original Complaint (which has now been superseded by the [Corrected] Complaint anyway – and, for reference, should have been styled "Amended" Complaint).

Additionally, it appears that you have attempted service of discovery requests on one or more of my clients (Requests for Admission and Interrogatories) ("Discovery Requests"), claiming they have been served pursuant to Rules 33, 33.1 and 36 of the Arizona Rules of Civil Procedure. As you may or may not know, Arizona Rules of Civil Procedure 26(f)(1) states, in part, "…Unless the Court orders otherwise for good cause: (1) a party may not seek discovery from any source-including nonparties-before that party serves its initial disclosure statement under Rule 26.1." Therefore, even if you had properly served one or more of our clients with the [Corrected] Complaint, which you have not (meaning my clients have no obligation to answer the Discovery Requests to the extent they even received them), they will still have no obligation to respond to the Discovery Requests since they have not been served with your initial disclosure statement.

Carl A. Wescott
July 6, 2020
Page 2

As to the case itself, you must know that your claims are frivolous and subject to dismissal. Aside from David Crowe and Mike Lyonette, you have no contractual relationship with any of my other clients; had no discussions with them before entering into the contract; and for many of them you have never met nor communicated with them in any matter before filing your lawsuit. In other words, there is no conceivable set of facts upon which you could sue them. Consequently, you are directed to immediately dismiss all defendants from the lawsuit except for David Crowe and Mike Lyonette.

Now, as it relates to these two gentlemen, we are confident you are aware that you entered into a Settlement Agreement with them in August 2018 in which you contractually agreed that any dispute between you and these gentlemen must be resolved in San Francisco, California. Accordingly, even as to these two gentlemen, you must dismiss your case because you filed it in Arizona – in direct violation of the terms of your Settlement Agreement with them. In simple terms, you must dismiss your [Corrected] Complaint against all of the defendants (although I am fine with you dismissing it just against my clients).

While you have a number of other problems with your [Corrected] Complaint that will ultimately require its dismissal (such as your failure to state a claim; your failure to allege fraud with specificity; impossibility of performance due to your failure to acquire the shares of Seaside Mariana; etc.), we do not need to get into these at this time. It is just worth noting that there are multiple reasons why you need to dismiss your [Corrected] Complaint against my clients because if you do not do it voluntarily, we will do it for you involuntarily.

We trust that you will dismiss your case immediately, and by no means later than Friday, July 10, 2020. In the event it is not dismissed by that date, you are hereby notified that my clients will seek sanctions against you for having to defend against your frivolous complaint. Further, you will owe attorneys fees and costs under the terms of your agreement with some of the defendants.

Thank you for your anticipated cooperation.

Very truly yours,
ROMERO PARK P.S.

/s/H. Troy Romero

H. Troy Romero

 Gmail

Carl Wescott <carlwescott2020@gmail.com>

---

**interrogatories**

---

**Troy Romero** <TRomero@romeropark.com>                                    Thu, Jul 9, 2020 at 8:57 PM
To: "carlwescott2020@gmail.com" <carlwescott2020@gmail.com>

Mr. Wescott:

Same comment and response.  You are incorrect.

Troy


H. Troy Romero

 ROMERO
PARK P.S.


California Office

16935 W. Bernardo Dr., Suite 260

San Diego, CA 92127

858-592-0065


Washington Office

155 – 108th Ave. NE, Suite 202

Bellevue, WA 98004

(425) 450-5000



> **From:** Carl Wescott <carlwescott2020@gmail.com>
> **Date:** July 8, 2020 at 5:36:27 PM MDT
> **To:** Thomas Madden <THOMASPMADDEN@GMAIL.COM>, Carl Wescott <carlwescott2020@gmail.com>
> **Subject: Interrogatories**


[Quoted text hidden]

 Gmail

Carl Wescott <carlwescott2020@gmail.com>

---

## Failure to dismiss case
1 message

---

**Troy Romero** <TRomero@romeropark.com>                                   Sat, Jul 11, 2020 at 3:46 AM
To: "carlwescott2020@gmail.com" <carlwescott2020@gmail.com>
Cc: Seth Harris <sharris@romeropark.com>, Kathy Koback <kkoback@romeropark.com>

Mr. Wescott:


You failed to voluntarily dismiss your lawsuit within the time we gave you.


Accordingly, on Monday we will remove the case to federal court.


We note that you have filed motions for default against some of our clients.  Please immediately withdraw those motions.
As I mentioned before you have not properly served any of my clients.  Please understand that if we have to spend any
money defending the Arizona action we will seek terms against you for doing so as we have advised you of the improper
service.


Troy


H. Troy Romero

 ROMERO PARK P.S.


