CARL A. WESCOTT
8210 E. VIA DE LA ESCUELA
SCOTTSDALE, AZ 85258
*in propria persona*
CARL.WSOJ@GMAIL.COM
+1 936 937 2688

**FILED**

FEB 11 2021

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CALIFORNIA
NORTHERN DISTRICT

CARL A. WESCOTT,
    Plaintiff,
vs.

DAVID CROWE, MIKE LYONETTE;
COLIN ROSS; BRAD MALCOLM;
MICHAEL JIMENEZ, et al.
    Defendants

Case No. 3:20-cv-06456-JD

**PLAINTIFF'S MOTION FOR LEAVE TO AMEND HIS LEGAL COMPLAINT UNDER RULE 15(a)(2)**

Plaintiff Carl A. Wescott, proceeding *pro se*, respectfully requests leave of this Court to amend his legal complaint, under FRCP 15(a)(2). The Plaintiff previously requested leave to amend in response to Defendants' Motion to Dismiss, brought pursuant to Federal Rules of Civil Procedure 12(b)(6) and under FRCP Rule 8 for Romero Park, P.S. clients David Crowe, Mike Lyonette, Colin Ross, Brad Malcolm, and Michael Jimenez (filed on October 22nd, 2020 by Mr. Troy Romero, esq.). However, the Plaintiff encapsulated his request for leave to amend within the body of his Response to Defendants' Motion to Dismiss, in the last page, rather than as a separate Rule 15 Motion.

### Case Summary

By way of background and factual narrative, the case at bar arises from a breach of a contract in which a group of 20 investors and two associated parties had agreed to purchase approximately

1

PLAINTIFF'S MOTION FOR LEAVE TO AMEND HIS
LEGAL COMPLAINT UNDER FRCP RULE 15(a)(2)

923 acres of beach land from the Plaintiff. In 2018, the Plaintiff had locked up the purchase of a failed residential development called Seaside Mariana that had originally paid US $4 million for the same land, raw, years ago. The Plaintiff's contract called for payments of US $500,000 total to purchase the company that owned the Seaside Mariana land, with US $25,000 to be paid after the Plaintiff had completed his due diligence, and the other US $475,000 to be paid at the closing, within 60 days of the completion of due diligence.

The Plaintiff, however, did not have the cash to make the purchase, but he also did not want the land owned by the company, valuable though it may be in the right hands. (With the permits in place for a residential subdivision with more than 1000 residential lots on the 923 acres, and a completed subdivision, the land, in the hands of a developer with capital to put in the infrastructure for that residential subdivision, would likely appraise for over US $10,000,000 and could generate tens of millions in residential lot sales). The Plaintiff was purchasing the company that owned the failed development for other intangible assets that it owned. That company had and still has title insurance policies that could be monetized to the tune of US $8 million, tax-free (as the company had already lost over US $8 million due to title fraud and other issues covered by the title insurance policies). Like most of the population, the owners of the Seaside Mariana company did not fully understand the title insurance policies that they held, nor how to monetize them. The company also had over US $22 million in liabilities, all unsecured (because it had sold a small portion of the residential lots to 50+ people and collected US $22 million from them, but then never put in the infrastructure nor delivered fee simple title to the great majority of those 50+ people).

2

PLAINTIFF'S MOTION FOR LEAVE TO AMEND HIS
LEGAL COMPLAINT UNDER FRCP RULE 15(a)(2)

Lacking the $500,000 needed at the closing to purchase the company that owned the failed development, and frankly, lacking even the $25k due after his completed due diligence, the Plaintiff approached a group of investors that he knew were familiar with the land and wanted it. A group of 20 individuals (a subset of the 50+ people that had purchased within Seaside Mariana) had banded together to sue Kevin Fleming and his Seaside Mariana company, because they had paid millions of dollars to Kevin's company with promises of roads, electricity, security, septic, lights, and other infrastructure for the residential development. Those investors were also promised a Jack Nicklaus-designed golf course, a Wyndham hotel, condos, and other significant amenities, as well as title to the beach lots, residential lots on the golf course, and, in some cases, condominiums.

The promised infrastructure never materialized, and the investors, many of whom thought of retiring on that very same beach, did not get their lots. The Plaintiff had approached the leader of this group of investors, Mr. David Crowe, who had organized the investors together for the litigation. The group was informally known as the "Crowe Group", and the Plaintiff has adopted that vernacular. Another leader of the group of 20+ investors who had banded together was and is Mr. Michael Lyonette, who had loaned seven-digit amounts to Mr. Fleming and the Seaside Mariana company. In Mr. Lyonette's case, his loans were secured by first mortgages on neighboring land that had been carved out for the loans, but Mr. Lyonette had also paid for lots from Seaside Mariana and not received them.

