131.    Mr. Crowe contacted Mr. Fleming and attempted to negotiate the direct purchase of Seaside Mariana on behalf of these Defendants and the Litigating Group.

132.    As a direct and proximate result of these Defendants' breach of contract, the Plaintiff lost an asset he would have owned, the Seaside Mariana company.

133.    As a direct and proximate result of the Defendants' breach of contract, the Plaintiff lost US $334,000 in near term profits.

134.    As a direct and proximate result of the Defendants' breach, the Plaintiff avers that he lost up to another US $8 million (post-tax) in the medium term (within approximately nine months of the close) in proceeds that the Seaside Mariana company would have received.  (The Plaintiff is attempting to mitigate these damages; these Defendants have rejected any notion of mitigating the Plaintiff's damages, at least through mid-February 2021).

135.    In the alternative, Crowe's contact with Fleming and attempt to directly purchase the SM company and land constituted a further repudiation of the Funding Contract.

136.    The Plaintiff will fully prove all his base damages in the jury trial.


**Count II – Promissory Fraud**


~~60.~~137.         The Plaintiff realleges ~~paragraphs 1-55~~ paragraphs 1-92 as if fully set out herein.

~~61.~~138.         Pleading alternatively, the Defendants never intended to close on the ~~Sales Contract~~Funding Contract.

139.    As one plausible explanation for said behavior, the Crowe Group, long-term adversaries of Fleming, planned to use the Plaintiff's efforts to discover valuable strategic information

concerning Fleming's resources, price-points, and confidential plans (collectively "Fleming's Trade Secrets").

140.    As another plausible and not mutually exclusive explanation for said behavior, these Defendants were wealthy investors who could afford (as Mr. Jimenez did) to invest US $700,000 for the land alone for a second residence in a foreign country.  However, these Defendants did not have expertise in real estate development and Latin American title issues (though Mr. Rau sells property for a real estate developer).  These Defendants, who had already previously attempted to purchase the SM land, planned to discover valuable strategic information concerning the Plaintiff's strategy to monetize the SM company and/or its land, as well as the deal points of the Plaintiff's deal, which appeared to be at a million dollar plus lower price point than these Defendants had been able to negotiate (collectively "Wescott's Trade Secrets").

141.    David Crowe and Mike Lyonette made verbal promises to the Plaintiff, later codified in writing in the Funding Contract, that they would fund Plaintiff's purchase of the SM land (the "Litigators' Promises").

142.    Via David Crowe and Mike Lyonette, further verbal promises were made, also later codified in writing, that the Litigating Group would also fund Plaintiff's purchase of the SM land (the "Litigating Group's Promises").

62.

63. Indeed, the Plaintiff had negotiated a deal which was over a million dollars better in price than the Crowe Group had previously offered for the same assets, which is why they were willing to pay US $334,000 more than the Plaintiff's price for Seaside Mariana land.

143.    The Defendants' promises to close on the ~~Sales Contract~~Funding Contract and to fund Plaintiff's purchase of the Seaside Mariana company ("the ~~Crowe Group~~Litigators' Promises" and "the Litigating Group's Promises") were~~was~~ false when made, as part of a scheme. Upon information and belief, one part of the scheme was the attempt ~~t~~to induce the Plaintiff to uncover and communicate Fleming's Trade Secrets which these~~e~~ Defendants ~~y~~ in turn planned to misuse in a series of further strategic moves, in and out of Court. Upon information and belief, another part of the scheme was the attempt to induce the Plaintiff to share Plaintiff's Trade Secrets which these Defendants also planned to misuse.

144.    These Defendants intended that the Plaintiff rely on "the Litigators' Promises"~~on the Crowe Group Promise~~.

145.    These Defendants further intended that the Plaintiff rely on "the Litigating Group's Promises".

146.    In the non-exclusive alternative, these Defendants intended that the Plaintiff rely on "the Litigating Group's Promises".

