CARL A. WESCOTT
8210 E. VIA DE LA ESCUELA
SCOTTSDALE AZ 85258
*in propria persona*
CARLWSOJ@GMAIL.COM
+1 936 937 2688

**FILED**

APR 06 2022

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL A. WESCOTT,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID CROWE;<br>MIKE LYONETTE;<br>JEFF RAU;<br>BRAD MALCOLM;<br>MICHAEL JIMENEZ,<br><br>Defendants | Civil Action No. 3:20-cv-06456-JD<br><br>**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT MR. JEFFREY RAU'S DISCOVERY ABUSE** |

In his original Rule 37(d)(2) Motion seeking relief including sanctions related to Defendant Jeffrey Rau's Discovery Abuse, the Plaintiff respectfully requested that the Court consider:

- Resetting Mr. Rau's deposition clock to zero

- For Mr. Rau to pay the reasonable expenses for costs expended in the taking of Mr. Rau's deposition which were almost completely wasted based on Mr. Rau not producing documents he should have produced (and worse yet, lying under oath and penalty of perjury about not having responsive documents when he actually had hundreds of responsive documents).

1

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

- Sanctioning Defendant Mr. Rau for his failure to produce those hundreds of documents responsive to the Plaintiff's Requests for Production.

- Warning Mr. Rau about the possibility of final case-dispositive sanctions if he continues to refuse to cooperate with the discovery process.

In the body of the Plaintiff's Rule 37(d)(2) Motion, the Plaintiff also respectfully requested that the Court specifically hold, consistent with Rule 34(b)(2)(C) that Mr. Rau has now waived any and all Objections, though the Plaintiff will not request attorney client privileged documents or attorney work product. The Plaintiff will continue to insist on a proper privilege log, which will be one of the subjects covered in an upcoming Rule 37(a) Motion to Compel that, unfortunately, appears to be necessary.

1. Inadequate Documentation Concerning the Plaintiff's attempts to meet and confer

Mr. Rau filed his Response in Opposition to the Plaintiffs Motion on March 25th, 2022 via his attorney Troy Romero, esq. In that Response in Opposition, Mr. Romero correctly pointed out that the Plaintiff could have done a much better job in documenting his numerous efforts to meet and confer with Mr. Rau on discovery abuse issues. Fortunately for the Plaintiff, Mr. Romero is not correct that the Plaintiff did not attempt to meet and confer. The Plaintiff, a legal *layperson in propria persona*, simply did not do an adequate job in documenting those efforts in the required format. For that, the Plaintiff apologizes to the Court and to Defendants and counsel. The Plaintiff has included the required documentation attached herein (Exhibit A, Legal Standards and Summary of Facts; Exhibit B, Sworn Declaration and Affidavit of Plaintiff Carl A. Wescott including Good Faith meet and confer attestation).

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

2.  <u>Background of the circumstances necessitating the Plaintiff's Rule 37(d)(2) Motion</u>

Beyond that one true, valid point, Mr. Rau seems rather confused and appears to suffer from selective amnesia.  Counsel, on Mr. Rau's behalf, makes arguments opposing the Production of Documents responsive to the Plaintiff's properly propounded discovery (Requests for Production, served on June 11th, 2021), as if the Plaintiff had filed a Rule 37(a) Motion.  However, in his Rule 37(d)(2) Motion, the Plaintiff was complaining about Mr. Rau's discovery abuse.  The related nexus is Mr. Rau not producing documents responsive to the Plaintiff's RFPs, but rather than asking the Court to order production (that will come in a future motion), the Plaintiff seeks reimbursement for his wasted deposition costs and time, and related sanctions and orders.

The specifics of Mr. Rau's discovered abuse were that Mr. Rau lied in his RFP responses, not providing any emails in some categories, and not producing any documents in other categories, after certifying under oath and penalty of perjury that he had no insurance policies, had taken no loans recently, and had no documents related to Carl Wescott, the Plaintiff.  Mr. Rau also certified under penalty of perjury that he had no emails related to Carl Wescott and no emails related to Seaside Mariana, the property that the Plaintiff was purchasing for Defendants that is the center of the parties' controversy (*c.f.,* brief Case Summary in Exhibit C).

In other discovery responses, Mr. Rau certified under penalty of perjury that he had no idea who Carl Wescott is, who Kevin Fleming is, and what Seaside Mariana is.  As detailed in the 37(d)(2) Motion, the Plaintiff then invested more than $2,400 and significant amounts of his time to prepare to depose Mr. Rau, travelled to Seattle to do so, hired a videographer and other service providers, and began to depose Mr. Rau.  After Mr. Rau was sworn in, the Plaintiff found out that all of Mr. Rau's discovery responses as listed above were lies under oath.

3

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

3.  <u>The Plaintiff's original requests in his Rule 37(d)(2) Motion & Reference to Rule 37(a)</u>

The Plaintiff, in his original Rule 37(d)(2) Motion, asked for reimbursement of thousands of dollars of wasted costs on the deposition in which he could not question Mr. Rau about a subset of hundreds of documents that do exist after all, or for the costs of his next deposition of Mr. Rau to be covered by Mr. Rau, as Rule 37(d)(2) so allows in these particular circumstances. The Plaintiff is not sure he will depose Mr. Rau again, as, as soon as Mr. Rau or another Crowe Group defendant provides the Operating Agreement at the heart of this case (for the Crowe Group, aka the Litigating Group in the parties' contract), the Plaintiff plans to file a Motion for Summary Judgment. Hence, the Plaintiff requested and re-requests in his Reply that Mr. Rau reimburse him $2400 (rounding down to the nearest $100) of wasted costs on flights, a night of hotel in Seattle, Ubers, copying expenses, the videographer and other service professional, a paralegal, and parking expenses, all related to Mr. Rau's October 12th, 2021 deposition. The deposition was almost entirely a waste of time and money due to Mr. Rau's perjury, claiming he did not have documents responsive to the Plaintiff's properly propounded RFP requests. The Plaintiff therefore could not question Mr. Rau about the documents, and in the deposition, determined that Mr. Rau had roughly 550 documents he had not provided responsive to the RFP requests.

The Plaintiff requested $1000 for the days of time he invested preparing for the deposition, traveling to Seattle, staying there overnight, conducting the deposition, and then returning home, on the basis that counsel to Mr. Rau billed Mr. Rau more than that for deposition time.

The Plaintiff requested that Mr. Rau's deposition clock be reset to zero. The Plaintiff also requested that the Court specifically hold, consistent with Rule 34(b)(2)(C) that Mr. Rau has now waived any and all Objections.

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

Litigation is a truth-seeking enterprise, and the discovery process is necessary so that the light of the truth can shine on murky circumstances initially mired in controversy and dispute. Hence, the Plaintiff requested sanctions, which Rule 26(g)(3) *requires* in cases of improper attestation. Finally, the Plaintiff respectfully requested that the Court consider warning Mr. Rau about the possibility of final case-dispositive sanctions if he continues to refuse to cooperate with the discovery process.

Unfortunately, due to Mr. Rau's refusal to cooperate with the discovery process (or perhaps that's Mr. Rau's obstinate attorneys), the Plaintiff will likely need to trouble the Court two more times over discovery disputes and issues with Mr. Rau.    As the Plaintiff mentioned in his original Rule 37(d)(2) Motion:

> In the interests of judicial efficiency, the Plaintiff will be filing a parallel motion within a few weeks with the same hearing date, with a Motion to Compel Production filed in parallel with this Rule 37(d)(2) Motion.

Luckily, Mr. Rau is already prepared for that Motion, having advanced all his Rule 37(a) arguments in his Response in Opposition to the Plaintiff's Rule 37(d)(2) Motion. Alternatively, perhaps Mr. Rau is planning to switch things up, and we'll see arguments against the Rule 37(d)(2) Motion filed when the Plaintiff files his Rule 37(a) Motion to Compel, that is, unfortunately, necessary (Exhibit D). The Plaintiff has already drafted the Motion to Compel and the Motion to Deem Certain of Mr. Rau's RFA Responses Admitted (Exhibit E).

4. Legal Argument Summary

Now that we've set the stage with some of the facts and context, let's address legal arguments both proper and improper. Plaintiff Carl Wescott, proceeding *pro se*, hereby further replies to the

5

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

legal arguments in the Response of Defendant Jeffrey Rau to the Plaintiff's Motion for 37(d)(2)

Sanctions with the following concise Memorandum of Points & Authorities.


### 4a.  Perjury is not an Objection

The Plaintiff's argument in bringing this Motion is simple and straightforward: *perjury* is not

an Objection. The Defendant is asking this Court to "pay no attention to the man behind the curtain" [1]

and to rule as though this were a garden variety discovery disagreement.

Indeed, the Defendant is furiously attempting to recast this case as a dispute over the

reasonableness of discovery requests.  It is not.  It is a dispute over the perjuriously false attestation

of responses to RFP requests, choreographed by the Defendant's counsel with the intent of

obstructing his client's deposition.

