

CARL A. WESCOTT
8210 E. Via de la Escuela
Scottsdale, AZ 85258
*in propria persona*
CARLWSOJ@GMAIL.COM
+1 936 937 2688

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CALIFORNIA
## NORTHERN DISTRICT

| | |
|---|---|
| CARL A. WESCOTT,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID CROWE, MIKE LYONETTE;<br>BRAD MALCOLM; MICHAEL JIMENEZ,<br>et al.<br><br>Defendants | Case No. 3:20-cv-06456-JD<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Hearing Date: Thurs., April 28th, 2022<br>Hearing Time: 10:00 am<br>Courtroom: 11<br>Judge: Hon. James Donato |

Plaintiff Carl A. Wescott, proceeding *pro se*, hereby responds to Defendants' Motion to Dismiss, brought pursuant to Federal Rule of Civil Procedure 12(b)(6) for Romero Park, P.S. clients David Crowe, Brad Malcolm, Jeff Rau, and Michael Jimenez, filed on March 18th, 2022 by Mr. Troy Romero, esq. Defendants cite three (3) main reasons for Plaintiff's complaint to be dismissed. After alleging that Plaintiff (1) has failed to properly state a claim, Defendants argue that (2) Plaintiff's shortcomings in following the Court's recent Order (Docket No. 104, Order 3:14-15) warrant dismissal of the case at bar. Finally, (3) Plaintiff is a Vexatious Litigant in California state court, and Defendants attempt to utilize Cal. Civ. Proc. Code § 391 as a third justification to dismiss the Plaintiff's legal complaint, or, in the alternative, for the Plaintiff to post a bond.

The Plaintiff will address the Defendants' arguments in his Memorandum of Points and Authorities in reverse order, correcting factually incorrect statements by Mr. Romero on behalf of his clients along the way. The Plaintiff will provide his perspective on the reasons the Motion to Dismiss

1

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION**
**TO DISMISS THIRD AMENDED COMPLAINT**

should not be granted, first, for Mr. Rau, then for Mr. Crowe and Mr. Lyonette ("Signers as Agent"), and then for the other two (2) Defendants, Mr. Malcolm and Mr. Jimenez ("Non-signing Crowe Group partners").

## Memorandum of Points and Authorities
## LEGAL STANDARDS - 12(b)(6)

A plaintiff's burden at the pleading stage is relatively light, in a Court's analysis of a Rule 12(b)(6) motion as to whether colorable claims are made. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)*. The court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party," *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995), including making all reasonable inferences in favor of the non-moving party *Rhodes v. Robinson*, 408 F.3d 559, 563 (9th 2005), and resolving all doubts in the plaintiffs' favor. See *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984). Claims must be "plausible on [their] face," meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 570).

*Pro se* pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). *Pro se* complaints are construed liberally and may only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO DISMISS THIRD AMENDED COMPLAINT**

claim which would entitle him to relief. *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014). A *pro se* litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

## LEGAL STANDARDS – Vexatious Litigants

The *All Writs Act*, 28 U.S.C. § 1651, gives federal Courts the inherent power to enter prefiling orders against vexatious litigants. *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990); *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007). However, such pre-filing orders are an extreme remedy and should rarely be used since such sanctions can tread on a litigant's due process right of access to the courts. *Molski*, 500 F.3d at 1057. Under California state law, a vexatious litigant is one who "[i]n the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five litigations other than in small claims court that have been... finally determined adversely to the person..." Cal. Civ. Proc. Code § 391. Under the law of the State of California, "a defendant may move the court, upon notice and hearing, for an order requiring the plaintiff to furnish security." Cal. Civ. Proc. Code § 391.1. That, however, is in State Court (Superior Court), and the state Court and federal Court have different standards, separate lists, and different procedures to designate a litigant to be vexatious (Cal. Civ. Proc. Code § 391 ("CCP § 391") and 28 U.S.C. § 1651).

Restricting access to the courts is, however, a serious matter. "[T]he right of access to the courts is a fundamental right protected by the Constitution." *Delew v. Wagner*, 143 F.3d 1219, 1222 (9th Cir. 1998). The First Amendment "right of the people . . . to petition the Government for a redress of grievances," which secures the right to access the courts, has been termed "one of the

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO DISMISS THIRD AMENDED COMPLAINT**

most precious of the liberties safeguarded by the Bill of Rights." *BE & K Const. Co. v. NLRB*, 536 U.S. 516, 524–25 (2002) (internal quotation marks omitted, alteration in original); see also *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) (noting that the Supreme Court has located the court access right in the Privileges and Immunities clause, the First Amendment petition clause, the Fifth Amendment due process clause, and the Fourteenth Amendment equal protection clause). Profligate use of pre-filing orders could infringe this important right, *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007) (*per curiam*), as the pre-clearance requirement imposes a substantial burden on the free-access guarantee. Out of regard for the constitutional underpinnings of the right to court access, "pre-filing orders should rarely be filed," and only if courts comply with certain procedural and substantive requirements. *De Long v. Hennessey*, 912 F.2d at 1147 (9th Cir. 1990). When district courts seek to impose pre-filing restrictions, they must: (1) give litigants notice and "an opportunity to oppose the order before it [is] entered"; (2) compile an adequate record for appellate review, including "a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed"; (3) make substantive findings of frivolousness or harassment; and (4) tailor the order narrowly so as "to closely fit the specific vice encountered." *Id.* at 1147–48.

Under federal law, litigiousness alone is insufficient to support a finding of vexatiousness. See *Moy v. United States*, 906 F.2d 467, 470 (9th Cir. 1990) (the plaintiff's claims must not only be numerous, but also be patently without merit). The focus is on the number of suits that were frivolous or harassing in nature rather than on the number of suits that were simply adversely decided. See *De Long v. Hennessey*, 912 F.2d at 1147-48 (before a district court issues a pre-filing injunction against a *pro se* litigant, it is incumbent on the court to make substantive findings as to

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO DISMISS THIRD AMENDED COMPLAINT**

the frivolous or harassing nature of the litigant's actions). The Ninth Circuit has defined vexatious litigation as "without reasonable or probable cause or excuse, harassing, or annoying." *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 886 (9th Cir. 2012).

## ARGUMENT

There are two threshold issues to address: first, Mr. Rau cannot file a Motion to Dismiss as Mr. Rau has already Answered. Second, the Defendants' claims related to CCP 391 are inapposite as we are in United States District Court, not state court. Further, the Plaintiff did not file this case in California.

The two remaining lines of argument after that will be the Plaintiff's late filing of his Third Amended Complaint and its format, and Plaintiff's alleged failure to properly state a claim.

### Threshold Issue 1:
### Mr. Rau Cannot file a Motion to Dismiss as Mr. Rau Already Answered

Mr. Rau Answered in June 2020, with Mr. Bill Viall, esq. as counsel (back in the original Maricopa County Superior Court proceeding, which was then removed to federal Court in Arizona and then transferred to this Court). This is the reason, in the past, that Mr. Rau has filed Judgments on the Pleadings, rather than participate with his partners in the Crowe Group partnership in Motions to Dismiss. Having Answered twenty-two (22) months ago, Mr. Rau may not file a Motion to Dismiss at this stage. This is because a defendant making a motion to dismiss must do so before filing an answer or other responsive pleading. Such a motion, in this case a Rule 12(b)(6) motion, is generally due when the defendant's answer would have been due (Fed. R. Civ. P 12(b)):

> (b) HOW TO PRESENT DEFENSES. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
> (1) lack of subject-matter jurisdiction;
> (2) lack of personal jurisdiction;

5

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO DISMISS THIRD AMENDED COMPLAINT**

1

2

3

4

5

    (3) improper venue;

    (4) insufficient process;

    (5) insufficient service of process;

    (6) failure to state a claim upon which relief can be granted; and

    (7) failure to join a party under <u>Rule 19</u>.

    **A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. (Emphasis** added)   (Fed. R. Civ. P 12(b))

6

7

8

9

10

11

12

13

14

15

16

17

18

Hence, Mr. Rau's Motion to Dismiss must necessarily fail, as Mr. Rau does not have the right to file a Motion to Dismiss or participate in one. Our analysis of liability will divide the other four (4) Defendants into two categories, signers of the contract as agent ("Signers as Agent") and non-signing partners ("Non-signing Crowe Group Partners"). Mr. Crowe and Mr. Lyonette are Signers as Agent, in that they each signed the Contract at hand in both their individual capacity and as agents for the Crowe Group partnership (also known as the Litigating Group partnership, as referenced in the Contract). As discussed further below, Mr. Jimenez and Mr. Malcolm (and Mr. Rau) are Crowe Group Partners. They did not sign the contract, but the partnership that they are in (the Litigating Group partnership) is a party to the contract and was bound to the contract and to performance by the signature of two of its partners, Mr. Lyonette and Mr. Crowe, as agents for the Litigating Group partnership.