California Office

16935 W. Bernardo Dr., Suite 260

San Diego, CA 92127

858-592-0065


Washington Office

155 – 108th Ave. NE, Suite 202

Bellevue, WA 98004

(425) 450-5000

Gmail - RE: Demand to withdraw all of your notices of default

 Gmail

Carl Wescott <carlwescott2020@gmail.com>

---

## RE: Demand to withdraw all of your notices of default
1 message

---

**Troy Romero** <TRomero@romeropark.com>
To: "carlwescott2020@gmail.com" <carlwescott2020@gmail.com>
Cc: Seth Harris <sharris@romeropark.com>, Kathy Koback <kkoback@romeropark.com>

Sat, Jul 11, 2020 at 7:53 PM

Mr. Wescott:

I believe this is at least the fourth time I have emailed or wrote you and to date you have never had the courtesy of responding once.  Please do so.

I have received some paperwork from several of my clients notifying them that you believe that a default can be entered because of an alleged failure to respond to the complaint.

As you know, your service is defective on all of my clients and thus they have no obligation to answer your complaint.

**But even if that were not the case your "Corrected" Amended Complaint has not been filed for over 30 days.** While I recognize you are not an attorney you are nonetheless held to all of the Rules of Civil Procedure.  **You cannot default a defendant until 30 days after service of the current version of the complaint, even if you have proper service** (which you don't).  You are using your purported service of the original complaint but trying to default some of my clients using the "Corrected" (which, as you may recall, should be called "First Amended" Complaint) Complaint.  You are directed to withdraw all of your notices of default against all of my clients first thing Monday morning and provide me written notice that you have done so.

By the way, the case is going to be removed on Monday to federal district court.  We will then file a motion for change of venue to California, as this the venue in which the subject agreement was entered into and which you **contractually agreed would be the forum for resolution of all disputes under the Agreement.**  If you would like to stipulate to removal of the case to California it will save you significant time.  Otherwise, we will do this ourselves.

After the removal we file a motion under Rule 12(b)(6) for dismissal.  You do not have a colorable claim.

We recognize that you are trying to shake down our clients.  When the time comes to file an answer we will be filing a counter-claim for malicious prosecution and will be asking for Rule 11 Sanctions.

We would again strongly encourage you to dismiss your case, at least against my clients.

Troy

H. Troy Romero

Gmail - RE: Demand to withdraw all of your notices of default



ROMERO
PARK P.S.

California Office

16935 W. Bernardo Dr., Suite 260

San Diego, CA 92127

858-592-0065


Washington Office

155 – 108th Ave. NE, Suite 202

Bellevue, WA 98004

(425) 450-5000


**From:** Troy Romero
**Sent:** Friday, July 10, 2020 4:46 PM
**To:** carlwescott2020@gmail.com
**Cc:** Seth Harris <sharris@romeropark.com>; Kathy Koback <kkoback@romeropark.com>
**Subject:** Failure to dismiss case


Mr. Wescott:


You failed to voluntarily dismiss your lawsuit within the time we gave you.


Accordingly, on Monday we will remove the case to federal court.


We note that you have filed motions for default against some of our clients. Please immediately withdraw those motions. As I mentioned before you have not properly served any of my clients. Please understand that if we have to spend any money defending the Arizona action we will seek terms against you for doing so as we have advised you of the improper service.


Troy


H. Troy Romero

CARL A. WESCOTT
MOVENPICK APARTMENTS/HOTEL #229
BUR DUBAI, 19TH STREET, OUD METHA
ACROSS AMERICAN HOSPITAL
DUBAI, UAE (UNITED ARAB EMIRATES)
*in propria persona*
CARLWSOJ@GMAIL.COM
+1 415 335 5000

## U.S. DISTRICT COURT

## DISTRICT OF ARIZONA

CARL A. WESCOTT,

               Plaintiff,

    vs.

DAVID CROWE, et al.

               Defendants

Case No. 2:20-cv-01383-PHX-SPL

**EXHIBIT C: SWORN DECLARATION OF CARL A. WESCOTT**

      I, Carl A. Wescott, hereby swear under penalty of perjury of the laws of Arizona and of the United States of America, that the following facts are true, to the best of my memory, recollection, and belief:

1. I am the Plaintiff in the above-captioned case at Bar.

2. I am quite familiar with all of the circumstances of this case from my own viewpoint (obviously, I do not yet know what internal communications occurred between the Defendants).

3. I am 53 years old, and a U.S. citizen.

4. I am competent to testify. Were I to be called to testify in this matter, my testimony would be as follows, and until that point, my written testimony is as such:

"Besides the signed NDAs, there were two contracts with this set of Defendants. In the initial Contract signed by Mr. Crowe and me in August 2018, we had a forum selection for disputes of Phoenix, Arizona.

5.  What Mr. Hester claims in the Defendants' Motion to Dismiss is true, that Mr. Kevin Fleming did send the Plaintiff an email terminating the contract to sell Seaside Mariana. However, Mr. Hester cites the orders of events in an incorrect sequence.

6.  Mr. Fleming's email attempting to terminate the sales contract came *after* the Defendants pulled out of the Closing Contract to purchase Seaside Mariana, within a few days of the expected close of mid-October 2018.

7.  The cited reason for the Defendants to breach the contract was that Mr. Ted Cole had filed a lawsuit against Seaside Mariana just before our close of the Seaside Mariana purchase. Mr. Cole's lawsuit was filed in September 2018."

CARL A. WESCOTT
August 4th, 2020