The Plaintiff approached Mr. David Crowe and they worked out a deal, where Mr. Crowe and his group of investors would fund the US $500,000 for the Plaintiff's purchase of the Seaside Mariana company, including the US $25,000 that the Plaintiff would need to send to Kevin Fleming (the main

3

PLAINTIFF'S MOTION FOR LEAVE TO AMEND HIS
LEGAL COMPLAINT UNDER FRCP RULE 15(a)(2)

original owner of Seaside Mariana). Those same investors had previously worked out a deal (that later fell apart) to pay $1.5 million for the same land, and the Plaintiff offered them a much better deal that they accepted, where the investors would essentially be paying US $834,000 for the same land – the US $500,000 the Plaintiff needed for the purchase, plus another US $334,000 for the Plaintiff and one of his entities. Mr. Crowe agreed to a NCND (including a non-circumvent) on behalf of the group, given that the Plaintiff had the purchase of the Seaside Mariana company and land locked up in an enforceable contract.

That was the original contract between the Plaintiff and the Crowe Group, the group of twenty investors and two associates. After the Plaintiff and the Crowe Group had completed their due diligence (in August 2018) to confirm everything about Seaside Mariana was as expected (ownership, fee simple title, no secured debt on the land), the Crowe Group provided the US $25,000 for the Plaintiff to pass through to Mr. Fleming, as per the Plaintiff's contract with Mr. Fleming and the other owners of the Seaside Mariana company (Grupo Mariana and Maria Rueda).

At that point, in August 2018, the Plaintiff signed a new contract with the Crowe Group, in which the Crowe Group committed to closing within sixty (60) days and funding the other $475,000 that the Plaintiff needed to purchase the Seaside Mariana company. Notably, as the Crowe Group had completed its due diligence, there were no contingencies for the Crowe Group to pull out for any reasons. Thus, the twenty-two members of the Crowe Group partnership were committed to funding the US $475,000 for the Plaintiff to purchase the Seaside Mariana company, and then after the Plaintiff transferred the land to the Crowe Group (intended for immediately after closing in a

4

PLAINTIFF'S MOTION FOR LEAVE TO AMEND HIS
LEGAL COMPLAINT UNDER FRCP RULE 15(a)(2)

"simultaneous close"), then US $334,000 more to the Plaintiff and his entity in quarterly payments during 2019 and part of 2020. (The contract was included in the original legal complaint filing).

Everything was progressing smoothly towards the close, with the parties agreeing on various details, hiring attorneys, and setting a close date in mid-October 2018. However, just a couple days before the close, just before the Plaintiff was going to fly in for the closing, David Crowe informed the Plaintiff, on behalf of the Crowe Group, that they were pulling out of the deal and would not fund or close. Later, in mid-March 2019, despite the contractual agreement with the Plaintiff, and despite the non-circumvent agreed to, one of the members of the Crowe Group contacted Kevin Fleming and tried to purchase (on behalf of the group) the Seaside Mariana land directly, as a further repudiation of the contract with the Plaintiff.

In May 2020, the Plaintiff sued the twenty-two members of the Crowe Group in Maricopa County (as the original contract had a forum selection clause of Phoenix, Arizona), for various causes of action including breach of contract. The Plaintiff served all of the Crowe Group members that he could track down, and ten (10) of them that had been served and/or appeared filed a Notice of Removal to United States District Court in the District of Arizona. The Plaintiff then settled with a few of the Defendants. Because the final August 2018 contract had a forum selection clause of San Francisco, California, the remaining Defendants requested a change of venue to this Court.

The Plaintiff considered his monetization of the title insurance policies a trade secret. At least seven of the Crowe Group defendants – the ones who were most committed to funding the Plaintiff's purchase within the greater group – signed Non-Disclosure Agreements with the Plaintiff, in which

5

PLAINTIFF'S MOTION FOR LEAVE TO AMEND HIS
LEGAL COMPLAINT UNDER FRCP RULE 15(a)(2)

they agreed not to disclose any aspects of the Plaintiff's contract and plans to third parties, and also agreed that a breach could cause over US $10 million of base damages.

### Reasons the Plaintiff Would Like to Amend, and How Justice Would be Served

Before getting into the issues with the Legal Complaint, the Plaintiff notes that the Defendants' breaches (along with his own failures, prior to the breach, and to some extent, afterwards, too) have left him in relatively abject poverty. The Plaintiff cannot currently afford an attorney, though he would like to retain one when he can afford it. Thus, the Plaintiff has been doing his best to move this case forward as *in propria persona*. The Plaintiff is making his best efforts, but he is not an attorney, and thus, lacks knowledge and experience.

Defendants pointed out in their Motion to Dismiss that the Plaintiff has made "verbose and redundant allegations" and that the Plaintiff failed to "follow the rules." Defendants asked for the legal complaint to be dismissed (based on Rule 8) for these reasons, and also because the Plaintiff had included "immaterial verbiage." Defendants also point out, as further grounds for dismissal, with respect to the Plaintiff's causes of action, that he has not properly pled the elements in his causes of action. The Plaintiff agrees that his legal complaint could be improved, and should be improved. As two specific examples, the Plaintiff could plead fraud and misrepresentation, on the part of the Defendants with more specificity. The Plaintiff hereby moves this Court for permission to amend his pleadings to cure the noted deficiencies.