147.    The Plaintiff did in fact reasonably rely on ~~the~~ the Litigators' Promises as well as the Litigating Group's Promises (collectively, "Both Sets of Promises"), as demonstrated by the facts that the Plaintiff signed the Funding Contract and committed to the Litigators and the Litigating Group as his source for the funding for the Plaintiff's purchase of the Seaside Mariana company.

148.    The Litigators did not fund the Plaintiff's purchase of the Seaside Mariana company, pulling out of the deal a couple days before the scheduled closing.

149.    As a result, the Plaintiff was damaged.

150.    These Defendants and the Litigating Group also did not fund the Plaintiff's purchase of the Seaside Mariana company, pulling out of the deal a couple days before the scheduled closing.

151.    As a result, the Plaintiff was damaged.

152.    The Plaintiff was damaged by his reliance on Both Sets of Promises by losing an asset he would have owned, the Seaside Mariana company.

153.    The Plaintiff was further damaged by his reliance on Both Sets of Promises by losing $334,00 in near term profits.

~~The Plaintiff was even further damaged by his reliance on Both Sets of Promises by losing~~ ~~Crowe Group Promise.~~

154.    up to another US $8 million (post-tax) in the medium term (within approximately nine months of the close) in proceeds that the Seaside Mariana company would have received.  (The Plaintiff is attempting to mitigate these damages; these Defendants have rejected any notion of mitigating these damages thus far).

155.    The Plaintiff's reliance on Both Sets of Promises was a substantial factor in the Plaintiff being damaged (as per the three main sets of base damages outlined above).

156.    The Plaintiff will fully prove all his base damages at jury trial.

~~The Plaintiff was damaged by his reliance on the Crowe Group promise by losing $334,00 in~~ ~~near term profits and (as specifically acknowledged in NDAs signed by members of the Crowe~~

1   Group, and as shall be fully proven at trial) the potential to recover in excess of $10,000,000

2   (ten million dollars) of further pre-tax value from intangible assets that the Plaintiff was

3   acquiring as part of the deal.

4   64.

5   65.1.   The Defendants intended that the Plaintiff rely on the Crowe Group Promise.

6   66.1.   The Plaintiff did in fact reasonably rely on the Crowe Group Promise.

7   67.   The Plaintiff was damaged by his reliance on the Crowe Group promise by losing $334,00

8   in near term profits and (as specifically acknowledged in NDAs signed by members of the Crowe

9   Group, and as shall be fully proven at trial) the potential to recover in excess of $10,000,000 (ten

10   million dollars) of further pre-tax value from intangible assets that the Plaintiff was acquiring as

11   part of the deal.

12

13                        **Count III – Promissory Estoppel**

14

15

16   157.   The Plaintiff realleges paragraphs 1-92 as if fully set out herein.

17   158.   David Crowe and Mike Lyonette made verbal promises to the Plaintiff, later codified in

18      writing in the Funding Contract, that they would fund Plaintiff's purchase of the SM land (the

19      "Litigators' Promises").

20   159.   Via David Crowe and Mike Lyonette, further verbal promises were made, also later codified

21      in writing, that the Litigating Group would also fund Plaintiff's purchase of the SM land (the

22      "Litigating Group's Promises").

23

24   160.   The Litigators reasonably expected that their promises would induce action on the part of

25      the Plaintiff, expecting that the Plaintiff would first sign and commit to the Funding Contract,

26

and then that the Plaintiff would do some of the Litigators' due diligence for them, and then that the Plaintiff might reveal to the Litigators Fleming's Trade Secrets and/or Wescott's Trade Secrets.

161.    In the non-exclusive alternative, the Litigators reasonably expected that their promises would induce forbearance on the part of the Plaintiff, expecting that the Plaintiff would not source another investor to fund his purchase of the Seaside Mariana company.