The Defendant's attempt to conflate this issue, after a series of *ad hominem* swipes at the

Plaintiff.  Mr. Romero seems to be implying that it is apparently permissible under the Federal Rules

to commit perjury in discovery responses to *pro se* Plaintiffs who have been declared vexatious in

*State* Court, despite the more rigorous threshold of Federal Court for such a finding. See *De Long v.*

*Hennessey*, 912 F.2d 1144, 1146 (9th Cir. 1990)].  Federal Courts understandably do not want to

referee legitimate discovery disputes without considerable spade work from the litigating parties.


### 4b.  Mr. Rau does not have a Legitimate Discovery Dispute

However, this is not a legitimate discovery dispute. The RFP responses provided by Mr. Rau

with the expert guidance of his counsel amount to a *fraud* on this Court. Mr. Rau attested, under oath,

---

[1] Line spoken by Frank Morgan, *Wizard of Oz,* 1939

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

that he did not possess documents that were indisputably under his control. Specifically, Mr. Rau attested under oath (first, in blank... then, second, with a back-dated signed oath under penalty of perjury) that he possessed no documents concerning Carl Wescott; that he possessed no insurance policies and had applied for no loans; and that he possessed no *emails* concerning Carl Wescott and no emails concerning Seaside Mariana. Mr. Rau then admitted in his deposition that he possessed hundreds of such documents – specifically, "dozens of emails" concerning Carl Wescott and "hundreds of emails" concerning Seaside Mariana – "approximately five hundred."

Federal Courts have treated this category of attorney (and/or client) misconduct differently than even a marginally reasonable objection as to scope and confidentiality. Accordingly, the Defendant is not entitled to the usual benefit of the doubt.

5. <u>Defense Counsel has Interfered with his Client's Deposition by Fraudulent Means</u>
(a) <u>Rule 26 (g) (3) *requires* the imposition of sanctions for improper attestation.</u>

Of course, the usefulness of a deposition is limited – perhaps a better word would be sabotaged – by lack of access to relevant and discoverable documents.

The Defendant in this case attested, under perjury that he did not possess responsive documents to the Plaintiff's requests for emails concerning the Plaintiff. At his deposition, the Defendant conceded he had hundreds of such documents. It beggars credulity to assume that this was either an innocent mistake or the result of an overly broad request by the Plaintiff[2]. In this respect, the Plaintiff points out to this Court that he is not a celebrity, nor a source of endless fascination for business counterparties. He did not know Mr. Rau before their one transaction. Thus, necessarily, requests for documents related to Carl Wescott are highly relevant to this case, just like documents

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

related to Seaside Mariana, the real property the Plaintiff was selling to Mr. Rau. Kevin Fleming, the seller of that property, is the other party that is highly relevant to the transaction at hand, and therefore, to the case at bar. The emails relating to that transaction should be manageable to retrieve. Mr. Rau testified in his deposition that he had all the emails on his computer, and that he had no issues of data loss (Exhibit B). Mr. Rau was charged with reasonable diligence in undertaking the retrieval. *Fendi Adele v. Filene's Basement, Inc.*, No. 6 Civ. 244-RMB-MHD, 2009 WL 855955, at *8 (S.D.N.Y. Mar. 24, 2009) ("litigants have an obligation, when discovery is sought from them, to make reasonable efforts to locate responsive documents").

There was no confusion in this case. There was trickery and fraud on the Court. See, Hague, Fraud on the Court and Abusive Discovery, 16 Nev. L.Journal 707 (2016). Professor Hague collects the cases which hold that discovery abuse can reach the level of fraud on the Court (see particularly, pp. 725-730. *In re Fletcher*, 424 F.3d 783, 785 (8th Cir. 2005); *Van Pilsum v. Iowa State Univ. of Sci.and Tech.*, 152 F.R.D. 179, 180–81 (S.D. Iowa 1993) (order on motion to compel*); Hall v. Clifton Precision,* 150 F.R.D. 525, 526 (E.D. Pa. 1993). This is, quite simply, a case in which an attorney improperly and dishonestly interfered with the taking of his client's deposition. And, such misconduct is rife in cases involving *pro se* litigants (see pp. 717-720). Relatedly, the Plaintiff does not believe Romero Park, P.S. attorneys regularly fashion extreme examples of discovery abuse. The Plaintiff believes that the relevant attorneys phoned it in believing that they could get away with it, believing that there was and is nothing a pro se litigant would be able to do in response. Indeed, the Plaintiff has invested quite significant time over a period of *months* drafting the three Rule 37 Motions and has had to hire a paralegal to help him with the drafting.

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

The Defendant responds to the Plaintiff's Motion as though the Defendant had admitted possession of the documents in question but merely interposed proper and timely objections concerning the scope of the discovery requested or confidentiality concerns. But the Defendant lied under oath about not possessing documents he later admitted to possessing. This activates FRCP 26 (g)(3) which reads:

> (3) *Sanction for Improper Certification.* If a certification violates this rule without substantial justification, the court, on motion or on its own, **must** impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation. (**Emphasis** added)

In an improper certification case, the Court *must* impose an appropriate sanction. The Plaintiff, as detailed in his Sworn Declaration attached hereto as Exhibit A, did make a sincere attempt to meet and confer with the Defendant. But the Plaintiff respectfully submits that there is no requirement under the Local Rules or the Rules of Civil Procedure to "meet and confer" over *perjury*.

    5.  Defense Counsel has Interfered with his Client's Deposition by Fraudulent Means (cont'd)
    (b) Defense Counsel Conduct Conjunctively Implicates Rule 30 (d) (2)

Rule 30 (d) (2) reads in pertinent part:

> If the court finds such an impediment, delay, or other conduct that has frustrated the fair examination of the deponent, it may impose upon the persons responsible an appropriate sanction, including the reasonable costs and attorney's fees incurred by any parties as a result thereof.

The Court also has the inherent power to sanction a party for obstructing a deposition. See, *GMAC Bank v. HTFC Corp.* 252 F.R.D. 253 (E.D. Pa. 2008. The *GMAC* Court sanctioned counsel for *permitting* his client to offer false testimony:

9

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

[I] do not doubt that off the record you made every effort, you don't have to go into that. I'm limiting myself to what is apparent on the record, including whether the lawyers shall not engage in conduct intended to disrupt the tribunal, that includes a deposition, that's Rule of Professional Conduct 3.5, Comment 5. It also involves attempts to unlawfully obstruct another party's access to evidence, including obstructive tactics in the discovery process, that's Professional Conduct Rule 3.4, Comment 1. There are Rule 3 requires a lawyer to take reasonable remedial measures if a lawyer comes to know that a client who is testifying in a deposition has offered evidence that is false. The point here is that, if the conduct is not appropriate conduct and it is attempting to obstruct the administration of justice, a lawyer can't just sit idly by and allow the conduct to proceed any **more than if a person is testifying falsely you can allow perjurious testimony to go forward**. (Emphasis added).

(Here, unfortunately, both name partners at Romero Park, PS, add to the law office's litany of sins by following Mr. Rau's lead with their own perjurious attestations (Exhibit E)).

Bad faith on the part of counsel, as such, is not a requirement for sanctions under FRCP 30 (d) (2). *Hylton v. Anytime Towing*, No. 11CV1039 JLS (WMc), 2012 WL 3562398, at *2 (S.D. Cal. Aug. 17, 2012); *Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-2381-JWL-GLR, 2011 WL 6934112, at *2 (D. Kan. Dec. 30, 2011. Here we have bad faith on the part of counsel for allowing Mr. Rau to commit perjury over thirty times in discovery responses (Exhibit B), followed by bad faith on the part of both name partners of Romero Park, P.S. in their own perjury (Exhibit B, Exhibit E).

In this case, Mr. Rau may not have perjured himself in the actual course of the deposition. Indeed, the Plaintiff believes that all of Mr. Rau's answers under oath at his deposition were truthful, and that all the conflicting prior written assertions were lies under oath and penalty of perjury. However, we don't need to determine which answers were truthful and which were false to sanction Mr. Rau. Mr. Rau provided answers in his deposition that were irreconcilably inconsistent with his RFP responses that were attested under oath. *Mr. Rau's deposition at least revealed* perjury. Under the holding in *GMAC* and its progeny, defense counsel was under an ethical duty and a duty to the Court to make sure that his client testified fully and truthfully and, at least by implication, that the

10

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

perjury was cured. No such attempt was made. Defense counsel ignored the issue of untruthfulness and proceeded as though the Plaintiff had simply sought over-broad discovery, *by asking for documents, including emails, that concerned the Plaintiff and documents, including emails, that concerned the Seaside Mariana project and asking for insurance policies which the Defendant had an independent duty to disclose under Rule 26*. Far from taking the steps required to cure the perjury, counsel worked diligently toward its consummation by imposing frivolous and belated objections. Then, with Mr. Rau and counsel caught with their hands in the cookie jar, Mr. Park and Mr. Romero both lied under oath as part of their coverup (Exhibit E).