19

20

21

Via basic agency, Mr. Malcolm and Mr. Jimenez have personal and individual liability on a joint and several basis for the liabilities of the partnership (Uniform Partnership Act of 1994, California Corporations Code 16306):

22

23

24

    (a) Except as otherwise provided in subdivisions (b) and (c), all partners are liable jointly and severally for all obligations of the partnership unless otherwise agreed by the claimant or provided by law.

25

26

6

1

2

**Threshold Issue 2:**
**Complaint Should Not Be Dismissed Due to Plaintiff being a California Vexatious Litigant**

3      The Plaintiff admits that he is on the California Vexatious Litigant list, an order issued

4    mostly due to his filings in his San Francisco family law case FDI-14-781666 between September

5    2014 and April 2015 (the Vexatious Litigant order was on May 1st, 2017). If the Plaintiff had filed

6    this case in California Superior Court, he would have had to seek pre-approval under CCP 391.7

7    prior to filing. The Plaintiff used to be a California resident, and indeed, in the past, the Plaintiff

8
9    has gone through the 391.7 procedure eleven (11) times, with judges concurring ten (10) of eleven

10   (11) times upon submission that his legal complaints/filings had merit (Exhibit B, Sworn Statement

11   of Carl Wescott). The Eleventh (11th) time, the Plaintiff had to correct a scrivener's error in a

12   Defendant name to gain approval.

13      The Plaintiff will further admit that he had California cases dismissed against him in the

14   past, but those cases were not without merit. The main reason most or all the Plaintiff's California

15   cases that were active a few years ago were eventually dismissed is that the Plaintiff was rendered

16
17   homeless and his possessions stolen. Without a computer or an address, the Plaintiff was unable to

18   receive updates from the Court nor make filings to pursue his cases. The Plaintiff then focused on

19   survival instead, and more immediate ways of accumulating resources (Exhibit B, Sworn Statement

20   of Carl Wescott).

21      The Plaintiff further confirms that he filed seventeen cases in Arizona in 2019 and 2020.

22   including the *Wescott versus Crowe, Malcolm, Lyonette, Ross, Jimenez et al.* legal complaint that is

23   now before this Court. The Plaintiff will take Mr. Romero at his word that he has now filed thirty-

24   eight cases in Arizona, where the Plaintiff lives. The Plaintiff, however, disputes' Mr. Romero's

25   allegation that his cases have been meritless. The Plaintiff asked Mr. Romero to name a single

26

7

meritless case some time ago, and thus far, Mr. Romero has not come up with a single meritless one. (Mr. Romero does cite the instant case as meritless in his filings, but the Plaintiff begs to differ).

The reason the case at bar was originally filed in Arizona is that the Plaintiff signed three relevant contracts with these Defendants. The first contract had a forum selection clause of Phoenix, Arizona; hence the filing in that venue seeking a Court to assert jurisdiction over these Defendants. The second and third relevant contracts had a forum selection clause of San Francisco, California (TAC, Exhibit B, second contract of August 11th, 2018, and Exhibit B, Sworn Affidavit). Given that the Plaintiff had forum selection clauses of Phoenix, Arizona and San Francisco, California to choose from, the Plaintiff chose to file in Maricopa County Superior Court for his convenience (Exhibit B).

The Plaintiff is not a Vexatious Litigant in any United States District Court, including this Court, in which these Defendants specifically requested this case be heard. This legal complaint was not filed for the purposes of harassment or delay (Exhibit B). Rather, these Defendants entered in to binding contracts with the Plaintiff and then, after six months of working together, a few days before the final close of the deal the Plaintiff had put together, the Defendants breached their contract, costing the Plaintiff US $334,000 in payments the Defendants were obligated to make to the Plaintiff and larger sums he would have earned had they closed (Exhibit B). The Defendants later repudiated the contract and committed numerous tortious acts that they should be embarrassed by. The purpose for the filing of the legal complaint being filed was so that the Plaintiff could seek redress and obtain judgments against these Defendants so that they will be required to pay for the damages caused by their breaches and other tortious acts (Exhibit B).

8

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO DISMISS THIRD AMENDED COMPLAINT**

1    The Plaintiff and these Defendants are now in this United States District Court, where the

2    Federal Rules of Civil Procedure apply. Thus, even if the Plaintiff had chosen to file in this Court

3    (he did not), the Plaintiff would not have been required to seek pre-filing approval under CCP §

4    391. CCP § 391.3(b) is not binding and relevant for this Court and these parties because the

5    Plaintiff did not file in California Superior Court with the help of an attorney and later substitute

6    himself in place of the attorney. These arguments made by an experienced attorney verge upon the

7    sanctionable.

8

9    In the interest of judicial efficiency, in case this helps avert a future losing motion by

10   Defendants, the Plaintiff will note that under federal law, as cited in Legal Standards above, the

11   mere fact that a plaintiff has had numerous suits dismissed against him is and would be insufficient

12   grounds upon which to make a finding of vexatiousness in District Court.

13

14   The Defendants argue that many of Plaintiff's California Superior Court cases were

15   dismissed as meritless, which is factually incorrect (Exhibit B), and that therefore, under CCP §

16   391.3(a), the Plaintiff should be required to post a bond. Had the Plaintiff filed in California

17   Superior Court, Defendants would certainly have the option of seeking a bond under CCP §

18   391.3(a), by following the procedures outlined in the law. We are not in California Superior Court;

19   Defendants and their attorney have not followed the outlined procedure. Mr. Romero does not

20   properly cite (on behalf of Defendants) nor address the substantive federal law requirements to

21   show bad faith or willful disobedience of a court's order by Plaintiff. Finally, Defendants' cited

22   case, in support of their desired bond, *Taliaferro v. Hoogs* (Cal. App. 1st Dist. Sept. 15, 1965), was a

23   dispute over $360 (but claiming $10,000 of exemplary damages) originally filed in California

24   Municipal Court, and then California Superior Court, before the appeal. By way of contrast, this

25

26

9

1  District Court case seeks substantial damages backed by the included contract (Exhibit B) that

2  Defendants breached, beginning with contractual payments owed, three (3) orders of magnitude

3  higher.

### Plaintiff Hopes Complaint Will not Be Dismissed due to Tardiness

Defendants second major argument for dismissal is related to Plaintiff's shortcomings in following the Court's recent Order (Docket No. 104, Order 3:14-15). The Order required Plaintiff to file his Third Amended Complaint ("TAC") by February 18th, 2022. The Plaintiff acknowledges that despite his best efforts to file on February 18th, 2022, he filed later than that (Exhibit B). Mr. Romero's dates are correct. The Plaintiff filed two (2) Court days later than February 18th, 2022, with his documents arriving at the Court four (4) days after the due date (Exhibit B).

The Plaintiff respects our court system and the rule of law. The Plaintiff has great respect for this Court and wishes to comply with all Court orders. The Plaintiff tried to file the TAC on Friday, February 18th, 2022. Had he succeeded, the Plaintiff would have been in compliance with the Order. The Plaintiff, as a *pro se*, usually files motions and briefs by mailing documents to the Court. The Plaintiff has started a new business and traveled to Africa on February 5th, 2022, flying back and arriving the night of Monday, February 21st, 2022. Since the Plaintiff wasn't sure about the reliability and speed of mailing in his complaint from Africa, he decided to file electronically, seeing it as an option on the USDC Northern California District web site (Exhibit B). On Friday, February 18th, 2022, the Plaintiff attempted to file electronically. The Plaintiff had difficulty with the option to register as a *pro se* for ECF. He contacted the ECF Help Desk late in the day on Friday, February 18th, 2022, seeking help so he could be registered to electronically file. The ECF Help Desk was then closed on the weekend. The Plaintiff was then on airplanes all day on Monday.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO DISMISS THIRD AMENDED COMPLAINT**

1    February 21st, 2022, arriving home in Scottsdale after 10 pm. As of Tuesday morning, February

2    22nd, 2022 the Plaintiff still had not solved his ECF registration issue, and thus Priority Mailed the

3    TAC to the Court that day, two Court days after he had hoped to file, and two (2) Court days late.

4
### Plaintiff Hopes Complaint Will not Be Dismissed due to Length or Clarity

5
6        The Defendants also complain that Plaintiff did not keep the TAC "[s]hort and clear" (Order

7    3:16-17). The Plaintiff did not think he could take detail out of the complaint and still have viable

8    causes of action, but the Plaintiff did make only minor modifications to the complaint as embodied

9    in the TAC, as shown in the Plaintiff's Redlines. Thus, his changes and modifications were indeed

10   "gshort". Essentially, with his brief modification, the Plaintiff was attempting to convey that the

11   Crowe Group partners (Litigating Group partners, as labeled in the Contract) are liable via agency for

12   the liabilities of the partnership, and that the partnership was bound in the Contract via signatures of

13   agents Lyonette and Crowe.