In further support of his moving this Court to grant him leave to amend his legal complaint, the Plaintiff notes that his pleadings were drafted for another jurisdiction and venue (Maricopa County Superior Court). The pleadings need to be updated and amended for District Court in

6

PLAINTIFF'S MOTION FOR LEAVE TO AMEND HIS
LEGAL COMPLAINT UNDER FRCP RULE 15(a)(2)

California and federal law and standards, as well as this Court's local rules (where, for example, the Plaintiff has not followed the full requirements for his requested jury trial in this Court). Though the Plaintiff corrected his initial Superior Court pleadings in June, noticing some errors, before Defendants responded, he has not yet previously had the opportunity to amend by request and Court order.

### Memorandum of Points and Authorities
### Legal Standards – Rule 15

"A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." *Fed. R. Civ. P. 15(a)(1)*. "In all other cases a party may amend its pleading only with the opposing party's written consent or the court's leave" and "[t]he court should freely give leave when justice so requires." *Fed. R. Civ. P. 15(a)(2)*.

### Supporting Case Law

Adding supporting case law to the Fed. R. Civ. P., "When justice requires, a district court should 'freely give leave' to amend a complaint." *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 871 (9th Cir. 2016). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Additionally, "[u]nder futility analysis, '[d]ismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment.'" *United States v. Corinthian Colleges*, 655

7

PLAINTIFF'S MOTION FOR LEAVE TO AMEND HIS
LEGAL COMPLAINT UNDER FRCP RULE 15(a)(2)

F.3d 984, 995 (9th Cir. 2011) (second alteration in original). The Supreme Court, in *Foman v. Davis*, has explained the circumstances under which denial of leave to amend is appropriate:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules. *Foman v. Davis*, 371 U.S. 178, 182 (1962)

*Pro se* pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). *Pro se* complaints are construed liberally and should only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014). A *pro se* litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend unless the complaint's deficiencies could not be cured by amendment. See *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

## ARGUMENT

The Plaintiff notes that this case is in its relative infancy. The Plaintiff alleges that allowing him to amend his legal complaint would serve the interests of justice, giving him an opportunity to put his best *pro se* foot forward. In doing so, he believes that this Court can best discover the truth as to what has occurred relative to the Crowe Group, and why. The Plaintiff's case can then be adjudicated based on its merits of the case.

8

PLAINTIFF'S MOTION FOR LEAVE TO AMEND HIS
LEGAL COMPLAINT UNDER FRCP RULE 15(a)(2)

Continuing the argument that this case is in its infancy, the Court has not yet held a Scheduling Conference, at which the Court will set a deadline for amending the pleadings and joining parties. See *Fed. R. Civ. P. 16(a)(3)(A)*. Thus, Plaintiff posits, there can be little, if any, argument by Defendants that Plaintiff's proposed amendments are unduly delayed or prejudicial.

Defendants have correctly pointed out some issues in the way the Plaintiff has pled his facts, claims, and causes of actions in his initial legal complaint. The deficiencies pointed out by Defendants can be solved with a permitted amendment. The resulting clarity will benefit all parties including this Court and a future jury, should we make it to a jury trial. The Plaintiff had previously cited in the legal standards of review that a *pro se* litigant, even more so than represented parties, is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

### Proposed Dates for Plaintiff's Submission of Amended Legal Complaint

The Plaintiff respectfully proposes that he submit the revised legal complaint twenty-one (21) days from now, on or around Tuesday, March 2nd, 2021. The Plaintiff plans to serve and file the revised complaint (and a redlined version) in early March 2021, recognizing that the Court may not have made a decision to grant leave to amend by then. The Plaintiff considers it a privilege to be in this Court and will continue to do his best to follow all Court orders and rules of civil procedure.

RESPECTFULLY SUBMITTED on Tuesday, February 9th, 2021.

*/s/ CA Wescott*
CARL A. WESCOTT, *pro se*

PLAINTIFF'S MOTION FOR LEAVE TO AMEND HIS
LEGAL COMPLAINT UNDER FRCP RULE 15(a)(2)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Carl A. Wescott,<br><br>              Plaintiff,<br>vs.<br><br>David Crowe; Jeff Rau; Mike Lyonette; Colin Ross; Brad Malcolm; et al.,<br><br>              Defendants. | No: 3:20-cv-06456-JD<br><br>[PROPOSED] ORDER ON PLAINTIFF's MOTION FOR LEAVE TO AMEND HIS LEGAL COMPLAINT UNDER RULE 15(a)(2)<br><br>**FILED**<br><br>FEB 11 2021<br><br>SUSAN Y. SOONG<br>CLERK, U.S. DISTRICT COURT<br>NORTH DISTRICT OF CALIFORN'^ |

After review of the pleadings on file, the Plaintiff's request for leave to amend his legal complaint is GRANTED. The Plaintiff shall file his proposed amended legal complaint (as well as a redlined version) by _____.

IT IS SO ORDERED.

Dated: _____   By:_____
                                                                    Judge of United States District Court