162.    The Litigating Group reasonably expected that their promises would induce action on the part of the Plaintiff, expecting that the Plaintiff would first sign and commit to the Funding Contract, and then that the Plaintiff would do some of the Litigators' due diligence for them, and then that the Plaintiff might reveal to the Litigators Fleming's Trade Secrets and/or Wescott's Trade Secrets.

163.    In the non-exclusive alternative, the Litigating Group reasonably expected that their promises would induce forbearance on the part of the Plaintiff, expecting that the Plaintiff would not source another investor to fund his purchase of the Seaside Mariana company.

164.    Both Sets of Promises did in fact reasonably induce the expected actions on the part of the Plaintiff, as the Plaintiff relied on those promises to his detriment.

165.    Both Sets of Promises did in fact reasonably induce the expected forbearance on the part of the Plaintiff, too, as the Plaintiff relied on those promises to fund to his detriment.

166.    Injustice could only have been avoided by enforcement of the promises.

167.    The Litigators did not fund the Plaintiff's purchase of the Seaside Mariana company, pulling out of the deal a couple days before the scheduled closing.

168.    As a result, the Plaintiff was damaged.

169.   These Defendants and the Litigating Group also did not fund the Plaintiff's purchase of the

Seaside Mariana company, pulling out of the deal a couple days before the scheduled closing.

170.   As a result, the Plaintiff was damaged.

171.   The Plaintiff was damaged by his detrimental reliance on Both Sets of Promises by losing an

asset he would have owned, the Seaside Mariana company.

172.   The Plaintiff was further damaged by his detrimental reliance on Both Sets of Promises by

losing $334,00 in near term profits.

173.   The Plaintiff was even further damaged by his detrimental reliance on Both Sets of Promises

by losing up to another US $8 million (post-tax) in the medium term (within approximately nine

months of the close) in proceeds that the Seaside Mariana company would have received.  (The

Plaintiff is attempting to mitigate these damages; these Defendants have rejected any notion of

mitigating these damages thus far).

174.   The Plaintiff will fully prove all his base damages at jury trial.

— **Count I~~V~~H – Negligent Misrepresentation**

175.   The Plaintiff realleges paragraphs 1-92 as if fully set out herein.

176.   David Crowe and Mike Lyonette made verbal representations to the Plaintiff, later codified

in writing in the Funding Contract, that they would fund Plaintiff's purchase of the SM

company (the "Litigators' Representations").

177.   Via David Crowe and Mike Lyonette, further verbal representations were made, also later codified in writing, that the Litigating Group would fund Plaintiff's purchase of the SM company (the "Litigating Group's Representations").

178.   Collectively, both sets of Representations shall be known as Both Sets of Representations.

179.   Pleading in the non-exclusive alternative, at the time David Crowe and Mike Lyonette made Both Sets of Representations, Mr. Crowe and Mr. Lyonette were acting in their professional capacities and had pecuniary interests in the underlying transaction.

180.   Mr. Crowe failed to exercise due care in making Both Sets of Representations that the Litigators would fund the Plaintiff's purchase of the SM company, and that the Litigating Group would fund the Plaintiff's purchase of the SM company.

181.   Mr. Lyonette failed to exercise due care in making Both Sets of Representations that the Litigators would fund the Plaintiff's purchase of the SM company, and that the Litigating Group would fund the Plaintiff's purchase of the SM company.

182.   The Plaintiff justifiably relied on the Litigators' representations.

183.   The Plaintiff justifiably relied on the Litigating Group's representations.

184.   The Litigators did not fund the Plaintiff's purchase of the Seaside Mariana company (as they had represented), pulling out of the deal a couple days before the scheduled closing.  As a result, the Plaintiff was damaged.

185.   These Defendants and the Litigating Group also did not fund the Plaintiff's purchase of the Seaside Mariana company (as they had represented), pulling out of the deal a couple days before the scheduled closing.  As a result, the Plaintiff was damaged.

186.    The Plaintiff was damaged by his reliance on Litigators' representations by losing an asset he would have owned, the Seaside Mariana company.