Mr. Romero's particular objection (raised almost nine (9) months too late) that the Plaintiff's RFPs requests were overly broad is beyond ridiculous and qualifies as a further violation of ABA Model Rule 3.3, in his attempt to mislead a tribunal, this Honorable Court. The case at bar concerns a Plaintiff in controversy with Defendants who breached their contract with him in a deal over the Seaside Mariana property, not paying him the $334,000 they owed him as of October 15th, 2018. The Plaintiff asked for documents regarding Carl Wescott, the Plaintiff, and documents concerning Seaside Mariana, the real property at the heart of the dispute. Since the Defendants did not know the Plaintiff prior to their business dealings, every document concerning the Plaintiff is necessarily relevant and central to this case, just like Seaside Mariana (the real property Plaintiff was selling to Defendants), and just like Kevin Fleming, the main seller of that property. (The Plaintiff was purchasing Mr. Fleming's company, that owned the real property, and then transferring the owned land to Defendants in the transaction).

The Plaintiff notes that Rule 30 (d) (2) sanctions are commended to the discretion of the Court based on the record of the case.

11
**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 5. Defense Counsel has Interfered with his Client's Deposition by Fraudulent Means
### (c) This Court Possesses the Inherent Authority to Sanction Fraud

The Seventh Circuit upheld a District Court in reversing a Plaintiffs verdict for acts of

obstruction choreographed by counsel, including dishonest testimony and the spoliation of evidence:

> A district court may impose sanctions under its inherent authority "where a party has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Tucker v. Williams*, 682 F.3d 654, 661-62 (7th Cir. 2012). The court must first make a finding of "bad faith, designed to obstruct the judicial process, or a violation of a court order."
> *Id.* at 464*464 662. Mere clumsy lawyering is not enough. *Id.* As the district court noted, and this court has said, issuing a judgment is a "powerful sanction" and one that should be used judiciously.

Federal Courts have expressly held perjury in civil litigation to be sanctionable under their inherent

powers. *Brown v. Oil States Skagit Smatco*, 664 F.3rd 71, 77-78 (5th Cir. 2011:

> Before the start of his two depositions, Brown took an oath to tell the truth. As the district court correctly observed, "This [oath] is not trivial. The proper administration of justice depends on people testifying truthfully under oath." We agree with the district court's determination that Brown defied this oath and committed perjury.
>
> In his personal injury lawsuit, Brown testified under oath that he left his job at Oil States *solely* because of his back pain related to an accident. In the instant Title VII lawsuit, Brown testified under oath that he quit his job at Oil States *solely* because of racial harassment and life-threatening activity related to the harassment. This explicitly contradictory deposition testimony leads only to the district court's conclusion: "Brown [was] caught lying under oath." The circumstances underlying Brown's perjury are especially concerning: Brown failed to mention racial harassment in the first deposition to bolster his personal injury claim, and Brown failed to mention his back pain in the second deposition to bolster his Title VII claim. Brown deceitfully provided conflicting testimony in order to further his own pecuniary interests in the two lawsuits and, in doing so, undermined the integrity of the judicial process. Through his perjured testimony, Brown committed fraud upon the court, and this blatant misconduct constitutes contumacious conduct.

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

In *Brown*, the Fifth Circuit upheld the extreme sanction, under the Court's inherent power, of dismissing the Plaintiff's case for his acts of perjury.

This Court retains the same power to sanction the Plaintiff for his perjurious attestations and for counsel's continued obstruction, delay and prolixity in a context where he should be assiduously working to cure his client's misconduct.

### 6. Oath-taking and Truth-telling

The great Robert Bolt attributed these words to Sir Thomas Moore:

> MORE: [...] *When a man makes an oath, Meg, he's holding how own self in his own hands. Like water.* (He cups his hands) And *if he opens his fingers* then—*he needn't hope to find himself again.*[3]

It is apparent that the Defendant in this case does not take the same fastidious approach to truth-telling or oath-keeping.  Perhaps Mr. Rau has hired the right attorneys for his cause.  Despite the ethical strictures by which they are supposed to be bound, both Mr. Romero and Mr. Park have also shown serious deficiencies in their own truth-telling or oath-keeping.

To be fair, the Defendant is a realtor and not a saint and it is open to some question as to whether a saint could make a living as a realtor.

> ...he made nothing in particular, neither butter nor shoes nor poetry but he was nimble in the calling of selling houses for more than people could afford to pay (*Babbitt* by Sinclair Lewis, 1922).

### 7. Conclusion

The Plaintiff was not requiring sanctity from the Defendant, simply non-perjured discovery responses and proper responses to propounded RFPs.  The Plaintiff has every right to expect such

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

responses under the Rules.  By not producing 90% of the documents about the Plaintiff and Seaside Mariana (the real property) and lying under oath about the existence of 500+ of such documents, Defendant Rau sabotaged the deposition the Plaintiff conducted on October 12th, 2021, in Seattle. Rau's attorneys not only allowed this to occur but also have mislead this Court and now they are lying under oath themselves to attempt to cover up these issues (Exhibit E).

The Plaintiff, a *pro se*, brought his Motion under 37 (d) (2) but the truth-seeking function of the Federal Courts is so central that perjury is redundantly sanctionable, under 26 (g) (3), under 30 (d) (2) and under the inherent power of the Court. The Federal Rules give this Court a full toolkit of sharp tools to deal with perjury.

The Plaintiff was obstructed in his ability to take the Defendant's deposition. This obstruction did not occur because the Plaintiff's discovery requests were materially overbroad; they manifestly were not as the Plaintiff was simply preliminarily gathering relevant documents such as emails concerning himself, the real property at hand, and the parties' deal. The obstruction occurred because the Defendant swore, under oath, that he did not possess documents he later admitted he possessed – in abundance. The Rules require the Defendant to make a reasonable effort to search and they also require him to tell the truth about the existence of the documents at issue, and not lie under oath dozens of times to impede discovery.

This is not a routine Motion to Compel, nor is it a Motion for a Protective Order. The Plaintiff seeks sanctions for a calculated fraud on this Court. The Defendant hides, quaking, behind meet-and-

---

[3] *A Man for All Seasons*, copyright 1961, Act II Scene III. (This line was quoted with some theatrical effect during the Clinton Impeachment Hearings by the late Henry Hyde, R-Illinois).

14

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

confer requirements[4] that apply to negotiable, reasonable, good faith discovery issues. What is there to negotiate about perjury? How much of it is reasonable?

The Defendant's egregious misconduct in this case cries out for a sanction and the Plaintiff asks this Court to fashion an appropriate sanction in the interests of justice and to protect the dignity of these proceedings.  The Plaintiff also respectfully requests that the Court consider warning Mr. Rau (and counsel, as counsel is culpable) about case-dispositive sanctions should the discovery abuse and lies under oath continue.

RESPECTFULLY SUBMITTED on April 1st, 2022

_____

Carl A. Wescott, *pro se*

---

[4] Per Exhibit A, the Plaintiff maintains that he has substantially complied with such requirements in any event.

15

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

CARL A. WESCOTT
8210 E. VIA DE LA ESCUELA
SCOTTSDALE AZ 85258
*in propria persona*
CARLWSOJ@GMAIL.COM
+1 936 937 2688

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

CARL A. WESCOTT,

    Plaintiff,

  vs.

DAVID CROWE;
MIKE LYONETTE;
JEFF RAU;
BRAD MALCOLM;
MICHAEL JIMENEZ,

    Defendants

Civil Action No. 3:20-cv-06456-JD

**EXHIBIT A: LEGAL STANDARDS AND FACTS RELATED TO PLAINTIFF'S GOOD FAITH CERTIFICATE FOR PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS**

**(EXHIBIT B CONTAINS THE GOOD FAITH AFFIDAVIT)**

<u>Legal Standards</u>

R. Fed. Civ. P. Rule 37 requires:

(1) In General.
  (A) Certification of Good Faith Effort to Secure Required Discovery. Before any motion to compel discovery is filed, the affected parties or counsel must meet in person for a reasonable period of time in an effort to resolve the disputed matter. The movant must accompany any motion to compel discovery with a certification that despite a good faith effort to secure it, the discovery material sought has not been provided. (B) Contents of Certification. This certification must set out specific facts describing the good faith effort, including a statement of the date, time, and place of the meeting required by Rule 37(a)(1)(A) and must be placed immediately below the signature of the attorney or party signing the motion.

1

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

1

2

3    The meet-and-confer requirement set forth in *Fed. R. Civ. P. 37* and *N.D. Cal. L. R. 37-1(a)*.

4    *Fed. R. Civ. P. 37(a)(1)* requires that a motion to compel discovery "include a certification that the

5    movant has in good faith conferred or attempted to confer with the person or party failing to make

6    disclosure or discovery in an effort to obtain it without court action." *Fed. R. Civ. P. 37(a)(1)*. Local

7    Rule 37-1(a) provides that the Court will not entertain a request or a motion to resolve a discovery

8    dispute unless, pursuant to *Fed. R. Civ. P. 37*, counsel have previously conferred for the purpose of

9    attempting to resolve all disputed issues. *N.D. Cal. L. R. 37-1(a)*. In this case, with the Plaintiff

10   representing himself *in propria persona*, he was the one to meet and confer with opposing counsel.

11        Plaintiff's original Rule 37(d)(2) motion contained statements that the Plaintiff had met and

12   conferred with Mr. Rau via Mr. Rau's counsel to attempt to resolve the discovery dispute issues, and

13   an contained an affidavit regarding the dispute issues and meet and confer attempts including exhibits

14   of emails and a letter. That appears to be technically insufficient, but, luckily, the Plaintiff's meet

15   and confer did meet the requirements; he just didn't properly articulate the full circumstances of his

16   efforts.