14

15       Elsewhere, Defendants cite Rule 8 and make allegations about the legal complaint, requesting

16   a dismissal (with prejudice, and no leave to amend), due to the complaint being ambiguous, vague,

17   verbose, and redundant, therefore lacking in clarity from their viewpoint. Procedurally, a Motion to

18   Strike (to handle alleged redundancy) and/or a Motion for a More Definitive Statement (for more

19   detail to handle vagueness and lack of clarity) may have been better suited to handle those issues. As

20   with those motions, for these Rule 8 issues, the Plaintiff would hope and expect that the moving party

21   could cite one or more specific examples of ambiguity, verbosity, and/or redundancy resulting in lack

22   of clarity. Ironically, the Plaintiff believes that Defendants' motion itself also lacks some clarity, also

23   incorrectly cites the facts and law, and includes no factual evidence to support its allegations where

24   those would be expected and required. The Plaintiff emailed Mr. Romero in June 2021 to give him

25

26                                                                                                11

1  an opportunity to cite specific examples (Exhibit E; Exhibit C). Mr. Romero either could not cite a

2  single example or chose not to.

### Defendants' Allegations in their Motion to Dismiss
### Mr. Rau, Mr. Jimenez, and Mr. Malcolm are liable via agency

5      Three of the Defendants, Mr. Jimenez, Mr. Rau, and Mr. Malcolm, allege that they were not

6  a party to the Sales Contract (TAC, Exhibit B). Mr. Rau is not relevant to the Motion to Dismiss as

7  he Answered. Again, Mr. Crowe and Mr. Lyonette (Signers as Agent) signed the Contract in their

8  individual capacity but also as agent for the Crowe Group partnership. Mr. Romero is correct that

9  Mr. Jimenez and Mr. Malcolm did not sign the contract and they are not technically (directly) parties

10 to the contract. However, the partnership that Mr. Jimenez and Mr. Malcolm are in is a party to the

11 contract (the Litigating Group), bound by agents and fellow partners Lyonette and Crowe.

12

13     The partners share profits and losses. The partnership had and has liability to perform under

14 the contract, and now has liability due to the partnership's non-performance. Via basic agency, Mr.

15 Malcolm and Mr. Jimenez have personal and individual liability on a joint and several basis for the

16 liabilities of the partnership (Uniform Partnership Act of 1994, California Corporations Code 16306):

17

18          (a) Except as otherwise provided in subdivisions (b) and (c), all partners are liable
            jointly and severally for all obligations of the partnership unless otherwise agreed by
19          the claimant or provided by law.

20 The Plaintiff does not have the Operating Agreement. Mr. Romero has confirmed these five (5)

21 Defendants are parties to the Operating Agreement and to the Crowe Group partnership (also

22 known as the Litigating Group partnership) (Sub-Exhibit B-2). Mr Romero has also confirmed

23 there is a confidentiality clause in the Operating Agreement, and thus the Plaintiff will need to file a

24 Motion to Compel Production of Documents to obtain that Operating Agreement (Sub-Exhibit B-2).

25

26                                                                                         12

## Defendants' Allegations in their Motion to Dismiss
## The Contract was not Terminated Prior to Mid-October 2018

All five Defendants that filed this Motion collectively allege that the sellers of Seaside Mariana terminated the contract with the Plaintiff prior to the their breach (pulling out of the contracted deal); that the Amended Complaint does not establish elements for its Breach of Contact cause of action, and that the Plaintiff fails to state facts sufficient to support his causes of action for Promissory Fraud, Negligent Misrepresentation, Intentional Interference with Contract, Negligent Interference with Economic Advantage, and Breach of the Covenant of Good Faith and Fair Dealing.

Putting aside the legal arguments for a moment to focus on the facts, what Mr. Romero is claiming (that Mr. Jimenez, Mr. Rau, and Mr. Malcolm are not parties to the contract) is factually incorrect. Given that his clients know the truth, and the ethical strictures Mr. Romero is supposed to be bound by, including BP&C 6068(d) and BP&C 6128(a), the Plaintiff will assume that these are inferences on the part of Mr. Romero, who apparently has not yet had time to read the contract nor research the facts. Mr. Romero does not provide any evidence to back his factually incorrect statements, either by sworn affidavit nor an exhibit with a terminating email or contract. Thus, these allegations are legally unsupported. The Plaintiff's version of events must be assumed to be correct in the context of a Rule 12(b)(6) Motion:

> The court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party," *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995), including making all reasonable inferences in favor of the non-moving party *Rhodes v. Robinson*, 408 F.3d 559, 563 (9th 2005), and resolving all doubts in the plaintiffs' favor. See *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Further, the Plaintiff has provided evidence in the form of Exhibits and Sub-Exhibits that contradict Defendants' allegations, including his Sworn Affidavit (Exhibit B).

13

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO DISMISS THIRD AMENDED COMPLAINT**

Mr. Jimenez, Mr. Ross, and Mr. Malcolm are all parties to the contracts (including the one in TAC, Exhibit B, the second contract, or Funding Contract). That contract clearly states that the Plaintiff is one of the parties to the contract, and that the other party is the group of litigators in the litigating group that purchased lots, condominiums, and bungalows at Seaside Mariana, that "have a Nicaraguan lawsuit together". The identities of those twenty-two people were provided by David Crowe at the time of the contract signing, and the identities are also a matter of public record. The twenty-two people are David Crowe, Mike Lyonette, Thomas P. Madden, Taylor Collins; Jeff Rau; Darrell Bushnell; Amy Bushnell; Peter Tierney; Kathy Fettke; Susie Yee; Norman Davies; Claire Davies; Sandra Winfrey; Brian Putze; Colin Ross; Brad Malcolm; Michael Jimenez; Gustavo Varela, Robert Crowe, Bernadette Brown, Federico Gurdian, and Terencio Garcia. Mr. Jimenez, Mr. Ross, and Mr. Malcolm are all part of that group and their partnership is a party to both Sales Contracts with the Plaintiff (Exhibit B). The litigators are bound together in a partnership for that litigation and for the contract with Plaintiff. The partnership is liable for the breaches and related tortious acts alleged in the case at bar. Via agency (and further allegations of conspiracy), the named individuals are liable for their obligations and debts of their partnership.

Mr. Romero also seeks to mislead this Court, on behalf of Defendants, about the sequence of events. Defendants allege (with no supporting evidence) that the sellers of Seaside Mariana terminated the contract prior to their October 2018 breach (Mr. Crowe, on behalf of and along with all Defendants, pulling out of their contractual commitment to fund and close the purchase of Seaside Mariana). Quite the contrary; Mr. Romero's assertions are not true (Exhibit B).

The Plaintiff will next address the legal arguments in the Rule 12(b)(6) Motion to Dismiss.

The Plaintiff will first show that there is at least one cause of action that features the required elements as pled (and the facts to support the elements). In doing so, the Plaintiff is supporting his argument that he has colorable and plausible claims wherein he could be entitled to relief. Further, if his allegations are indeed true, the Plaintiff further avers that he has demonstrated at least one legal theory by which the Defendants would be liable for their misconduct. Thus, the Plaintiff's legal complaint is not entirely without merit. Therefore, by pleading stages, the Plaintiff's legal complaint should not be dismissed.

### Elements of Breach of Contract (and Facts as pled supporting those Elements)

The Plaintiff accepts Defendants' elements for breach of contract: "(1) the existence of a contact: (2) Plaintiff's performance of the contract or excuse for non-performance; (3) Defendant's breach of the contract; and (4) the resulting damages to Plaintiff." (Motion to Dismiss, p. 5, and hornbook law). The elements for breach of contract are in the complaint as pled, with facts to support them (shown in Exhibit A):

(1) The existence of a contract. It is undisputed that the contract, the "Sales Contract" existed (Amended Complaint or "AC" ¶21, ¶22, ¶24, and Exhibit A to original Complaint). Mr. Romero, on behalf of three of the Defendants, disputes that they are parties to the contract. However, those three Defendants were named as the parties in the contract, were in conspiracy with the other twenty-one defendants, and agreed to be bound by the terms of the "Sales Contract." (AC ¶6, ¶24, and ¶25).

(2) Plaintiff's performance of the contract. The Plaintiff got the sellers of SM into contract, and after more than six (6) months of work, got the parties essentially to the closing table in

15

October 2018, ready to close, just before flights to the actual closing table. The parties had even hired attorneys to prepare closing documents (AC ¶19, ¶38 through ¶45).

(3) Defendant's initial breach of the contract. "[W]ith the Plaintiff about to fly to Nicaragua for the closing, on or around Tuesday October 9th, 2018, David Crowe, on behalf of the Crowe Group, informed the Plaintiff that he and the rest of his investor group refused to close and would not be closing, breaching the Sales Contract." (AC, ¶46). Setting aside the conclusory but true language at the end ("breaching the Sales Contract"). Mr. Crowe and his co-Defendants had expressly and contractually promised to close on their purchase and investment. Defendants had also expressly and contractually promised to fund said closing (AC ¶21, ¶22, ¶24, ¶38 through ¶45, and Sales Contract, Exhibit A to original Complaint). Defendants, through Mr. Crowe, informed the Plaintiff that "he and the rest of his investor group refused to close and would not be closing" (AC, ¶46). Though they had had a period of due diligence earlier, from June through August, once they signed the final, definitive closing Contract, there were no longer any contingencies, no provision to terminate the contract, and no liquidated damages clause (AC ¶39, ¶40, and ¶42). Thus, Defendants breached the contract.