187.    The Plaintiff was further damaged by his reliance on Litigators' representations by losing $334,00 in near term profits.

188.    The Plaintiff was further damaged by his reliance on Litigators' representations by losing up to another US $8 million (post-tax) in the medium term (within approximately nine months of the close) in proceeds that the Seaside Mariana company would have received. (The Plaintiff is attempting to mitigate these damages, whereas the Litigators have rejected any notion of mitigating these damages thus far).

189.    The Plaintiff was damaged by his reliance on the Litigating Group's representations, as well, by losing an asset he would have owned, the Seaside Mariana company.

190.    The Plaintiff was further damaged by his reliance on the Litigating Group's representations by losing $334,00 in near term profits.

191.    The Plaintiff was further damaged by his reliance on the Litigating Group's representations by losing up to another US $8 million (post-tax) in the medium term (within approximately nine months of the close) in proceeds that the Seaside Mariana company would have received. (The Plaintiff is attempting to mitigate these damages)

192.    The Plaintiff will fully prove all his base damages at jury trial.


63. The Plaintiff realleges paragraphs 1-55 as if fully set out herein.

1    64. Pleading in the alternative, at the time David Crowe made the Crowe Group Promise (aka "the

2    Representation"), Mr. Crowe was acting in his professional capacity and had a pecuniary interest in

3    the underlying transaction.

4    65. Crowe failed to exercise due care in making the Representation that he and the Crowe Group

5    would close on the Sales Contract ("the Crowe Group Promise")

6

7    66. The Plaintiff justifiably relied on the Representation.

8    67. The Plaintiff was injured by Crowe's lack of due care in making the Representation by losing

9    $334,000 in short-term profits as well as a much larger sum to be proven at trial.

10

11                        Count IV — **Tortious Interference** Intentional Interference with **Contractual**

12   **Relations**

13

14

15

16   —

17   The Plaintiff realleges paragraphs 1-55 paragraphs 1-92 as if fully set out herein.

18   193.

19

20   68. At all relevant times, the Plaintiff was in an economically advantageous relationship with Fleming

21   ("the Relationship") that was likely to confer substantial benefits, especially given the parties'

22   complimentary expertise and interest in Central American development.

23   194.

24

25

26

                                        35

69. Indeed, the Plaintiff had entered into numerous other contracts ("the Other Related Contracts) to Ppurchase assets, companies, land, and legal claims from Fleming, his wife Maria Rueda, and eight more of their companies.

195.

196.    The Plaintiff was also working on a deal with the Jamaican government.

197.    The Defendants were aware of the Relationship and the Other Related Contracts and the Jamaican government deal both generally and specifically.

198.    The Plaintiff had made David Crowe, agent and communicator for the other Defendants, specifically aware of the contracts and what he expected to make on them.

68.199.        The Plaintiff also revealed to Mr. Crowe, and thus all of these Defendants, in October 2018 that he had purchased Mr. Fleming's, Ms. Rueda's, and their companies' legal claims, which had been assigned to him.

128. The Defendants were aware that their refusal to close on the Sales ContractFunding Contract, and these Defendants' refusal to fund the Plaintiff's purchase of the Seaside Mariana company, would burden the Relationship.

129.These Defendants were also aware that their refusal to fund the Plaintiff's purchase of the Seaside Mariana company would interfere with the Plaintiff's other contracts to purchase the rest of the assets of Fleming, Rueda, Grupo Mariana, and Nicaragua Developments, including eight more companies, in two ways:  (1) by burdening the Relationship, and (2) by leaving the Plaintiff without the financial wherewithal to close his purchases as outlined in the Other Related Contracts.

69.

130. The Defendants' refusal to ~~close~~honor ~~on~~ the ~~Sales Contract~~Funding Contract foreseeably and substantially interfered with and disrupted the Relationship.