17

18        For example, the Plaintiff's language did not use the words "good faith", and the Plaintiff did

19   not make clear his in-person meeting to resolve this issue with Mr. Coughlan and Mr. Park, nor his

20   multiple attempts to meet and confer with Mr. Romero by telephone after agreeing on a day to do so.

21   Thus, the Plaintiff further explains his attempts to meet and confer to resolve this discovery dispute in

22   the attached Exhibit B: Declaration and Sworn Affidavit of Carl Wescott.

23

24        *Pro se* litigants are afforded a degree of leniency with respect to their pleadings but are

25   nonetheless required to comply with the rules of litigation procedures. *King v. Atiyeh*, <u>814 F.2d 565,</u>

26

27                                                  2

28   **PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE
     IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS
     AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

1    <u>567</u> (9th Cir. 1987), *overruled on other grounds by Lacey v. Maricopa Cnty.*, <u>693 F.3d 896</u> (9th Cir.

2    2012) ("Pro se litigants must follow the same rules of procedure that govern other litigants.").

3          The Plaintiff hopes and believes that the fact that the Plaintiff did in fact meet the good faith

4    meet and confer requirements both of *Fed. R. Civ. P* and of local rules ("LR") for United States

5

6    District Court of the Northern District of California is more important than any technical deficiency

7    in the way he initially articulated how he met those requirements.

8          Please see the Plaintiff's Sworn Affidavit in Exhibit B.

9

10         RESPECTFULLY SUBMITTED on April 1st, 2022

11

12

13

14         Carl A. Wescott, *pro se*

15

16

17

18

19

20

21

22

23

24

25

26

27                                                    3

28    **PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE
      IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS
      AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

CARL A. WESCOTT
8210 E. VIA DE LA ESCUELA
SCOTTSDALE AZ 85258
*in propria persona*
CARLWSOJ@GMAIL.COM
+1 936 937 2688

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

CARL A. WESCOTT,

   Plaintiff,

  vs.

DAVID CROWE;
MIKE LYONETTE;
JEFF RAU;
BRAD MALCOLM;
MICHAEL JIMENEZ,

   Defendants

Civil Action No. 3:20-cv-06456-JD

**EXHIBIT B: SWORN DECLARATION AND AFFIDAVIT OF CARL A. WESCOTT**

**(INCLUDING GOOD FAITH MEET AND CONFER AFFIDAVIT)**

I, Carl Wescott, first being duly sworn, affirm on oath, under the penalty of perjury of the laws of California and the United States of America:

1. I am the Plaintiff in the case at bar.

2. I am fifty-four (54) years old and if called upon to do so I would testify competently and truthfully as followed below.

3. In the meantime, my written testimony under the same oath is as follows:

4. All the facts in my original legal complaint are true.

5. Any beliefs and allegations stated, I believe to be true.

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

1

6. The major categories covered below are <u>All facts and allegations I have stated and made in my legal complaint and this Motion and this Reply</u>, Mr. Rau's deposition, <u>the Sworn Affidavits by Mr. Rau's counsel</u> in Mr. Rau's Response, and the <u>Plaintiff's meet and confer efforts to solve this dispute</u> rather than bringing it before this Court.

### **Facts and Allegations I have Stated and Made in relevant paperwork**

7. All of the facts stated in my Rule 37(d)(2) motion are true, with one exception (number 22 below), regarding Mr. Rau's homeowner's insurance policy.

8. I believed that statement to be true at the time I made it, and I was wrong (Mr. Romero is correct on this point).

9. All of the facts stated in my Reply to Defendant Rau's Response in Opposition to my Rule 37(d)(2) motion are true; I believe any allegations stated based on third-party accounts.

10. All documents provided in my original legal complaint, my second amended complaint, and my third amended complaint are true and correct copies of the original document or email.

11. All documents provided in my Rule 37(d)(2) Motion and in my Reply to Mr. Rau are true and correct copies of the original document or email.

### **Mr. Rau's Deposition**

12. The Plaintiff's allegations concerning what Mr. Rau stated at his deposition under oath are all true and confirmed with his notes and other evidence.

13. Mr. Rau's deposition under oath was also captured on video with four video cameras, and thus there are multiple audio and video streams of the same deposition.

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

14. The Plaintiff believes that Mr. Rau's testimony under oath on October 12th, 2021 in Seattle was all truthful, including that there are dozens of emails concerning "Carl Wescott" and hundreds of emails concerning "Seaside Mariana" in Mr. Rau's possession.

15. (This is contrary to what Mr. Romero and Mr. Coughlan claim, but neither was at the deposition, so the Plaintiff is treating their incorrect claims as hearsay and ignoring them)

16. Mr. Park made claims to the contrary initially in his declaration under oath in Mr. Rau's Response in Opposition to the Plaintiff's Rule 37(d)(2) motion, for example claiming under oath that Mr. Rau never named a number of relevant emails.

17. That is incorrect; Mr. Rau stated that he had "dozens" of emails concerning "Carl Wescott", and stating that he had "hundreds of emails" concerning "Seaside Mariana."

18. Mr Rau was unsure of the exact number of responsive emails that he had, but when asked to approximate the number, stated "approximately five hundred."

19. The Plaintiff so far has received approximately fifty (50) of these last five hundred and fifty emails (550), with a few added to the privilege log as well, which has only a few dozen documents total.

20. At his deposition, Mr. Rau testified that he had all relevant files on his computer and had had no issues of data loss.

21. At his deposition, Mr. Rau testified that he and his wife had recently purchased a third home with his wife, and they took out a loan for that purchase.

22. At his deposition, Mr. Rau testified that he had two recent insurance policies, one a homeowner's policy and the other the policy that Washington State requires him to have as a real estate broker. Mr. Rau could not recall the details of the latter policy.

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

3

23. The Plaintiff was wrong in his initial Rule 37(d)(2) motion when he stated that Mr. Rau has not yet provided his homeowner's insurance policy.

24. This was an issue that was subject to some argument, with Mr. Park sending a valedictory email to the Plaintiff in December 2021 stating that the Plaintiff should explain to this Court why insurance policies are discoverable.

25. Ironically, it's Mr. Rau's other policy, his GL and E&O insurance policy that he has as a Washington State broker, that is more discoverable under Rule 26.

26. Mr. Rau has not provided **that** policy.

27. Though the Plaintiff has drafted a Rule 37(a) Motion to Compel Production of Certain Documents including that other insurance policy, the Plaintiff expects to continue to meet and confer with Mr. Romero and other Romero Park, PS attorneys to hopefully solve as much of the RFP-related disagreements as possible rather than troubling the Court, using Mr. Romero's suggested procedure (Sub-Exhibit B-1).

### Mr. Rau's Attorneys' Selective Amnesia / Unintentionally-made Misstatements

28. The Plaintiff believes that Mr. Park and Mr. Romero, too, had moments of selective amnesia.

29. The Plaintiff would never expect than an attorney would intentionally nor maliciously lie under oath, and thus the Plaintiff believes that Mr. Park's six (6) incorrect statements under oath and Mr. Romero's seven (7) statements that are not fully aligned with the facts were unintentional mistakes.

30. The Plaintiff has supplied most of the facts and evidence to show Mr. Romero and Mr. Park the Plaintiff's point of view regarding those thirteen (13) statements, including what the actual

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

4

documents and evidence states, just in the past two (2) days, while Mr. Romero has been on vacation but still graciously answering emails.

## -------------GOOD FAITH MEET AND CONFER CERTIFICATE----------------

### Good Faith efforts to Meet and Confer

The undersigned, pursuant to Fed. R. Civ. P. Rule 37, Fed. R. Civ. P Rule 37(a)(1) and N.D. Cal. L. R. 37-1(a), certifies that he conferred in good faith with counsel to Defendant Rau, Mr. Justin Park, esq. and Mr. Matthew Coughlan, esq. of Romero Park, P.S., meeting in person to do so at the law offices of Romero Park, P.S., in Bellevue, Washington, on October 12th, 2021 between approximately 10 am and 11 am that day, in two sessions.

The undersigned further certifies his good faith efforts to meet and confer in multiple formats thereafter, by email, by letter, and by telephone. Below, the Plaintiff details these various attempts. The Plaintiff did not wish to trouble the Court with these discovery issues, and does not wish to trouble the Court with two more sets of discovery disputes with Mr. Rau. Luckily, Mr. Troy Romero has graciously advised the Plaintiff on standard protocol and procedure in California, which the Plaintiff anticipates following more closely in the future (Sub-Exhibit B-1, attached).

### Good Faith Meet and Confer Affidavit

31. After Mr. Rau's testimony that he actually had many responsive documents at his deposition in Seattle on October 12th, 2021, the Plaintiff stopped the deposition. There was no point in continuing given that the Plaintiff wanted to get the 550+ documents that were missing and then likely depose Mr. Rau concerning those documents.

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

5

32. The Plaintiff struggled a bit attempting to conduct his first deposition.  Mr. Rau and Mr. Park were beyond patient and gracious.