(4) The resulting damages to Plaintiff. The contract called for Defendants to pay the Plaintiff US $334,000 in a series of payments upon the close (AC, ¶35 and ¶45). Admittedly, the Plaintiff would have had to transfer the SM land to Defendants to get the payments, but it is reasonable to assume that an indigent man who had honored and performed all other aspects of the contract would indeed make that transfer. This level of detail is not pled in the legal complaint, but the Plaintiff had offered to the Defendants, through David Crowe, that he

16

sign a limited power-of-attorney in favor of Mr. Crowe's wife as part of the closing documents for SM, so that Mrs. Crowe could handle that transfer of land (recording signed grant deeds) on behalf of the Plaintiff, as soon as practicable after the SM close (Exhibit B). Given that the whole reason Defendants were funding the purchase of SM was to get the land, it is also reasonable to assume that Mrs. Crowe would indeed have done so, especially as the land was and is worth an order of magnitude more than the Defendants' promised investment (Exhibit C). Given that Defendants did not close, and pulled out of the deal (AC, ¶46) the absence of the US $334,000 that the Plaintiff would have received by now are part of the Plaintiff's base damages, before prejudgment interest, costs, and fees (and possible consequential and/or exemplary damages). The Plaintiff will prove these allegations and further damages at trial.

If the elements are there, and the facts to prove them are there as well, the Plaintiff is quite close to being able to prove liability for, say, Mr. Rau, via Motion for Summary Judgment ("MSJ"). Indeed, the Plaintiff plans to file a Motion for Summary Judgment as regards to Mr. Rau as soon as he obtains the Operating Agreement that shows that Mr. Rau is a party to the Litigating Group partnership, via an upcoming and unfortunately necessary Motion to Compel Production of Documents. However, at this stage, the Plaintiff only needs to show that he has colorable arguments. He does not need to fully prove liability and damages until the jury trial he has requested.

The Plaintiff believes he has demonstrated a viable legal theory with all necessary material elements in which the Defendants have liability with the facts as pled. His claims are plausible and colorable. The Plaintiff respectfully requests that this Court deny the Defendants their requested

17

relief of a dismissal, especially one with prejudice. The Plaintiff is limited by space (and already but will briefly address the rest of Defendants' points.

### Promissory Fraud, Promissory Estoppel, and Negligent Misrepresentation Causes of Action

The Plaintiff agrees that more specificity and particularity would be beneficial. With regard to the Promissory Estoppel, the Defendants made promises on which the Plaintiff foreseeably relied on to his detriment. The Plaintiff had other investors that could have funded this purchase. Indeed, the Plaintiff had originally signed up an investor in New York to fund this purchase, but that investor grew concerned over a couple issues. At that point, the Plaintiff signed up the Crowe Group. Had the Crowe Group not committed and made those promises, the Plaintiff could have signed up another investor to fund and close his purchase, as he had plenty of time.

The Plaintiff lost access to his electronic and other records when he was robbed at a Scottsdale Hotel, the Bixby Hotel, in July 2020. Thus, he cannot specify the exact dates that many events occurred, nor does he have the emails in his records. The Plaintiff will serve discovery to obtain those records. David Crowe and Mike Lyonette made those promises to the Plaintiff in many phone conversations between June and August 2018 – phone records will provide the dates, as well as emailed summaries of the conversaions that the Plaintiff will obtain in discovery. David Crowe also made such promises at their face-to-face meeting in Oakland on June 14th, 2018 or shortly thereafter (the date is from the Plaintiff's memory, but can be ascertained via discovery). Mr. Crowe made promises to the Plaintiff that his group (the Crowe Group) would indeed provide the funds for the Plaintiff's purchase. In August 2018, Mr. Crowe and Mr. Lyonette made the same promises via conference calls with the Plaintiff, on August 8th, 9th, 10th, and/or 11th (phone records will confirm these exact dates or similar, as will emails).

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO DISMISS THIRD AMENDED COMPLAINT**

At that point, the Defendants were past due diligence and had no contingency to pull out, as reflected in the Funding Contract ("Sales Contract"), and no LD (liquidated damages) that they could give up to be released from further liability. Mr. Crowe and Mr. Lyonette promised the Plaintiff that they had the $500,000 needed to fund the contract, and/or could come up with it quickly (though that later turned out not to be true, as per Sub-Exhibit B-1). Mr. Crowe, Mr. Lyonette and fellow partners have plenty of assets, but coming up with lots of money quickly turned out not to be possible.

These same promises are among the many made by various Defendants, on behalf of all Defendants. Discovery will produce dozens more made in writing. Some or all those promises were false when made, as demonstrated by the fact that the Defendants did not indeed close, or provide the promised funds, or do any of the substantial things they promised to do verbally, in writing, and in the parties' contract. These promises did in fact induce reliance by the Plaintiff, who dedicated six (6) months of his life on getting the related deal to the closing table, only to have the Defendants breach their contract and break their promises and representations. To the $500,000 promise, though the Ted Cole lawsuit was the issue cited as the reason the Defendants did not fund the purchase of Seaside Mariana as per the Contract, it appears that the promise of having the $500,000 or quickly being able to come up with it was also false (Sub-Exhibit B-1)

Indeed, the Defendants then repudiated the contract, and, ignoring the NCND (Non-Circumvent) agreement the parties had, then tried to use the information gleaned from the Plaintiff to go around him (*cf*. Thomas Madden email to Kevin Fleming in the original Legal Complaint). and then David Crowe did attempt to negotiate a deal with Mr. Fleming directly. attempting to cut the Plaintiff out of the equation.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO DISMISS THIRD AMENDED COMPLAINT**

The Plaintiff requests that in the future, in the interests of justice and judicial efficiency, before the jury trial, this Court allow him to conform his pleadings to the facts which will be more precisely definable with discovery.

**Negligent/Intentional Interference: Contractual Relations & Prospective Economic Advantage**

Contrary to Defendants' representations, the Plaintiff had substantial dealings with the Seaside Mariana sellers, Kevin Fleming, Maria Rueda, et al. (Exhibit B). For example, the Plaintiff was in contract to purchase another real estate development (Isla Mariana) from the same group of sellers, seven (7) more Panamanian and Nicaraguan companies, and had purchased individual and corporate legal claims from the group as well (Exhibit B).

Defendants were aware of those facts, as they had been disclosed to Defendants.

The Plaintiff acknowledges that he is unsure what the group did behind the scenes to further destabilize the Plaintiff's relationship with Mr. Fleming, besides breaking their promises and not funding the Plaintiff's purchase of Seaside Mariana. Those further acts, if any, will emerge with discovery.

### Summary and Conclusion

In the order that arguments for dismissal were disposed of, Mr. Rau's Motion to Dismiss fails because he has no right to file a Rule 12(b)(6) motion now – he's twenty-two (22) months late, having answered in June 2020. Further, Defendants cite Cal. Civ. Proc. Code § 391 as a reason the case should be dismissed or that Plaintiff should post a bond. However, CCP §391 is utilized in California state courts (Superior Courts in each County), and not in the federal court system. CCP §391 is inapposite because (1) we're in United States District Court; (2) the Plaintiff did not file in

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO DISMISS THIRD AMENDED COMPLAINT**

California Superior Court; (3) the Plaintiff followed all rules and procedures of the Court in filing the instant case in Maricopa County; and (4) had he not, the time to argue about it was June 2020.

Defendants argue that Plaintiff's shortcomings in following the Court's recent Order (Docket No. 104, Order 3:14-15) warrant dismissal of the instant case. The Plaintiff acknowledges the issue, that he served the TAC two (2) Court dates late, as Mr. Romero states. The Plaintiff attempted to follow the Order and had challenges in doing so, that he takes responsibility for. The Plaintiff apologizes to the Court and to Defendants for this short-coming. Similarly, the Plaintiff hopes that he made his minor changes "[s]hort and clear", or as clear as can be without the Operating Agreement for the Crowe Group partnership (aka Litigating Group partnership). Mr. Rau, Mr. Jimenez, and Mr. Malcolm are three of the partners in the Litigating Group partnership, as Mr. Crowe had stated, and as Mr. Romero has more recently confirmed in writing. The Litigating Group partnership was bound into the Contract with Plaintiff via Mr. Lyonette and Mr. Crowe, acting as agents for the partnership. Thus, Mr. Rau, Mr. Malcolm, and Mr. Jimenez, three (3) of the twenty-two (22) partners sharing profits and losses, are individually liable to the Plaintiff via agency.

Several other Crowe Group partners have acknowledged their liability to the Plaintiff and paid the Plaintiff some monies to settle their liability, including Mr. Peter Tierney, Mr. Thomas Madden, Ms. Sandra Winfrey, Mr. Brian Putz, Mr. Colin Ross, and Ms. Kathy Fettke. The Plaintiff preferred the approach of the other Litigating Group partners in this regard.