131.The Defendants' refusal to honor the Funding Contract foreseeably and substantially interfered with the Plaintiff's ability to perform on the Other Related Contracts, and thus interfered with the Other Related Contracts, too.

~~70.~~

132. The Plaintiff was harmed by the Defendants' intentional acts of interference with the Relationship by the consequential loss of profits in the Other Related Contracts and in future Central American transactions with Fleming and his associates.

133.The Plaintiff was harmed by the Defendants' intentional acts of interference with his ability to perform as outlined in the Other Related Contracts and in future Central American transactions with Fleming and his associates.

134.The Plaintiff was therefore harmed by the Defendants' intentional acts of interference with the Other Related Contracts themselves.


## Count VI – Negligent Interference with Contractual Relations


200.    The Plaintiff realleges paragraphs 1-92 as if fully set out herein.

201.    Pleading in the non-exclusive alternative, at all relevant times, the Plaintiff was in an economically advantageous relationship with Fleming ("the Relationship") that was likely to confer substantial benefits, especially given the parties' complimentary expertise and interest in Central American development.

37

202.    Indeed, the Plaintiff had executed numerous other contracts ("the Other Related Contracts) to purchase assets, companies, land, and legal claims from Fleming, his wife Maria Rueda, and eight more of their companies.

203.    The Plaintiff was also working on a deal with the Jamaican government.

204.    The Defendants were aware of the Relationship and the Other Related Contracts and the Jamaican government deal both generally and specifically.

205.    The Plaintiff had made David Crowe, agent and communicator for (and partner to) the other Defendants, specifically aware of the contracts and what he expected to make on them.

206.    The Plaintiff also revealed to Mr. Crowe, and thus all of these Defendants, in October 2018 that he had purchased Mr. Fleming's, Ms. Rueda's, and their companies' legal claims, which had been assigned to him.

135. The sum total of all of the Plaintiff's expected or prospective revenue and profits from the Relationship, the Other Related Contracts, and the Jamaican government deal shall be referred to as the "Plaintiff's Contractual Relations."

136. The Defendants were aware or should have been aware of the Relationship both generally and specifically, as well as the Plaintiff's Contractual Relations.

137. The Defendants knew that the Relationship and the Plaintiff's Contractual Relations would be disrupted if they failed to act with due care.

138. The Defendants were aware that their refusal to close on the Funding Contract, and these Defendants' refusal to fund the Plaintiff's purchase of the Seaside Mariana company, would burden the Relationship.

139. These Defendants were also aware that their not funding the Plaintiff's purchase of the Seaside Mariana company would interfere with the Plaintiff's other contracts relations, including his contracts to purchase the rest of the assets of Fleming, Rueda, Grupo Mariana, and Nicaragua Developments, including eight more companies, in two ways: (1) by burdening the Relationship, and (2) by leaving the Plaintiff without the financial wherewithal to close perform for these and other Plaintiff Contractual Relations.

140. By breaching and repudiating the Funding Contract and not funding the Plaintiff's purchase of the Seaside Mariana company, these Defendants failed to act with due care and substantially interfered with and disrupted the Relationship.

141. By breaching and repudiating the Funding Contract and not funding the Plaintiff's purchase of the Seaside Mariana company, these Defendants further failed to act with due care and substantially interfered with and disrupted the Plaintiff's Contractual Relations.

142. The Plaintiff was harmed by the Defendants' acts of negligent interference with the Relationship and the Plaintiff's Contractual Relations by the consequential loss of profits in the other transactions and contracts Plaintiff had formed with Fleming, his wife, and his companies, as well as other opportunities that the Plaintiff likely would have benefited from based on the Relationship.

143. The Plaintiff shall prove the amounts of these base damages at jury trial.

71.