33. The Plaintiff then met and conferred with Mr. Park in person attempt to solve the discovery issues.

34. The Plaintiff suggested in this meet and confer effort that Mr. Rau provide the 550 or so missing documents, and then the Plaintiff thought that he might need to depose Mr. Rau again.

35. That is why the Plaintiff suggested in person in those meet and confer efforts that Mr. Rau reimburse the Plaintiff's expenses and that the parties agree to reset the deposition clock to zero.

36. The Plaintiff then suggested that Mr. Coughlan join the meeting as Mr. Coughlan had spearheaded discovery for Mr. Rau, along with legal assistant Ms. Kathy Koback.

37. The Plaintiff then met and conferred with Mr. Coughlan and Mr. Park on the same issues.

38. The letter that the Plaintiff included in his Rule 37(d)(2) Motion summarized what he thought had occurred and should occur, just like his conversation in person with Mr. Rau's attorneys.

39. The Plaintiff also called Mr. Romero twice in good faith to attempt to meet and confer by telephone as well.


RESPECTFULLY SUBMITTED on April 1st, 2022


_Carl A. Wescott_

Carl A. Wescott, *pro se*


**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE
IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS
AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

6

 Gmail          Carl Wescott <carlwsoj@gmail.com>

## RE: Rule 37 conference

2 messages

**Troy Romero** <TRomero@romeropark.com>                                    Thu, Mar 31, 2022 at 4:49 PM
To: Carl Wescott <carlwsoj@gmail.com>
Cc: Kathy Koback <kkoback@romeropark.com>, Matthew Coughlan <mcoughlan@romeropark.com>


Mr. Wescott:


I received your voice mail.


I am happy to converse under Rule 37 but would invite you to follow the standard practice in California.


Standard practice is this:


1. The party who believes there are deficiencies in discovery sends a letter outlining what is missing (e.g. RFP No. 3 – I did not receive any responsive documents).
2. The letter invites a time for the conference that is a few days out to allow opposing counsel to review the letter, get client input, and be prepared to discuss the alleged deficiencies.
3. In the conference the parties' attorneys discuss the deficiencies and see if they can come to an agreement to avoid a motion to compel.


Calling me out of the blue to have a Rule 37 conference, without having sent this letter and giving me time to research each alleged deficiency is not in keeping with the spirit or practice of a Rule 37 conference – which is designed to try to avoid discovery disputes coming to court.


Please follow this pattern and I will be happy to talk with you after I receive the letter and have at least 2 days to research your specific allegations of alleged deficiencies tied to specific RFPs.


Troy


H. Troy Romero


 ROMERO
PARK P.S.


California Office

16935 W. Bernardo Dr., Suite 260

San Diego, CA 92127

858-592-0065


Washington Office

155 – 108th Ave. NE, Suite 202

Bellevue, WA 98004

(425) 450-5000

**Carl Wescott** <carlwsoj@gmail.com>                                                  Thu, Mar 31, 2022 at 5:22 PM
To: Troy Romero <TRomero@romeropark.com>
Cc: Kathy Koback <kkoback@romeropark.com>, Matthew Coughlan <mcoughlan@romeropark.com>, Justin Park <jpark@romeropark.com>
Bcc: Carl Wescott <carlwsoj@gmail.com>

Mr. Romero,

Thank you for your reply.

I was calling you to meet and confer on three discovery disputes.

One of them was regarding Mr. Rau's perjury on his RFPs, attesting that he had no responsive documents in some categories, and no further documents in others (including regarding "Carl Wescott" and "Seaside Mariana").

The impact of that was that my deposition of Mr. Rau, where I discovered that there were perhaps 550 documents (emails) that he did not provide in response to my RFPs, was mostly wasted time and money. Rounding down, I invested $2400 in expenses, and including travel time, days of time preparing for the deposition, travelling to Seattle, staying overnight, conducting the deposition on the morning of October 12th, 2021, and then travelling back home to Scottsdale.

I already sent a letter and other correspondence identifying the issues and citing authority.

I already met and conferred by email and letter as best I could.

I have suggested easy ways to resolve these issues on multiple occasions.

You later asked that we have a discovery conference regarding that.

Though we didn't schedule a specific time, I called on the appointed day. You were not available. I left voicemail. You did not return my call. (You even emailed me about the voicemail that I had left, asking me about it, and I replied... but you still did not return my call).

It's essentially too late to solve that one, as I already filed a Rule 37(d)(2) motion on that one.

(Though I wanted to attempt to meet and confer one more time before filing my Reply, to do my best to resolve this dispute).

————————————

I will follow your instructions and advice for the other two (one of which I already called about for the discovery conference you suggested related to my impending Motion to Compel, which I've held back hoping we can solve this dispute without my having to file the Motion. I'm still hoping for that).

Thank you for your response and for the clarity.

I've already drafted a Motion to Compel Production of Documents regarding Mr. Rau's obstinate refusal to provide many documents responsive to my RFPs. I also want Mr. Rau to provide a proper privilege log. I'd also like Mr. Rau to put documents he is withholding due to "confidentiality" and other reasons (there must be about 480 by my count, including the missing Operating Agreement and four others I specifically identified) on the privilege log.

Mr. Park already sent a valedictory email telling me to "explain to the Court" regarding insurance policies.

You already also sent me an email making it clear (thank you) that confidentiality would prohibit you from providing the Operating Agreement that is at the heart of this case, and that I must file a Motion to Compel and get a Court order to get it. I've already drafted the Motion.

I'm quite busy at the moment, but perhaps next week I'll follow up as you suggest, and then give you at least two days, and follow up with a phone call, to see if you'll consider providing a proper privilege log, to log the missing withheld documents, and to provide many documents at the heart of the case that you and/or Mr. Rau refuse to provide.

————————————

The third discovery issue is Mr. Rau's RFA responses, where he refused to answer because he had no idea who I was, who Kevin Fleming was, and what Seaside Mariana was and is.

Perhaps a case of selective amnesia?

I can't imagine that Mr. Rau would lie under oath so many times otherwise, nor that you, a California attorney, would lie to me dozens of times in that single document, either.

I believe you were Mr. (David) Crowe's attorney related to the Crowe Group (aka the Litigating Group) LLC, the Operating Agreement, and more, were you not?

Therefore, you have intimate knowledge of the LLC, the Operating Agreement, and more, and you would also know that Mr. Rau, Mr. Jimenez, and Mr. Malcolm are partners sharing profits and losses with Mr. Crowe and Mr. Lyonette (and Ms. Winfrey and Mr. Collings, among others).

You also know that Crowe and Lyonette, as agents for the partnership, bound the partnership into a contract with me, which they subsequently breached and repudiated in the rather deceitful, back-handed, and duplicitous fashion.

So you should have intimate familiarity with all of these facts, including that Mr. Rau knows perfectly well who Fleming is, what the Crowe Group is (he's part of it), and what Seaside Mariana is.

Relatedly, as one might expect, at Mr. Rau's deposition he testified under oath that he knew perfectly well who I was, confirmed that he had signed a contract with me (a NDA), as per his original Answer as well, confirmed that he knew who Kevin Fleming was, confirmed that he knew who the Crowe Group was and is, and confirmed that he knew what Seaside Mariana was and is.

Mr. Rau also confirmed under oath that the partnership that he was part of was bound together by documents that he signed... but he could not recall the details.

I already met and conferred by email as best I could.

I've drafted a Motion to Deem Admitted certain of my RFAs based on the original false statements.

I'm quite busy at the moment, but perhaps next week I'll follow up as you suggest, and then give you at least two days, and follow up with a phone call to attempt to resolve that particular dispute.

Thank you.

--CAW  +1 936 937 2688

[Quoted text hidden]

1  Exhibit C – Case Summary and Summary of the Issues Leading to the Rule 37(d)(2) Motion

2     This case involves a complex real estate transaction related to the much-feted but ill-fated

3  Seaside Mariana development in Nicaragua[1]. The Plaintiff entered into a real estate purchase and

4  financing contract with a group of investors headed and led by David Crowe (the "Crowe Group")

5  and Mike Lyonette, but with a significant influential and advisory role played by Defendant Rau, a

6  licensed real estate broker in Washington State (*Rule 37(d)(2) Motion, Exhibit A*).

7

8     The sum and substance of the contract was that the Plaintiff would purchase the property from

9  the Developer, Kevin Fleming ("Fleming"), primary owner of the company that owned the relevant

10 923-acre beachfront parcel with two kilometers of beach for $500,000.  Mr. Rau and his twenty-one

11 (21) co-investors ("the Crowe Group") would effectively finance the purchase by providing the

12 $500,000 for the purchase and would pay the Plaintiff a guaranteed profit of $334,000 which was

13 essentially a consulting fee for putting the deal together.  (There is a more detailed Case Summary in

14 various versions of the *Plaintiff's Legal Complaint, Exhibit C*)

15

16    The transaction was negotiated with some professionalism. There was a detailed written

17 contract (*Plaintiff's Second Amended Complaint, Exhibit D*) and NDAs (Non-Disclosure

18 Agreements), including a Non-Disclosure Agreement signed by Mr. Rau.  Again, the Crowe Group

19 contained twenty-two members.  There was and would have been a brisk pace of written

20 communication, principally by email, among the membership.