The major claims by Mr. Romero, esq. and Defendants in the Motion to Dismiss are unsupported by a Sworn Affidavit, and unsupported by any attached evidence – such as the claim

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO DISMISS THIRD AMENDED COMPLAINT**

that the Contract was terminated by Kevin Fleming before the Plaintiff's planned mid-October close on the purchase of the Seaside Mariana company that owned the real property at hand.

The Plaintiff respectfully requests this Court to deny the relief requested by Defendants (dismissal of the complaint or the posting of a bond as security). The Plaintiff has illustrated how the facts as pled are also sufficient to establish that he has colorable claims against Defendants, especially under the light requirements of Fed R. Civ. P. Rule 8(a), and this provides further foundation for said request to deny dismissal.

As far as better pleading for some causes of action, the Plaintiff is somewhat hobbled until he gets the Operating Agreement and other related key documents in the case, which shall be the subject of a Motion to Compel Production of Documents to be heard soon, hopefully in May or June 2022. This hobbling extends to some of the Plaintiff's arguments and some of the details for his causes of action. The Plaintiff agrees with Mr. Romero that we have taken enough of the Court's time with Motion to Dismiss cycles. Given the Plaintiff's loss of essentially all relevant digital data, significant information is as yet unavailing. Nevertheless, the Plaintiff hopes we can move forward with the case, serving discovery so that the key documents and information can help guide us on the path forward towards jury trial. After all, litigation is a truth-seeking enterprise, and those documents, answers, information, testimony and other evidence will help us shine the light of the truth on what actually occurred.

This will help the Plaintiff with the key dates with promises and misrepresentations by Mr. Crowe and Mr. Lyonette on behalf of the Litigating Group. It will also help with some details that the Plaintiff is unaware of, such as communication behind the scenes within Crowe Group

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO DISMISS THIRD AMENDED COMPLAINT**

members, with Ted Cole, who filed a lawsuit, and with Kevin Fleming, who was the subject of a NCND (non-circumvent) as far as the Crowe Group was concerned, for this purchase.

The Plaintiff was damaged by these Defendants, investing six (6) months of his life putting the Seaside Mariana deal together; negotiating and signing a contract with Mr. Lyonette and Mr. Crowe that bound the Litigating Group partnership; conducting due diligence; and preparing for the close of the Seaside Mariana transaction. The Plaintiff fully performed, but the Defendants pulled out at the last minute, citing a recent lawsuit as the reason. Unfortunately, the Defendants then did not pay for the close and did not pay the Plaintiff the US $334,000 they owe him, thus further damaging him, before we even get into the secondary consequences of not closing and not paying the Plaintiff, such as opportunity costs.

Now, through the law offices of Romero Park, P.S., Defendants deny that there was even a deal to close in mid-October 2018, claiming that Mr. Kevin Fleming terminated the Seaside Mariana contract before then. These claims are false and wholly unsupported by even a single shred of evidence. Had Mr. Fleming terminated prior to October 2018, Defendants would have attached a supporting affidavit, or a terminating contract or email.

It is unfortunate that Defendants now deny what actually occurred. However, these basic facts are at the heart of this dispute between Plaintiff and Defendants. The Plaintiff has demonstrated that his cause is just and that his allegations are real, utilizing evidence to support his allegations, such as his affidavit, the Contract, and emails. The Plaintiff has been damaged by these Defendants. The Plaintiff seeks his day in Court where these matters can be adjudicated based on their merits.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO DISMISS THIRD AMENDED COMPLAINT**

1    Procedurally, while the Plaintiff is lacking some of the key documents at the heart of the

2  case, such as the Litigating Group partnership's LLC Operating Agreement, he hopes we can move

3  this case forward, and that he can conform his pleadings to facts related to those missing documents

4  later, before the jury trial he has requested.

5        For the reasons stated above and so that justice may be served, the Motion to Dismiss should

6  be denied, and the parties should proceed to serving discovery and motion practice.

7

8

9

10   RESPECTFULLY SUBMITTED on April 14th, 2022.

11

12

13                                                            A. Wescott

14                                              CARL A. WESCOTT, *pro se*

15

16

17

18

19

20

21

22

23

24

25

26                                                                                    24

## Exhibit A - Facts as Pled Supporting the Breach of Contract

The facts, as pled in the Amended Complaint ("AC") that support a judgment against some

Defendants (cut and pasted) are:

- Plaintiff is informed and believes and thereon alleges that at all times material to this Complaint, David Crowe, Robert Crowe, Mike Lyonette; Thomas Madden; Taylor Collins; Jeff Rau; Darrell Bushnell; Amy Bushnell; Peter Tierney; Kathy Fettke; Susie Yee; Norman Davies; Claire Davies; Bernadette Brown; Sandra Winfrey; Brian Putze, Colin Ross, Brad Malcolm, Michael Jimenez, Federico Gurdian, Terencio Garcia, and Gustavo Varela, as individuals, in addition to acting for himself/herself and on his/her own behalf individually, as well as for the benefit of his or her marital community (if any), is and was acting as the agent, servant, employee, and/or representative of, and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the other Defendants (individual and entities) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy. (AC, ¶6)
- Most recently, the Plaintiff entered in to contract to purchase SM (either the Sociedad itself or the real estate, at his option) in 2018, with an anticipated close date (after some revisions, addenda, and extensions) of October 15th, 2018 (AC, ¶19)
- More recently, in August 2018, the Plaintiff entered in to a final version of a contract with investors, after their due diligence, who were familiar with the relevant properties who agreed to fund 100% of the costs of the purchase in exchange for certain land owned by SM (AC, ¶21)
- That contract shall be referred to as the "Sales Contract." (AC, ¶22)
- A group of 22 investors (the named Defendants) all agreed to collectively be bound by the Sales Contract and to fund the payments in the Sales Contract. (AC, ¶24)
- Two of the Defendants, David Crowe and Mike Lyonnette, agreed to manage their group and, for expediency, communications with the Plaintiff. David Crowe named and provided documentation as to the identities of the twenty-two people (including himself) who had agreed to be bound by the Sales Contract. (AC, ¶25)
- In August 2018, David Crowe and Mike Lyonette signed NCNDs with the Plaintiff in August 2018, and pledged not to share any information about the Plaintiff or the Sales Contract with any of the rest of their group of 20+ investors unless an individual group member signed a NDA (Non-Disclosure). (AC, ¶28)
- Approximately 10 of the 20+ investors signed NDAs with the Plaintiff, and thus, if Mr. Crowe, Mr. Lyonette, and others were honoring the Sales Contract and their NDAs, the Plaintiff believes only the dozen or so of them would have gotten information related to the Sales Contract and its progress towards a closing after that point. (AC, ¶29)
- The NDAs granted jurisdiction of the Plaintiff's choice, had a non-disclosure provision, and in the majority of the NDAs signed, specifically acknowledged that violating the non-disclosure provision, given the Plaintiff's deals, would like cost him over US $10 million, with the Defendants signing up for damages in that amount for that scenario. (AC, ¶30)

25

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO DISMISS THIRD AMENDED COMPLAINT**

- Because the Plaintiff was purchasing the development for US $500,000 (plus capped deferred payments) and selling the land to the investors backing him for US $834,000, the Plaintiff was going to make US $334,000 in short-term cash profit in closing his purchase of SM and flipping the land to his investors. (AC, ¶35)
- For stylistic purposes and economy of phrase, the above Defendants, who acted in concert to fund the Plaintiff's purchase of SM, will be described as "the Crowe Group" unless the context requires otherwise. (AC, ¶37)
- The Crowe Group performed its due diligence on the deal and agreed to move forward to a close. (AC, ¶38)
- After the Crowe Group's due diligence, those investors agreed in August 2018 to close on the purchase within 60 days. The parties signed a new definitive contract in August 2018 for a closing in October 2018. (AC, ¶39)
- There was no contingency or liquidated damages in the contract, as the Crowe Group was quite familiar with the assets being purchased, their current state, and had done their due diligence. (AC, ¶40)
- The Sales Contract called for a closing date in mid-October-2018, as did the Plaintiff's purchase contract of Seaside Mariana. (AC, ¶42)
- The parties retained attorneys to prepare closing documents. (AC, ¶43)
- The parties worked out the logistics of closing in a "simultaneous close", which is well-understood to mean two successive closings. (AC, ¶44)
- In the agreed logistics, the Plaintiff would acquire the entity Seaside Mariana Golf and Spa Resorts, SA, which owned all the land, using another US $475,000 of the Crowe Group's money for said close. Then, the Plaintiff would transfer the lands in the Sales Contract to the entity of the Crowe Group's choice. Then, the Plaintiff or his designees would get the other US $334,000 in a series of payments. (AC, ¶45)
- However, with the Plaintiff about to fly to Nicaragua for the closing, on or around Tuesday October 9th, 2018, David Crowe, on behalf of the Crowe Group, informed the Plaintiff that he and the rest of his investor group refused to close and would not be closing, breaching the Sales Contract. (AC, ¶46)