**Count VII Intentional Interference with Prospective Economic Advantage**

144. The Plaintiff realleges paragraphs 1-92 as if fully set out herein.

145. At all relevant times, the Plaintiff was in an economically advantageous relationship with Mr. Kevin Fleming ("the Relationship").  Indeed, the Plaintiff expected specific economic advantages that were already encapsulated in numerous other contracts the Plaintiff had already executed with Fleming and related parties ("the Other Related Contracts")

146. At all relevant times, the Plaintiff's economically advantageous relationship with Fleming ("the Relationship") was likely to confer further substantial benefits especially given the parties' complementary expertise and interest in Central American development.

147. The Plaintiff was also working on a deal with the Jamaican government.

148. The sum total of all of the Plaintiff's expected or prospective economic advantages from the Relationship and from the positive economic force from his purchase of the Seaside Mariana company shall be referred to as the "Plaintiff's Prospective Economic Advantages."

149. The Defendants were aware or should have been aware of the Relationship both generally and specifically, as well as the Plaintiff's Prospective Economic Advantages.

207.    The Plaintiff had made David Crowe, agent and communicator for the other Defendants, specifically aware of the contracts and what he expected to make on them.

208.    The Plaintiff also revealed to Mr. Crowe, and thus all of these Defendants, in October 2018 that he had purchased Mr. Fleming's, Ms. Rueda's, and their companies' legal claims, which had been assigned to him.

150. The Defendants were aware that their refusal to honor the Funding Contract and these Defendants' refusal to fund the Plaintiff's purchase of the Seaside Mariana company, would burden the Relationship.

151. Indeed; these Defendants' refusal to fund the Plaintiff's purchase of the Seaside Mariana company did burden the Relationship.

152. These Defendants were also aware that their refusal to fund the Plaintiff's purchase of the Seaside Mariana company would interfere with the Plaintiff's Prospective Economic Advantages: (1) by burdening the Relationship, and (2) by leaving the Plaintiff without the financial wherewithal to close his purchases in the Other Related Contracts, nor finalize and execute his deal in Jamaica.

153. The Defendants' refusal to honor the Funding Contract foreseeably and substantially interfered with and disrupted the Relationship.

154. The Defendants' refusal to honor the Funding Contract foreseeably and substantially interfered with the Plaintiff's Prospective Economic Advantages.

155. The Plaintiff was harmed by the Defendants' intentional acts of interference with the Relationship by the consequential loss of revenue and profits.

156. The Plaintiff was harmed by the Defendants' intentional acts of interference with his ability to perform in the Other Related Contracts and in his Jamaican deal.

157. The Plaintiff was harmed by the Defendants' intentionally interfering with the Relationship and with the Plaintiff's Prospective Economic Advantages by the consequential loss of profits in the other transactions and contracts Plaintiff had formed with Fleming, his wife, and his companies, as well as other opportunities that the Plaintiff likely would have benefited from based on the Relationship.

158. The Plaintiff shall prove the amounts of these base damages at jury trial.

#### Count V Negligent Interference with Economic Advantage

41

72.    The Plaintiff realleges paragraphs 1-55 as if fully set out herein.

73.    At all relevant times, the Plaintiff was in an economically advantageous relationship with Fleming ("the Relationship") that was likely to confer substantial benefits especially given the parties' complimentary expertise and interest in Central American development.

74.    The Defendants were aware or should have been aware of the Relationship both generally and specifically.

75.    The Defendants knew that the Relationships would be disrupted if they failed to act with due care.

76.    By breaching and repudiating the Sales Contract the Defendants failed to act with due care and substantially interfered with and disrupted the Relationship.

77.    The Plaintiff was harmed by the Defendants' acts of negligent interference with the Relationship by the consequential loss of profits in the other transactions and contacts Plaintiff had formed with Fleming, his wife, and his companies.