21

22

23

24 [1] Seaside Mariana was the most ambitious development in the history of Nicaragua complete with a Jack Nicklaus
25 designed golf course and a promotional visit from Jack Nicklaus. At one point, the real estate assets would have been
   valued in the tens of millions of dollars. The Plaintiff was effectively stealing a page, or perhaps several pages from the
26 Playbook of the "Grave Dancer" Sam Zell and attempting to gain control of potentially valuable real estate at depressed
   prices. The Crowe Group understood this strategy and was relying on the Plaintiff's expertise and in effect
27 compensating him for that expertise in the contractual profit margin – or perhaps because of the NCs (non-circumvents)

28 **PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

The Crowe Group breached the parties' contract at well beyond the 11th hour (about three or four days before the anticipated closing of October 15th, 2018), after they had done their due diligence and released their contingency.  There was no liquidated damages clause.  As a result, the Plaintiff lost his personal costs and investment of his time and money, his guaranteed profit of $334,000, considerable credibility with Fleming, who he had done other deals with, to purchase Fleming's other corporate and real estate assets at distressed prices.  As a result of the Seaside Mariana deal not closing, the Plaintiff was not able to close the purchase of another Fleming Development, Isla Mariana, for which he only needed to put $100,000 down.  Thus, Mr. Rau's breach of contract not only cost the Plaintiff the US $334,000 owed, but a 7-digit sum of consequential damages.

As is fitting for litigation over golf course residences, the Plaintiff has kept his discovery requests down the middle of the fairway. The Plaintiff attached the RFPs at issue (*Rule 37(d)(2) Motion, Exhibit "A"*). The Plaintiff requested all documents related to Carl Wescott (the Plaintiff) and Seaside Mariana (the development). The Plaintiff also asked for insurance policies that might be applicable including Mr. Rau's E&O and personal homeowner's policy, and Mr. Rau's recent loans.

Responses to the RFP's were due in advance of the Plaintiff's deposition of Mr. Rau. Under oath and penalty of perjury, Mr. Rau claimed that he possessed no responsive documents in the following categories:

- insurance policies
- loan applications
- documents related to Carl Wescott (*Exhibit B, Sworn Affidavit,* and *Rule 37(d)(2) Motion, Exhibit C, Sworn Affidavit of Carl Wescott*)

2

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

After the signing and filing of a protective order, Mr. Rau also produced some documents related to Seaside Mariana, but no emails *(Rule 37(d)(2) Motion, Exhibit C, Sworn Affidavit of Carl Wescott)*. An email is a type of document.

Mr. Rau, in separate documents (his RFAs responses), claimed he did not know who Kevin Fleming was, claimed he did not know what Seaside Mariana ("SM") was (the Plaintiff attached Mr. Rau's RFA responses to the Rule 37(d)(2) Motion)

The Plaintiff thought he may have a case of mistaken identity, as two other members of the Crowe Group (Sandra Winfrey and Brian Putz) claimed when sued and served. As the Plaintiff had never met Jeffrey Rau, though they had corresponded and talked on the phone, the Plaintiff considered the possibility that he had served the wrong Jeffrey Rau. The Plaintiff decided to take Mr. Rau's deposition to figure this out. If Mr. Rau was truly uninvolved, had never bought real estate in Seaside Mariana, was not part of the Crowe Group, and was not part of the Litigating Group that had signed a contract with the Plaintiff and then breached, then the Plaintiff planned to dismiss this Jeffrey Rau from his legal complaint and find the right Jeffrey Rau who had wronged the Plaintiff.

Mr. Rau's deposition took place on October 12th, 2021 in Seattle *(Rule 37(d)(2) Motion, Exhibit D)*. In his deposition, also under oath and penalty of perjury, Mr. Rau conceded that he and his wife had recently purchased a home, had applied for a loan for the home, and had recently purchased a homeowner's insurance policy *(Rule 37(d)(2) Motion, Sworn Affidavit of Carl Wescott)*. Mr. Rau also conceded that he had an insurance policy related to his work as a real estate broker, and indeed, Washington State law requires him to carry such a policy.

Under questioning under oath, contrary to his written responses under penalty of perjury, Mr. Rau admitted that he did know who Kevin Fleming was, after all. Mr. Rau confirmed he had paid

3

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

$350,000 for land in Seaside Mariana to build a vacation home. Mr. Rau confirmed that yes, he knew what Seaside Mariana was and who Kevin Fleming was. Yes, he had been in litigation with Fleming and the Seaside Mariana company for nine (9) years now. Yes, he was a member of the Crowe Group. Yes, Mr. Rau, remembered the deal with the Plaintiff, Carl Wescott. Yes, he knew who the Plaintiff was (*Rule 37(d)(2), Sworn Affidavit of Carl Wescott*).

Under questioning, Mr. Rau confirmed he had computing equipment, including at his house, and digital and analog files. Mr. Rau testified that he had not had any data loss or other type of loss of documents, and that as far as he knew, he had all of his paper-based files, as well as his digital files going back all the way to his Seaside Mariana purchase in around 2006 or 2007 (*Rule 37(d)(2) Motion, Exhibit C, Sworn Affidavit of Carl Wescott*).

Despite submitting in his RFP responses under oath that Mr. Rau had no documents or emails concerning Carl Wescott, in his deposition, Mr. Rau admitted that he had dozens of documents related to Carl Wescott. Indeed, the Plaintiff can confirm that he signed a NDA with Mr. Rau, and that he has emailed Mr. Rau upon multiple occasions (*Rule 37(d)(2) Motion, Exhibit C, Sworn Affidavit of Carl Wescott*).

In his deposition, under oath, Mr. Rau confirmed that there are "hundreds" of emails concerning "Seaside Mariana" in his possession, but yet, did not produce a single email out of the hundreds that he had, in his RFP Responses. (Mr. Rau then said there were "approximately five hundred such emails"). In his deposition, under oath, Mr. Rau confirmed that there are "dozens" of emails concerning "Carl Wescott" in his possession, but yet, did not produce a single email out of the hundreds that he had, in his RFP Responses (*Exhibit B, Sworn Declaration of Carl Wescott*).

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

In a responsive email to the Plaintiff, his counsel (Matthew Coughlan) seems to recall that Mr. Rau may have referenced "dozens" of such emails. However, Mr. Coughlan did not attend the deposition. Mr. Justin Park of Romero Park did, and was the only Romero Park, P.S., person present. As such, Mr. Coughlan would have no idea what Mr. Rau actually stated; Mr. Coughlan never even entered the room where the deposition occurred (*Rule 37(d)(2) Motion, Exhibit C, Sworn Affidavit of Carl Wescott*).

After the deposition, the Plaintiff met with Mr. Rau's counsel Mr. Justin Park of Romero Park, P.S. The Plaintiff sent a letter following up with Mr. Park, summarizing what he believed was going to happen, namely that Mr. Rau would follow up with the missing documents and emails (*Rule 37(d)(2) Motion, Exhibit E*).

In either case, there was a substantial trove of documents that was not produced, rendering Mr. Rau's deposition, taken in Seattle by agreement of the parties, almost entirely useless to the Plaintiff. Yes, the Plaintiff confirmed that this Jeffrey Rau was the right, guilty, liable Mr. Rau, but had Mr. Rau been honest in his discovery responses, that would not have been necessary. Had Mr. Rau produced the hundreds of documents he admitted he had not produced in discovery, the Plaintiff would have reviewed them prior and then invested the majority of his deposition time reviewing those documents with Mr. Rau and asking him questions about the documents.

Interestingly, one of Mr. Romero's main arguments on behalf of his client Mr. Rau, perhaps because Mr. Romero seems to believe he is responding to a Rule 37(a) Motion to Compel, is that Mr. Rau *did* finally produce some emails, by **December 12th, 2021**. The Plaintiff fully acknowledges that Mr. Rau produced perhaps fifty relevant emails in continued rolling RFP response production by December 12th, 2021, his final delivery of documents (thus far). Thus, Mr. Rau has produced perhaps

5

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

ten percent of the emails that he testified under oath that he had about Seaside Mariana and Carl Wescott (total: approximately 550).

The Plaintiff does not dispute that. <u>Mr. Rau produced zero emails, no insurance policy (as required under Rule 26), no documents about Carl Wescott, and none of the 500+ emails about Seaside Mariana **prior** to his deposition on **October 12th, 2021.**</u> Further, Mr. Rau lied under oath in writing more than thirty (30) times concerning his knowledge and those missing documents.

Hence, the Plaintiff wasted time and money on Mr. Rau's deposition and is entitled to the relief requested.

*[signature]*

6

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

**Exhibit D**
**Why Plaintiff Will Need to File a Rule 37(a) Motion**
**to Compel Production of Certain Documents**

---------- Forwarded message ---------
From: **Carl Wescott** <carlwsoj@gmail.com>
Date: Fri, Apr 1, 2022 at 2:16 AM
Subject: Re: Wescott v. Crowe et al.
To: Troy Romero <TRomero@romeropark.com>
Cc: Kathy Koback <kkoback@romeropark.com>, Matthew Coughlan
<mcoughlan@romeropark.com>


PS This makes sense, Mr. Romero... except that Mr. Coughlan has documents that
have the Operating Agreement as an attachment.