### Further Facts as Pled Supporting the Breach of Contract based on Repudiation

- David Crowe assured the Plaintiff that SM was no longer attractive to any of his investment group. (This is not a valid reason to breach a contract but is interesting in light of his and the group's further actions, below). (AC, ¶47)
- In March 2019, Defendant Thomas P. Madden contacted Kevin Fleming, with the following email (AC, Exhibit B). (AC, ¶48, and AC, Exhibit B)
- In April 2019, Defendant David Crowe contacted Kevin Fleming, following up on communications from Thomas Madden and David Crowe, in email (AC, ¶49)
- In doing so, it is clear Crowe and all Defendants fully ratified the first Crowe breach as well as the Madden breaches and repudiation of the Sales Contract (AC, ¶50)

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO DISMISS THIRD AMENDED COMPLAINT**

1  CARL A. WESCOTT
   8210 E. Via de la Escuela
2  Scottsdale, AZ 85258
   *in propria persona*
3  CARLWSOJ@GMAIL.COM
   +1 936 937 2688
4

5           UNITED STATES DISTRICT COURT
6        IN AND FOR THE DISTRICT OF CALIFORNIA
                   NORTHERN DISTRICT
7

8  CARL A. WESCOTT,                    Case No. 3:20-cv-06456-JD

9              Plaintiff,              EXHIBIT B: SWORN DECLARATION OF
                                       CARL A. WESCOTT
10         vs.

11 DAVID CROWE, BRAD MALCOLM,
   MIKE LYONETTE, MICHAEL JIMENEZ,
12 et al.

13              Defendants

14
          I, Carl A. Wescott, hereby swear under penalty of perjury of the laws of California and of the
15
   United States of America, that the following facts are true, to the best of my memory, recollection,
16
   and belief:
17

18 1.  I am the Plaintiff in the above-captioned case at Bar.

19 2.  I am quite familiar with all the circumstances of this case from my own viewpoint (obviously, I

20     do not yet know what internal communications occurred between the Defendants).

21 3.  I am 54 years old, and a U.S. citizen.
22
23 4.  I am competent to testify. Were I to be called to testify in this matter, my testimony would be as

24     follows, and until that point, my written testimony is as such:

25     a.  The facts cited in my legal complaint and in my Response to Defendants' Motion to Dismiss

26         are all true.

                                                                                                1

b. I am indeed on the California Vexatious Litigant list.

c. When I first had to represent myself in my family law case for marital dissolution (as I had no money for an attorney) I made many filings over denied visitations with my children, and didn't make it clear enough that each filing (Orders to Show Cause, for example, because the denied visitations violated a Court order) were for a different denied visitation, and thus it was perceived that I was re-filing Requests for Orders and Orders to Show Cause that I had already lost.

d. Though I am not an attorney, I have learned a lot about the law and civil procedure, which is important as I still cannot afford an attorney.

### Filing of the Third Amended Complaint

5. I respect our court system and the rule of law.

6. I have great respect for this Court and would like to comply with all Court orders. \

7. I have tried to follow all Court orders.

8. Mr. Romero is right, I wasn't able to send the TAC in until February 22nd, 2022, two (2) Court days late.

9. I usually file motions and briefs by mailing documents to the Court.

10. I've recently started a new business.

11. I traveled to Africa on business on February 5th, 2022.

12. I flew back to Phoenix more than two (2) weeks later, arriving the night of Monday, February 21st, 2022, after 10 pm.

13. I wasn't sure about the reliability and speed of mailing in my complaint from Africa.

14. I decided to file electronically on Friday February 18th, 2022.

2

15. I saw it as an option on the USDC Northern California District web site.

16. I was unable to file electronically on Friday February 18th, 2022.

17. I've had difficult registering to file as a *pro se* in the federal Court system.

18. You have to register and then get approved, a process I've recently discovered can take days.

19. I had difficulty with the option to register as a *pro se* for ECF.

20. I should have left more time for the process to get accepted and registered for electronic filing.

21. The USDC Northern California ECF Help Desk is closed on the weekends.

22. I was on airplanes all day (and on airport layovers) on Monday, February 21st, 2022, arriving home in Scottsdale that night after 10 pm.

23. On Tuesday, February 22nd, 2022 I Priority Mailed the TAC to the Court that day, two (2) Court days after I had hoped to file, serving it two (2) Court days late.


### Format of the Third Amended Complaint

e.  I believe that the changes that I made were "short", following the Order.

f.  I submitted a Redline to show the differences, hopefully making it easy for the Court and for Defendants to quickly discern the changes.

g.  I am a legal layperson (not an attorney).

h.  I have an advantage in this forum over many non-attorneys in that I attended two years of online law school.

i.  I still cannot afford an attorney.

j.  I plan to bring one in as soon as I can afford one.

3

k.  In the meantime, I have to do my own legal work.

l.  I'm learning a lot and getting better at that, but the fact remains, I'm not an attorney.

m.  I'm doing my best to follow all rules and procedures, and getting closer to achieving that, for the most part.

n.  Nevertheless, I do not know how to make a better or more clear legal complaint that what I've put together for these facts and issues.

o.  I've recently learned some valuable lessons when I've missed dates.

p.  I'm committed to doing a better job.

### California cases filed under CCP 391.7

q.  I used to be a California resident.

r.  I filed 11 cases in California Superior Court under CCP 391.7 in 2017 and 2018 and 2019 and was approved to file the first time 10 of 11 times. The 11th time involved a mismatch between Defendant names, and I had to correct my draft complaint to have the Defendant names match precisely.

s.  I had many California cases dismissed in the past, but those cases were not without merit.

t.  For the relevant California cases (as alluded to above), I've survived 90%+ of the 391.7s as well as 90%+ of the Motions to Dismiss filed against my cases, as one indicator of merit, or at least perceived merit.

u.  I was rendered homeless and my possessions stolen, twice, during the relevant timeframes.

v.  Without a computer or an address, I was unable to receive updates from the Court nor make filings.

4

w. That is the main reason my California cases were dismissed in 2018 and 2019; I was simply unable to continue with the cases, without a laptop or a place to receive mail.

x. I tried working in the public libraries of San Francisco, which restrict you to two hours of library time on their computers, and it was not enough.

y. I focused on survival instead of the legal cases, as continuing to eat and finding places to work and sleep were more important to me.

z. Just like in Maslow's hierarchy of needs, one needs the basics as the foundation for many activities.

aa. I have a laptop now and the ability to print and scan which makes a significant difference in my ability to perform many tasks that are important in my life.

bb. I did file 17 cases in Arizona in 2019 and 2020, including the *Wescott versus Crowe. Malcolm, Lyonette, et al.* legal complaint that is now before this Court.

cc. I emailed Mr. Romero asking him about my allegedly meritless cases, asking him to name one. Mr. Romero did not reply.

dd. The reason this legal complaint was originally filed in Arizona is that there were three signed contracts with these Defendants, and one of them had a choice of venue clause indicating Arizona Courts (more specifically it stated "Phoenix, Arizona").

ee. The first contract had a forum selection clause of the Courts of "Phoenix, Arizona"; hence the filing in that Maricopa County (the County that much of Phoenix is in) venue seeking the Court to assert jurisdiction over these Defendants.

ff. The second and third relevant contracts had a forum selection clause of San Francisco, California (TAC. Exhibit B, second contract of August 11th, 2018).

5

gg. I figured that I could thus file this case in either Arizona or California (given the two forum selection clauses) and filed in Arizona for my convenience at the time.

hh. I am not a Vexatious Litigant in any federal Court, including this Court (USDC in Northern California).

ii. I am not a Vexatious Litigant in any state Court outside of California.

### The instant case is real

jj. This legal complaint was not filed for the purposes of harassment or delay.

kk. I am the Plaintiff in this case.

ll. I have been wronged by these Defendants and their partners in the Crowe Group partnership (also known as the Litigating Group partnership).

mm.      I have sustained significant financial harm from the Defendants' wrongful acts.

nn. Some of the Defendants were honest with me (or so I believe) at the time when they breached the contract in October, 2018.

oo. I had several conversations at that point with Mr. David Crowe and Mr. Mike Lyonette, as Defendants were already two months' past their successful due diligence and within a week of our planned close where they would fund my purchase of the Seaside Mariana company which owned the Seaside Mariana land.

pp. At that point, Mr. Crowe and Mr. Lyonette told me that and their partners were pulling out of the deal to fund our purchase, because Mr. Ted Cole had filed a lawsuit in Nicaragua against the Seaside Mariana company, and they had concerns about that.