**—Count VIII Negligent Interference with Prospective Economic Advantage**

159. The Plaintiff realleges paragraphs 1-92 as if fully set out herein.

160. At all relevant times, the Plaintiff was in an economically advantageous relationship with Mr. Kevin Fleming ("the Relationship").  Indeed, the Plaintiff expected specific economic

42

advantages that were already encapsulated in numerous other contracts the Plaintiff had already executed with Fleming and related parties ("the Other Related Contracts")

161. At all relevant times, the Plaintiff's economically advantageous relationship with Fleming ("the Relationship") was likely to confer further substantial benefits especially given the parties' complementary expertise and interest in Central American development.

162. The sum total of all of the Plaintiff's expected or prospective economic advantages from the Relationship shall be referred to as the "Plaintiff's Prospective Economic Advantages."

163. The Defendants were aware or should have been aware of the Relationship both generally and specifically, as well as the Plaintiff's Prospective Economic Advantages

164. The Defendants knew that the Relationship and the Plaintiff's Prospective Economic Advantages would be disrupted if they failed to act with due care.

165. By breaching and repudiating the Funding Contract and not funding the Plaintiff's purchase of the Seaside Mariana company, these Defendants failed to act with due care and substantially interfered with and disrupted the Relationship.

166. By breaching and repudiating the Funding Contract and not funding the Plaintiff's purchase of the Seaside Mariana company, these Defendants further failed to act with due care and substantially interfered with and disrupted the Plaintiff's Prospective Economic Advantages.

167. The Plaintiff was harmed by the Defendants' acts of negligent interference with the Relationship by the consequential loss of profits in the other transactions and contracts Plaintiff had formed with Fleming, his wife, and his companies, as well as other opportunities that the Plaintiff likely would have benefited from based on the Relationship.

168. The Plaintiff shall prove the amounts of these base damages at jury trial.

1

2

3

_____Count **IX**~~VI~~ – Breach of the Covenant of Good Faith **and**~~&~~ Fair Dealing

4

5

169. The Plaintiff realleges ~~paragraphs 1-55~~ paragraphs 1-92 as if fully set out herein.

6

170. The Plaintiff entered in to contracts with these Defendants including the Funding Contract.

7

~~78.~~

8

~~79.~~171.        The Plaintiff performed all conditions required of him by the contract.

9

10

~~80.~~172.        The Defendants interfered with the Plaintiff's right to receive the benefits of the

contract.

11

12

173. As a direct and proximate result of the Defendants' breach of the covenant of good faith and

13

fair dealing, implied in law in every contract including the ~~Sales Contract~~Funding Contract, the

14

Plaintiff lost an asset he would have owned, the Seaside Mariana company.

15

174. As a further direct and proximate result of the Defendants' breach of the covenant of good

16

faith and fair dealing, implied in law in every contract including the Funding Contract, the

17

Plaintiff lost $334,000 in near term profits.

18

175. As a direct and proximate result of the Defendants' breach of the covenant of good faith and

19

20

fair dealing, implied in law in every contract including the Funding Contract, the Plaintiff ~~the~~

21

~~Plaintiff lost $334,000 in near term profits and (as specifically acknowledged in NDAs signed~~

22

~~by members of the Crowe Group, potential recoveries in excess of $10,000,000 (ten million~~

23

~~dollars) in legal claims.~~lost up to another US $8 million (post-tax) in the medium term (within

24

approximately nine months of the close) in proceeds that the Seaside Mariana company would

25

26

have received.  (The Plaintiff is attempting to mitigate these damages; these Defendants have

rejected any notion of mitigating the Plaintiff's damages, at least through mid-February 2021).

176. The Plaintiff will fully prove all his base damages at jury trial.


**Count X – Negligent Infliction of Emotional Distress**


The    Plaintiff    realleges    paragraphs    1-92    as    if    fully    set    out    herein.

177.

178. These Defendants owed the Plaintiff contractual duties as well as a fiduciary duty to honor the

contract and fund the Plaintiff's purchase of the Seaside Mariana.

179. These Defendants breached their duties, resulting in enormous damages to the Plaintiff.

180. The situation was especially traumatic to the Plaintiff as he had been mired in abject poverty

for years, and thus, closing on his purchase of the Seaside Mariana company represented the

solution to most of the Plaintiff's major life issues.