The only logical explanation for that is that Mr. Rau printed out emails, gave them (or a
scan) to Romero Park PS, but did not print out attachments.  If that's the case, my
suggestion is to enable a digital delivery of digital documents in the future.

In that case, Mr. Rau clearly has the attachment in digital form.

But now that you have explained that Mr. Rau will not give it to me without a Court
Order compelling him to do so, I'll file a Motion to Compel, since it's the only way I can
get the Operating Agreement.  The Operating Agreement, as evidence, is the way I was
planning to prove that Mr. Rau and Mr. Malcolm and Mr. Jimenez were and are liable for
the Crowe Group partnership's liability to me (aka Litigating Group partnership)
regarding the Seaside Mariana contract, via agency.

--CAW

On Wed, Mar 30, 2022 at 1:04 PM Troy Romero <TRomero@romeropark.com> wrote:
Matt can correct me as I may be wrong on this but I think the O.A. wasn't on Rau's
privilege log because he doesn't have a copy.

I believe it is on the privilege log though for Lyonnette and/or Crowe.


t


**From:** Carl Wescott <carlwsoj@gmail.com>
**Sent:** Wednesday, March 30, 2022 12:26 PM
**To:** Troy Romero <TRomero@romeropark.com>; Carl Wescott <carlwsoj@gmail.com>
**Cc:** Kathy Koback <kkoback@romeropark.com>
**Subject:** Re: Wescott v. Crowe et al.

Thank you Mr. Romero for your response.

I hope you enjoy your vacation.

You've articulated something that Mr. Coughlan did not articulate.

Last time I checked Mr. Rau's privilege log, by the way, the Operating Agreement was not on there.

Mr. Coughlan first cited confidentiality as the reason he could not produce certain documents.  However, those documents were *not* on the privilege log.

Now, more recently, Mr. Coughlan claims that the documents I seek do not exist.

Mr. Rau also has not produced a proper privilege log with the information I sought and found many cases with similar ones.

However, I acknowledge, I am a *pro se* and I am not an attorney and I do not have any expertise, really, in these areas, in which I have extremely limited experience.

So, therefore, I could be wrong about a lot of things.

Also, like all of us, my memory is fallible.

I actually had the homeowner's policy in my motion to compel draft because Mr. Coughlan and Mr. Park said no so many times, you can't have it, and Mr. Park also told me to tell the court why I thought insurance policies should be produced.

By the way, I do not have a Motion to Compel Production of Documents filed and in front of the Court (yet).

I filed a Rule 37(d)(2) motion, not a Rule 37(a) motion.  I am going to file a Rule 37(a) motion as soon as I can get to it.  Like you, I'm quite busy.

Let me think about what you stated and do some research.

--CAW  +1 936 937 2688


On Wed, Mar 30, 2022 at 8:32 AM Troy Romero <TRomero@romeropark.com> wrote:
Mr. Wescott:

Good morning.  There are two reasons I did not respond to your email earlier.  First, I have been on vacation with my grandkids.  Second, we have already responded to the same arguments you are making in your email; so you can just look at our prior emails in response to find my clients' position, which has not changed.

The only reason I am responding now is you have made one argument many times before, to which we have already responded, and yet you keep making it. So, in the oft chance that you really don't understand our response and how discovery works I'm going to explain it again in greater detail. It concerns the Operating Agreement. You keep saying my clients must produce this document, but they cannot without violating their confidentiality obligations under it.

The Operating Agreement is an agreement entered into by many people, only 5 of which are the remaining parties in your lawsuit. Included within the O.A. is a confidentiality provision, which prohibits a member from disclosing it to any third party, which includes you. We are not going to disclose attorney client privilege communication and/or attorney work production information to explain what has been done regarding its production but the upshot is that the remaining 5 defendants are prohibited under the confidentiality provision in the O.A. from producing it to you.

Your demand asks my client to violate a confidentiality provision, something they cannot do. No matter how much you complain about it, no matter how much you think you are wronged, it will not change the fact that my clients cannot disclose it to you. You already have a motion to compel discovery before the court on this topic so let's wait and see what the judge says rather than have you make the same argument over and over again.

As to the document production for Crowe and Lyonette please work with Matt and Kathy on the production. Kathy has already let you know how completely slammed she is (and we are also understaffed, but trying to hire additional staff to assist our clients so we can turn work around quicker). Responsive and non-objectionable documents will be produced in due course.

Troy

H. Troy Romero

California Office
16935 W. Bernardo Dr., Suite 260
San Diego, CA 92127
858-592-0065

Washington Office
155 – 108th Ave. NE, Suite 202
Bellevue, WA 98004
(425) 450-5000

**From:** Carl Wescott <carlwsoj@gmail.com>
**Sent:** Monday, March 28, 2022 5:23 PM
**To:** Kathy Koback <kkoback@romeropark.com>
**Cc:** Troy Romero <TRomero@romeropark.com>
**Subject:** Re: Wescott v. Crowe et al.

Thanks Ms. Koback.

Ms. Koback and Mr. Romero, no response to my email from last week.

I appreciate your turning around some propounded discovery.

I also appreciate Mr. Crowe and Mr. Lyonette not doing what Mr. Rau did. As you know, Mr. Rau consistently lied under oath in his written responses and then claimed (also under oath) that because of a lack of context, he could not answer.

Mr. Rau, under oath in writing, claimed to not know who I was, who Kevin Fleming is, what Seaside Mariana was and is, and what the Crowe Group was. He produced no emails and verified under oath there were no documents responsive to my RFPs about me, no emailed documents responsive to my RFPs about Seaside Mariana, no email documents about the Crowe Group.

He also claimed under oath that he had no insurance policies and that he had taken no loans out since 2016.

Then, at Mr. Rau's deposition, also under oath and captured on video, he admitted that, well yes, he DID actually know what Seaside Mariana was and who Kevin Fleming was and in fact had paid $350,000 for land at Seaside Mariana and had been in litigation with Seaside Mariana and Kevin Fleming with the Crowe Group for nine (9) years. Oh, yes, THAT Kevin Fleming, THAT Seaside Mariana, and THAT Crowe Group. Now I remember.

Oh, yes, well, I did take out a loan with my wife in purchasing a house recently.

And yes, well, actually, we have homeowner's insurance and as a licensed real estate broker, I am required to maintain insurance, GL and E&O, I believe, something like that.

Oh yes, actually, I lied under oath before, and there are actually dozens of emails about Carl Wescott and more than 500 emails about Seaside Mariana, maybe 1000+; our group of 22+ people has been in communication about all that for 13 or 14 years, almost entirely by email and with an occasion conference call. There might be a lot more, I don't know, I don't read most of them, I move them to a folder where I store all that stuff.

Of course, Mr. Rau has only delivered a few dozen of those 1000+ at this point, and now once again is pretending there are no documents. Or would Mr. Rau cooperate if

asked to, and it's simply Mr. Coughlan who is lying to me, conspiring with his client, or just lazy and not wanting to do required work?

Is your plan (and Mr. Crowe's plan, and Mr. Lyonette's plan) to do what Mr. Coughlan and Mr. Rau did and deny me the key documents at the heart of the case that I can use to fully prove liability for all Defendants other than Mr. Crowe and Mr. Lyonette, including the Operating Agreement, the MoU, and the App-1?

Are you going to tell me I cannot have them due to confidentiality, but refuse to put them on the privilege log, and refuse to do a proper privilege log, like Mr. Coughlan?

You've produced no documents for the RFP, but yet we know there are 1000+ as per Mr. Rau's testimony under oath at his deposition.

You didn't respond to my kind offer to just get me a few key documents for now, like the Operating Agreement, with which I can fully prove liability for Mr. Rau. That document should have been delivered to me last July. Had Mr. Rau delivered it rather than repeatedly lying under oath, in August I could have filed a Motion for Summary Judgment against Mr. Rau. I might have had a large judgment against Mr. Rau in 2021.

I appreciate that unlike Mr. Rau, Mr. Crowe and Mr. Lyonette appear to be willing to tell the truth in writing under oath, and don't suddenly have selective amnesia, not remembering anything about the last 14 years of Seaside Mariana experiences.

I don't think Mr. Crowe in particular can credibly claim he doesn't know what the Crowe Group is, the group of litigants Mr. Crowe put together who sued Kevin Fleming and Seaside Mariana together in partnership when they didn't get properties they paid millions of dollars for, to Mr. Fleming.

But the fact remains that almost a week after RFPs were due, you haven't delivered a single document.

Mr. Romero did not return my phone call about discovery issues.

Since you refused my kind offer and won't respond to email about it, and you're not going to deliver the Operating Agreement any time soon, if ever, without a Court order compelling you to do so, may I ask when you're going to deliver, say, at least a few hundred of the 1000+ documents we know are responsive to my propounded RFPs?

Thank you in advance for any response and guidance on what is hopefully a reasonable date to deliver some documents responsive to my RFPs.

Hopefully Romero Park will change its mind as a firm and not continue to conspire with its clients to hide the key documents of the case that I need to fully prove liability for Mr. Rau, Mr. Malcolm, and Mr. Jimenez, among others.