6

qq. However, in their Motions to Dismiss, Defendants, through their attorneys, the law offices
of Romero Park, P.S., now claim that the contract was terminated before that point. That is
factually incorrect.

rr. Unfortunately, their more current representations of what has occurred is out of line with my
allegations and with my Sworn Affidavit, which constitutes evidence.

ss. Further, as per Sub-Exhibit B-1, attached hereto, showing emails between Mr. David Crowe
and myself, as of October 31st, 2018, Mr. Crowe was still searching for a solution to close,
and cited the Cole lawsuit as the issue.

tt. Mr. Crowe also stated he and his partners could not come up with $500k quickly. (Sub-
Exhibit B-1).

uu. If the deal had already been terminated by Kevin Fleming, David Crowe and I would not
have been having that email conversation; it directly contradicts what Mr. Romero is
claiming, unsupported by evidence.

vv. Perhaps Mr. Romero has a good reason to believe that.

ww.      Perhaps Mr. Romero is seeking to mislead this court in violation of ABA Model
Rule 3.3(a)(1).

xx. I am exercising my Constitutionally-protected petitioning rights to have this controversy and
disagreement adjudicated in a Court of law based on the merits.


**What might have happened**

yy. It is telling that Defendants offer no sworn affidavit or other evidence to back up any of the
major "facts" cited by Mr. Romero, such as my Purchase Contract allegedly being
terminated before our planned close.

7

zz. The Statute of Frauds required that our contracts be in writing, for several reasons, including the amounts of money involved as well as the real property involved.

aaa.    The Statute of Frauds would also require that any such termination (in October 2018 or prior) be in writing.

bbb.    If such a termination had occurred, Mr. Romero, lead counsel for Defendants, would have attached it to his Motion to Dismiss as evidence to support his allegations that the contract was dismissed prior to our planned close.

ccc.    While I would never wish to accuse an Officer of the Court of a misrepresentation of fact to a Tribunal in violation of ABA Model Rule 3.3, it is possible that despite the lack of any evidence to support Mr. Romero's conjecture, he still believes that what he is stating is true and correct.

ddd.    I have emailed Mr. Romero about this challenging him to come up with evidence supporting this view, or a person's testimony supporting that. It's also telling that Mr. Romero can do neither of those things in an important brief where $334,000 of his clients' money (part of the base damages) is at stake.

eee.    I am also glad that unlike Mr. Rau, who apparently lied under oath dozens of times in his discovery responses, pretending he didn't know who I was, who Kevin Fleming is (seller of Seaside Mariana), and what Seaside Mariana is, apparently none of the other four (4) Crowe Group defendants are willing to sign their names to a sworn affidavit under oath and subject to the penalty of perjury with allegations contrary to the truth.

fff. I have been subjected to multiple sets of thefts of my possessions, including when I was illegally evicted in San Francisco in summer 2019 and also when all the possessions I had at a hotel in Scottsdale were stolen in July 2020.

8

ggg.      As a result of the loss of access to some email accounts, and various thefts of my computers, laptops, and phones, I am lacking the great majority of my email and records before July 2020.

hhh.      Thus, I cannot specify the exact dates that many events occurred, nor does I have the emails documenting those events in my records.

iii. that makes it difficult, for example, to plead fraud with particularity and specificity.

jjj. I will obtain most of the emails relevant to this case with propounded discovery, including Requests for Production.

kkk.      Almost all of the relevant emails with Crowe Group members were with Mike Lyonette and David Crowe.

lll. I am hoping to later conform my pleadings more properly to the more precise facts, using the emails and documents I no longer have access to.

mmm.      the other statements in my brief about promises made by Mr. Crowe and Mr. Lyonette are true.

### The instant case – further detail

nnn.      Rather, these Defendants entered in to binding contracts with me, and then, after six months of working together, a few days before the final close of the deal I had put together, the Defendants breached their contract, costing the me US $334,000 in payments the Defendants were obligated to make to me and larger sums I would have earned had they closed.

ooo.      The Defendants later repudiated the contract and committed numerous tortious acts that should embarrass them.

9

ppp.     I seek redress in Court so that these Defendants will be required to pay for the damages they have caused me.

qqq.     That will change my financial situation considerably.

rrr. My California legal complaints (that were filed in 2017, 2018, and 2019 – I did not file any in 2020) have not been dismissed due to a lack of merit; quite the contrary.

sss. I emailed Mr. Romero prior to give him an opportunity to cite specific examples of my alleged Rule 8 violations in the legal complaint. A true and correct copy of that email is in Exhibit E.

ttt. Mr. Romero either could not cite a single example to back up his Rule 8 points or chose not to.

uuu.     What Mr. Romero is claiming (that these defendants are not a party to the contract) is factually incorrect, or perhaps it's more accurate to say that some of them technically are not parties directly.

vvv.     David Crowe and Mike Lyonette are parties to all three contracts (the second, which replaced the first, is in TAC, Exhibit B; the third contract are the Non-Disclosure Agreements Mr. Crowe and Mr. Lyonette each signed).

www.     Mr. Malcolm, Mr. Ross, and Mr. Jimenez are parties to the first and second contracts, in that their partnership is a party, and they are responsible for the liabilities of the partnership, jointly and severally.

xxx.     I believe all three of them also signed Non-Disclosure Agreements, too (the third contract).

yyy.     The second/final Sales Contract (TAC, Exhibit B) clearly states that I am one of the parties to the contract, and that the other party is the group of litigators in the litigating group

10

that purchased lots, condominiums, and bungalows at Seaside Mariana, that "have a Nicaraguan lawsuit together".

zzz.    The identities of those twenty-two people were provided by David Crowe at the time of the contract signing, and the identities are also a matter of public record.

aaaa.    The twenty-two Litigators are David Crowe, Mike Lyonette, Thomas P. Madden, Taylor Collins; Jeff Rau; Darrell Bushnell; Amy Bushnell; Peter Tierney; Kathy Fettke; Susie Yee; Norman Davies; Claire Davies; Sandra Winfrey; Brian Putze; Colin Ross; Brad Malcolm; Michael Jimenez; Gustavo Varela, Robert Crowe, Bernadette Brown, Federico Gurdian, and Terencio Garcia.

bbbb.    Mr. Malcolm, Mr. Ross, and Mr. Jimenez are among the Litigators, as a matter of public record.

cccc.    Mr. Romero also confirmed that all five (5) of the current Defendants are partners in the Litigating Group partnership (Sub-Exhibit B-2).

dddd.    The twenty-two are bound together in a partnership for that litigation and for the Contract with me in TAC, Exhibit B (The NDAs were signed individually).

eeee.    Incidentally, the Contract attached to Exhibit B is signed just by me, but Mr. Crowe and Mr. Lyonnette signed that contract as agent for and on behalf of the partnership of their twenty-two litigation partners in the litigation against Seaside Mariana and its owner.

ffff.    David Crowe, Mike Lyonette, and I created the contract in TAC, Exhibit B. No attorney was involved.

gggg.    In retrospect, I wish I had had an attorney involved, as this issue would have been made more clear in the contract itself rather than in other documents (including ones that are a matter of public record) that the contract refers and alludes to.

11

hhhh.      David Crowe was the one who suggested he would group everyone together and manage them as a group, so we didn't have twenty-two (22) distinct conversations on every issue.

iiii. Mr. Crowe confirmed that they were a partnership sharing profits and losses and that their interests were encapsulated and managed together in a LLC that had a governing Operating Agreement.

jjjj. It is my understanding that the group's litigation together against Seaside Mariana and Kevin Fleming is handled the same way.

kkkk.      To further dispel any confusion, my mother is from Finland and the name Kalle (that is referenced in the Sales Contract – Carl "Kalle" Wescott) is the equivalent name as Carl. I use both names (like Carl/Carlos for English/Spanish or Karl in Germany).

llll. Mr. Romero is also incorrect about the sequence of events.

mmmm. He alleges (with no supporting evidence) that the main seller (Kevin Fleming) terminated the contract prior to the October 2018 breach of Crowe, Lyonette, Malcolm, Ross, Jimeneze, and their co-Defendants.

nnnn.      The Defendants' initial breach was in October when we were at the closing table (figuratively; I was about to fly to the closing).

oooo.      The sellers (Kevin Fleming, Maria Rueda, and others) very much wanted and needed the further US $475,000 they would have received.

pppp.      It is true that later (I believe it was December 2018, two months later) Kevin Fleming sent me an email stating that he was terminating my purchase contract, though Mr. Fleming did not have the contractual right to do so, without one other thing he would have been required to do first, as per my Closing Contract with the Fleming and the other sellers of Seaside Mariana.