181. As one example of the ramifications, the Plaintiff had not paid substantial Child Support since

2014 and had not seen his children.

182. The Plaintiff planned to make significant Child Support payments and also hire an attorney so

he could see his children, once these Defendants honored their obligations.

183. For these Defendants to pull out of the funding and closing almost at the closing table was

especially emotionally devastating to the Plaintiff, given his hopes and dreams.

184. These Defendants' breaches of duty therefore foreseeably inflicted extreme emotional distress

on the Plaintiff.

185. These Defendant's breaches of duty were the proximate cause of the Plaintiff's emotional

distress.

[rest of page blank; Prayer for relief follows on next page][rest of this page blank; Prayer for Relief follows on the next page]

WHEREFORE, Plaintiff prays

(a) As to Count I for all direct and consequential damages the Plaintiff incurred as a proximate result of the Defendants' breach of contract;

(b) As to Count II for all direct and consequential damages the Plaintiff incurred as a proximate result of David Crowe's (and these Defendants'~~-Crowe Group'~~)~~s~~) promissory fraud along with the imposition of exemplary damages to deter the Defendants from committing such acts of fraud in the future;

(c) As to Count III for all direct and consequential damages the Plaintiff incurred as a proximate result of David Crowe's (and these Defendants') promissory estoppel along with the imposition of exemplary damages to deter the Defendants from committing such acts in the future;

~~(b)~~

(d) As to Count IV~~II~~ for all direct and consequential damages the Plaintiff incurred as a proximate result of Crowe's negligent misrepresentations along with the imposition of exemplary damages to deter Defendants from committing such acts ~~of fraud~~ in the future.

(e) As to Count V for an award of damages sufficient to compensate the Plaintiff for all direct and consequential damages caused by the Defendants' tortious interference with the Plaintiff's contractual relations as well as the imposition of exemplary damages in an amount sufficient to punish and deter the Defendants from committing similar acts of interference in the future.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

(f)  As to Count VI for an award of damages sufficient to compensate the Plaintiff for all direct and consequential damages caused by the Defendants' negligent interference with the Plaintiff's contractual relations.

(g) As to Count VII for an award of damages sufficient to compensate the Plaintiff for all direct and consequential damages caused by the Defendants' intentional interference with the Plaintiff's prospective economic advantages as well as the imposition of exemplary damages in an amount sufficient to punish and deter the Defendants from committing similar acts of interference in the future.

~~(c)~~

~~(a) As to Count IV for an award of damages sufficient to compensate the Plaintiff for all direct and consequential damages caused by the Defendants' intentional interference with the Plaintiff's Contracts as well as the imposition of exemplary damages in amount sufficient to punish and deter the Defendants from committing similar acts of interference in the future.~~

(h) As to Count V~~I~~II for an award of damages sufficient to compensate the Plaintiff for all direct and consequential damages caused by the Defendants' negligent interference with the Plaintiff's prospective economic advantages.  ~~Economic Relations.~~

~~(d)~~

(i) As to Count IX~~VI~~ for an award of damages, in an amount sufficient to compensate the Plaintiff~~ ~~ for all direct and consequential damages caused by the Defendants' breach of the covenant of good faith and fair dealing and for the imposition of exemplary damages in

an amount sufficient to punish and deter the Defendants from engaging in acts of bad faith in the future.

(e) As to Count X, for an award of all damages proximately caused by the Defendant's negligent infliction of emotional distress;

(j)

(k) For all costs of suit, including fees, paralegal costs, costs of travel, future attorneys' fees, and reasonable compensation for the Plaintiff's time while representing himself;

(f)(l)    For such other and further relief as the Court deems just.

RESPECTFULLY SUBMITTED on February 16th, 2021June 12th, 2020

_____
CARL A. WESCOTT

49