--CAW  +1 936 937 2688

 Gmail     EXHIBIT E    Carl Wescott <carlwsoj@gmail.com>

## your sworn affidavit under penalty of perjury
1 message

**Carl Wescott** <carlwsoj@gmail.com>                                                          Wed, Mar 30, 2022 at 3:55 PM
To: Troy Romero <TRomero@romeropark.com>
Cc: Justin Park <jpark@romeropark.com>
Bcc: Carl Wescott <carlwsoj@gmail.com>

Mr. Romero,

I don't believe you are maliciously or intentionally misstating the truth under oath.

Would it be helpful to you for me to point out aspects of your sworn declaration that don't seem to be in alignment with the facts?

E.g. you swear that Mr. Rau timely produced RFP responses. I served discovery June 11th. Would your definition of "timely" be within 30 days as required by Fed. R. Civ. P.?

Perhaps you were not aware that nothing was produced on July 11th. After nothing "timely" was produced, Mr. Coughlan then promised July 20th. That date came and went.

We then missed six (6) more promise dates.

If you are comfortable with your oath under penalty of perjury blatantly misstating the facts in many cases, and you don't want to change it, and you don't want to hear from me on the parts where I believe the truth and the facts are not in alignment with your sworn testimony, that's fine.

If you'd like me to point out the areas where I believe you are lying under oath, the "timely" production of documents is #1.

There are many many many more lies to the court in the brief and in your sworn testimony, which I believe are violations of 3.3 and may violate the law where you lie under oath (perhaps not maliciously, and perhaps, arguably, unintentionally).

But isn't it your responsibility to confirm the facts you are attesting to under oath?

Would you like me (like with Mr. Park... who initially said, go ahead, send the evidence, but then didn't want me to put the time into it) to send you the rest of those details?

On the lie under oath about the "timely" production of documents, would you like me to forward you all the emails about this that show those seven (7) missed promised deadlines? They're in your possession already, and that of Mr. Park, and of Mr. Coughlan

If you feel it is my responsibility (like Mr. Park) to send you "evidence" that you have in your possession to prove you are repeatedly lying to the Court, and repeatedly lying under oath under penalty of perjury, just say the word.

The list of lies under oath (the rest) I can do quickly, if you would like me to (just as I did for Mr. Park... I'll just print out your sworn declaration, circle the lies under oath and penalty of perjury, and then number them... so that if you need me to send you the evidence that you have in your possession, but apparently didn't review, I can just send along with #1, #2, #3, #4, #5 and so on.

I note that Mr. Park did not change his sworn affidavit under oath, so now it's clear that he is intentionally lying under oath.

The actual sending of evidence to show you you lied under oath repeatedly will take some time. I am happy to do it especially if you will retract the part of your sworn affidavit that contains lies under oath (once you confirm from the evidence, e.g. emails and documents).

By the way, I totally understand fallible memories. I mis-remembered the insurance policy that Ms. Koback finally did deliver, and still had it in my Motion to Compel brief draft. I too mis-remember things and make mistakes (both of memory, and for issues where I don't have the legal understanding that you do). My mistakes are, of course, not malicious, but neither are they intentional.

At the very least, you may want to check the facts in your testimony under oath and penalty of perjury.

I hope you will want the list of lies under oath, and then, after double-checking the facts, that you will retract the statements that you agree with me were incorrect and untruthful (at least in your sworn affidavit under penalty of perjury).

I do not believe you are maliciously misrepresenting the truth under oath.

But if you won't correct the lies under oath, then it is clear you, like Mr. Park, were and are intentionally lying under oath.

--CAW  +1 936 937 2688

 Gmail

Carl Wescott <carlwsoj@gmail.com>

## Thank you, Mr. Park, for now admitting that Mr. Rau stated he had "dozens of emails" concerning Carl Wescott, and that he had "hundreds of emails" - "perhaps 500" about Seaside Mariana

Carl Wescott <carlwsoj@gmail.com>                                                          Thu, Mar 31, 2022 at 5:14 AM
To: Justin Park <jpark@romeropark.com>
Cc: Troy Romero <TRomero@romeropark.com>, Matthew Coughlan <mcoughlan@romeropark.com>, Kathy Koback <kkoback@romeropark.com>
Bcc: Carl Wescott <carlwsoj@gmail.com>

Mr. Park, please see attached for your six (6) misstatements under oath and penalty of perjury.

1) The Washington lawsuit did not contain the same set of facts and allegations against Mr. Rau as the case at bar, as you know.  (Yes, the Court granted the stay, but only because my response to your motion asking to stay arriving by mail after the Court hearing and Court decision).

Please look at the two lawsuits, if you've never read the Washington one (or look again).

Again, the Washington lawsuit used assigned claims from the Lee brothers.  No cause of action was identical between the two lawsuits.  There were some related facts, but they were not the same set.

Please retract your false statement under oath and penalty of perjury, thank you.

Otherwise, I believe it is clear you are intentionally lying under oath and penalty of perjury.

2) Mr. Rau has taken almost 9 months to respond to my RFPs, and if his statements under oath at his deposition were accurate, he's only provided (or put on the privilege log) about 10% of responsive documents. I responded and provided parameters within a day or so.  I'll forward you the email that got you everything you asked for, and then will tell you exactly how many hours it took me to respond.

Do you still testify under oath and penalty of perjury that I was "slow to provide anything"?

Please retract your false statement under oath and penalty of perjury, thank you.

Otherwise, I believe it is clear you are intentionally lying under oath and penalty of perjury.

3) You now admit that Mr. Rau stated under oath that he had "hundreds" of emails (SM) and "approximately 500", correct?

Page 2, line 13, "This is not what Mr. Rau stated in his deposition" (concerning "hundreds of responsive emails").

You now admit that this was an unintentional and non-malicious mis-statement under oath and penalty of perjury, do you not?

Please retract your false statement under oath and penalty of perjury, thank you.

Otherwise, I believe it is clear you are intentionally lying under oath and penalty of perjury.

4) You now admit that this was an unintentional and non-malicious mis-statement under oath and penalty of perjury, do you not?

Please retract your false statement under oath and penalty of perjury, thank you.

Otherwise, I believe it is clear you are intentionally lying under oath and penalty of perjury.

5) "At no point in the deposition did Mr. Rau state that he had hundreds of responsive emails".

But he did, as you've now admitted.

This was likely an unintentional and non-malicious mis-statement under oath and penalty of perjury, too.

Please retract your false statement under oath and penalty of perjury, thank you.

Otherwise, I believe it is clear you are intentionally lying under oath and penalty of perjury.

6) Ditto.  My statements were 100% accurate, as per my notes, and as per the video.

I did not misstate anything.

Please retract your false statement under oath and penalty of perjury, thank you.

Otherwise, I believe it is clear you are intentionally lying under oath and penalty of perjury.

Thank you

--CAW  +1 936 937 2688

On Thu, Mar 31, 2022 at 4:15 AM Carl Wescott <carlwsoj@gmail.com> wrote:
[Quoted text hidden]

 **Mr. Park perjurious statements under oath.PDF**
5209K

Friday April 1st, 2022

**RECEIVED**

APR **0 6** 2022

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

Clerk of the Court
United States District Court
District of California – Northern District
450 Golden Gate Avenue, 16th Floor
San Francisco, CA 94102

Re:  3:20-cv-06456-JD (*Wescott versus Crowe, et al.*), Plaintiff's Reply to Defendant Rau's
Response in Opposition to Plaintiff's 37(d)(2) Motion for Sanctions and Orders Related to
Defendant Rau's Discovery Abuse

Dear Clerk of the Court:

Would you please file this document in the docket for the case at bar?

The documents have already been served upon Mr. Rau and all other Defendants via their
attorney, H. Troy Romero, esq.

Please reach out to me if you have any questions or concerns.

Thank you for your kind assistance, as always.

Carl A. Wescott, Plaintiff *pro se*
8210 E. Via de la Escuela
Scottsdale, AZ 85258
+1 936 937 2688
carlwsoj@gmail.com

**WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.**



**P**

PRIORITY MAIL
U.S. POSTAGE PAID
C2M
eVS

## USPS PRIORITY MAIL®

521215-1-1-PRI
CARL A WESCOTT
8210 E Via de la Escuela
Scottsdale, AZ 85258

Clerk of the Court
United States District Court
450 Golden Gate Ave FL 16
San Francisco, CA 94102-3426

USPS TRACKING # eVS



9205 5901 5266 1900 1589 1009 67

# PRIORITY
## ★ MAIL ★

📅  **DATE OF DELIVERY SPECIFIED** •

📶  **USPS TRACKING™ INCLUDED** •

$  **INSURANCE INCLUDED** •

🚚  **PICKUP AVAILABLE**

• Domestic only





PS01101117521

**June 2017
OD: 9 x 12**



♻ This envelope is made from post-consumer waste. Please recycle - again.

# PRIORITY ★ MAIL ★

**PRESS FIRMLY TO SEAL**

FLAT RATE ENVELOPE
ONE RATE ★ ANY WEIGHT™



PS011011117521

June 2017
OD: 9 x 12

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE



**UNITED STATES POSTAL SERVICE®**

TRACKED
INSURED
★ ★ ★

**PRESS FIRMLY TO SEAL**

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. Custom Envelope © U.S. Postal Service; June 2017. All rights reserved.