12

qqqq.    However, that was two months after the Crowe Group (including Mike Lyonette, David Crowe, Michael Jimenez, Jeffrey Rau, Colin Ross, and Brad Malcolm) had breached, pulling out of the contract to fund/purchase a few days before the planned closing.

rrrr.    In our discussions for closing logistics with Mr. Crowe, I had offered a limited power of attorney, or special power of attorney before the closing, in favor of his wife, for her to do the transfer of Seaside Mariana ("SM") land right after the SM purchase/close.

ssss.    That land, hundreds of acres with 2 kilometers of beachfront, was part of the consideration for the Sales Contract on my side of the set of contractual obligations.

tttt. That land is also worth quite a bit more than US $334,000.

uuuu.    Kevin Fleming had paid US $4 million for the original SM parcel, raw, before getting entitlements, twelve years ago.

vvvv.    The cited reason (as stated to me by David Crowe) for the Defendants to breach the contract was that Mr. Ted Cole had filed a lawsuit against Seaside Mariana just before our close of the Seaside Mariana purchase.

wwww.    Mr. Cole's lawsuit was filed in September 2018.

xxxx.    I did not find out about the Cole lawsuit until October 2018 – David Crowe was the person who initially informed me of its existence, in citing his reason, on behalf of Mr. Rau and the other twenty-one (21) defendants, for why they were breaching the contract and closing that they had expressly and contractually committed to.

yyyy.    The first contract we signed had a contingency for the Defendants' due diligence.

zzzz.    When the Defendants completed their due diligence, they passed US $25,000 through (which went to the sellers), and they signed and committed to the new, second contact (in

13

TAC, Exhibit B), which committed them to the investment, funding and closing with no contingency.

aaaaa.   I entered into other contracts with the Kevin Fleming/Maria Rueda group of sellers.

bbbbb.   For example, I signed a contract to purchase Isla Mariana, another company with land on an island off the coast of Nicaragua.

ccccc.   I also signed deals to purchase seven (7) other Panama and Nicaragua entities, with the same selling group.

ddddd.   I had made David Crowe aware of this well before the closing (as it mattered for certain land due diligence we were doing). I also had let Mr. Crowe know what was at stake for me.

eeeee.   Mr. Crowe, among others, is well aware of my past, successful, background, and the value of my time.

fffff.   In disclosing these facts and others to Mr. Crowe, the rest of the Crowe Group has had constructive notice.

ggggg.   This will also be important for the foreseeability of my consequential damages, which are significant.


FURTHER AFFIANT SAYETH NAUGHT


CARL A. WESCOTT
April 14th, 2022

14

SUB-EXHBIT B-1

**Subject:**                    FW: new idea

----- Forwarded Message -----
**From:** david crowe <expat1935@yahoo.com>
**To:** Carl A. Wescott <c@carlawescott.com>
**Sent:** Wednesday, October 31, 2018, 07:03:32 PM GMT-7
**Subject:** Re: new idea

Kalle,
Good idea BUT doesn't deal with the Cole lawsuit.   And we can't fund $ 500K tomorrow
Dave

On Wednesday, October 31, 2018, 6:41:10 PM PDT, Carl A. Wescott <c@carlawescott.com> wrote:


Why not close quickly and put a mortgage on all the land too, David.

For 500k.

(You don't provide any more cash though other than that allocated for current close)

Plus the old amounts owed your group.

A 1 week mortgage.

Then not only do we do the xfer but you also start a foreclosure?

Because you have the old amounts on there tied to old debts from 10 years ago and your own old lawsuit, you should
have precedence in every way.

--Kalle

1

Crowe000007



∫√B-EXHIBIT B-2   Carl Wescott <carlwsoj@gmail.com>

## confirming my understanding - confirming, more importantly, that you require a Motion to Compel to produce the OA, and would obey a Court order Compelling you to Produce it

2 messages

**Carl Wescott** <carlwsoj@gmail.com>                                Wed, Mar 30, 2022 at 12:47 PM
To: Troy Romero <TRomero@romeropark.com>
Cc: Kathy Koback <kkoback@romeropark.com>
Bcc: Carl Wescott <carlwsoj@gmail.com>

So, Mr. Romero, I'm not asking for legal advice, but I am asking for a quick response when you can get to it.

First, I'll point out that I have my own confidentiality agreements with your clients. We also have a protective order in our case. Nevertheless, you (plural, meaning Romero Park attorneys representing Crowe Group clients) won't produce the Operating Agreement.

At least you admit it exists; thank you.

To Mr. Coughlan's point that he does not have it, Mr. Rau does not have it, I have a hard time believing that. Each of the five (5) most important documents I seek is an attachment to an email that was produced. I could understand the case that someone printed out all emails but not the attachments.

However, Mr. Rau testified under oath that he had all his digital files, with no file loss.

So if he has the emails that were produced that have those five (5) documents, he MUST have the attachments, too, including the Operating Agreement, the MoU, and the App-1.

(If Mr. Rau is not producing for reasons of confidentiality, he should put those documents on the privilege log. And produce a proper privilege log that has the parameters defined in my propounded RFPs. And/or produce authority that he doesn't need to)

Let me now summarize where I think we are so I can ask two key questions:

You're telling me that despite the Operating Agreement being a key document in the case, unlike Mr. Rau who claims he has none of those five (5) documents, just the emails that contain them... (I'll be deposing Mr. Rau on this specific issue in the future of how he can have the emails with the attachments and not the attachments themselves - it's quite odd, and I look forward to learning more).

Despite my own confidentiality agreement with Mr. Rau, Mr. Crowe, and Mr. Lyonette, Mr. Crowe and Mr. Lyonette, who at least (likely) admit the existence of the Operating Agreement and admit that they have that critical document, will not produce it due to confidentiality.

Despite the protective order in this case that I have with Mr. Rau, Mr. Crowe, and Mr. Lyonette, Mr. Crowe and Mr. Lyonette, who at least (likely) admit the existence of the Operating Agreement and admit that they have that critical document, will not produce it due to confidentiality.

Now, my two questions:

1) So the only way Mr. Crowe and Mr. Lyonette will produce the Operating Agreement is for me to file a Motion to Compel?

Please confirm, and then I will file one.

But let me also make sure of this:

2) If the Court orders you to produce the Operating Agreement in response to a Rule 37a Motion to Compel Production of Certain Documents, will you actually produce it?

Or will you simply refuse once again, citing confidentiality?

I didn't wish to trouble the Court on this issue, but if the answers are Yes and Yes, then I will go ahead and file a Motion to Compel to get the Operating Agreement, which I can then use to prove Mr. Rau's, Mr. Crowe's, and Mr. Lyonette's liability.

(Quick summary:  Mr. Crowe and Mr. Lyonette, as agents for the partnership of the twenty-two (22) members of the Crowe Group partnership, bound the Crowe Group partnership (aka the  "Litigating Group" partnership) into a contract with me, in which they would pay me $334,000 at the close of our transaction in October 2018.

The Crowe Group partnership includes Mr. Crowe, Mr. Lyonette, Mr. Rau, Mr. Jimenez, and Mr. Malcolm, among others (including Ms. Sandra Winfrey and Mr. Brian Putze and Mr. Collings).

Their partnership is encapsulated in an LLC.  As partners, they share profits and losses.

My legal argument is that each partner, including Mr. Rau, Mr. Jimenez, and Mr. Malcolm (and also including Ms. Winfrey and the others), is liable via agency.

On top of that, the partners conspired together, and individual partners also ratified the acts of other partners and the partnership.

But it's simplest and strongest as partners in a partnership, liable via agency.

(And, by the way, is the reason I allowed the Litigating Group to be bound as partners in the original contract, with Mr. Crowe and Mr. Lyonette as agent.  I relied on Mr. Crowe's and Mr. Lyonette's assertion that the Litigating Group (aka the Crowe Group) was a partnership)

Otherwise I would have required twenty (20) more signatures.

--CAW

On Wed, Mar 30, 2022 at 8:32 AM Troy Romero <TRomero@romeropark.com> wrote:

Mr. Wescott:

Good morning.  There are two reasons I did not respond to your email earlier.  First, I have been on vacation with my grandkids.  Second, we have already responded to the same arguments you are making in your email; so you can just look at our prior emails in response to find my clients' position, which has not changed.

The only reason I am responding now is you have made one argument many times before, to which we have already responded, and yet you keep making it. So, in the oft chance that you really don't understand our response and how discovery works I'm going to explain it again in greater detail. It concerns the Operating Agreement. You keep saying my clients must produce this document, but they cannot without violating their confidentiality obligations under it.

The Operating Agreement is an agreement entered into by many people, only 5 of which are the remaining parties in your lawsuit. Included within the O.A. is a confidentiality provision, which prohibits a member from disclosing it to any third party, which includes you. We are not going to disclose attorney client privilege communication and/or attorney work production information to explain what has been done regarding its production but the upshot is that the remaining 5 defendants are prohibited under the confidentiality provision in the O.A. from producing it to you.

Your demand asks my client to violate a confidentiality provision, something they cannot do. No matter how much you complain about it, no matter how much you think you are wronged, it will not change the fact that my clients cannot disclose it to you. You already have a motion to compel discovery before the court on this topic so let's wait and see what the judge says rather than have you make the same argument over and over again.

As to the document production for Crowe and Lyonette please work with Matt and Kathy on the production. Kathy has already let you know how completely slammed she is (and we are also understaffed, but trying to hire additional staff to assist our clients so we can turn work around quicker). Responsive and non-objectionable documents will be produced in due course.

Troy


H. Troy Romero


California Office

16935 W. Bernardo Dr., Suite 260

San Diego, CA 92127

858-592-0065


Washington Office

155 – 108th Ave. NE, Suite 202

Bellevue, WA 98004

(425) 450-5000